IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THELMA R. CURRY, YOLANDA QUIMBY, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br> v.<br><br>THE UNITED STATES,<br><br>   Defendant. | No. 02-101C<br><br>Judge Victor J. Wolski |

**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO CERTIFY CLASS ACTION**

IRA M. LECHNER, ESQ.
Attorney
19811-4th Place
Escondido, CA  92029
Tel:  (760) 839-0565
Fax:  (760) 839-5755

Attorney for Plaintiffs

Dated:  September 1, 2006

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................... 1

II.   FACTUAL BACKGROUND ......................................... 3

III.  PROCEDURAL BACKGROUND ...................................... 5

      A.   The Complaint and Motion for Class Certification ..... 5

      B.   The Court's Ruling on Liability ...................... 6

      C.   Additional Named Plaintiffs .......................... 8

IV.   CLASS CERTIFICATION IS APPROPRIATE IN THIS CASE .......... 8

      A.   The Standards For Class Certification ................ 8

      B.   Numerosity:  The Class is So Numerous that
           Joinder is Impracticable ........................... 11

      C.   Commonality:  The Proposed Class Members Share
           Common Questions of Law and Fact that Predominate
           Over Individual Issues ............................. 13

           1.   The Case Involves Common Questions of Law
                and Fact ...................................... 13

           2.   Common Legal and Factual Issues Predominate
                Over Any Individual Issues .................... 17

      D.   Typicality:  Plaintiffs' Claims Are Typical of
           the Putative Class Members' Claims ................. 26

      E.   Adequacy:  Plaintiffs Adequately Represent the
           Interests of the Proposed Class .................... 28

      F.   Superiority:  Class Certification Is the Superior
           Method to Adjudicate This Controversy Fairly and
           Efficiently ........................................ 31

           1.   The Class Is Manageable ....................... 32

           2.   The Claims of Many of the Class Members Is
                So Small That It Is Doubtful They Would
                Otherwise Be Pursued .......................... 34

V.    CONCLUSION ................................................ 36

## TABLE OF AUTHORITIES

**Page**

### CASES

*Abrams v. United States,* 57 Fed. Cl. 439 (2003) . . . . . . . . . . 18, 19

*Archuleta v. United States,* C.A. No. 99-205C (June 1, 2006) . . . 30

*Armitage v. Untied States,* 991 F.2d 746 (Fed. Cir. 1993) . . . . . . . 7

*Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D.
    439 (N.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Baby Neal v. Casey,* 43 F.3d 48 (3d Cir. 1994) . . . . . . . . . . . . . . . 13

*Barnes v. United States,* 68 Fed. Cl. 492 (2005) . . . . . . . . . . passim

*Bell v. Farmers Ins. Exchange,* 9 Wage & Hour Cas. 2d  (BNA)
    726 (Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Berkley v. United States,* 45 Fed. Cl. 224, 233 (1999) . . . . . . . . 35

*Black v. United States,* 24 Cl. Ct. 471 (1991) . . . . . . . . . . . . . . . 19

*Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975) . . . . . . . . . . . . . 9

*Brown v. Pro Football, Inc.,* 146 F.R.D. 1
    (D.D.C. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21

*Busby Sch. of the No. Cheyenne Tribe v. United States,*
    8 Cl. Ct. 596 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Christensen v. United States,* 49 Fed. Cl. 165 (2001) . . . . . . . . . 18

*Christian, II v. United States,* 46 Fed. Cl. 793 (2000) . . . . . . . . 18

*Curry v. United States,* 66 Fed. Cl. 593 (2005) . . . . . . . . . . . passim

*Cutright v. United States,* 15 Cl. Ct. 576 (1988) . . . . . . . . . . . . . 19

*Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326 (1980) . . . . . 34

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974) . . . . . . . . . . . . 9

## TABLE OF AUTHORITIES
(continued)

**Page**

*Favreau, II v. United States*, 48 Fed. Cl. 774 (2000) ...... 18, 35

*Filosa v. United States*, 70 Fed. Cl. 609 (2006) .......... passim

*Grochowski v. Phoenix Const.*, 318 F.3d 80 (2d Cir. 2003) ...... 25

*Hannon v. United States*, 31 Fed. Cl. 98 (1994) ............... 20

*Hartman v. Wick*, 678 F. Supp. 312 (D.D.C. 1988) ............. 31

*Haywood v. Barnes*, 27 Wage & Hour Cas. (BNA) 873
   (E.D.N.C. 1986) ....................................... 21

*Land Grantors In Henderson, Union & Webster Counties, Ky.
   v. United States*, 71 Fed. Cl. 614 (2006) ............ passim

*Lanehart v. Horner*, 818 F.2d 1574 (Fed. Cir. 1987) ....... passim

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234
   (9th Cir. 1998) ...................................... 29

*Lopez v. Orlor, Inc.*, 176 F.R.D. 35 (D. Conn., 1997) ...... 15, 21

*McLaughlin v. DialAmerica Mktg., Inc.*, 716 F. Supp. 812
   (D.N.J. 1989) ...................................... 21, 25

*Moore v. United States*, 41 Fed. Cl. 394 (1998) ........... 20, 26

*Mudge v. United States*, 308 F.3d 1220 (Fed. Cir. 2002) ....... 33

*Noble v. 93 University Place Corporation*, 9 Wage & Hour
   Cas. 2d (BNA) 1057 (S.D.N.Y. 2004) ...................... 21

*O'Meara v. United States*, 59 F.R.D. 560 (N.D. Ill. 1973) .. 35, 36

*Owner-Operator Independent Drivers Ass'n, Inc. v. Arctic
   Express, Inc.*, 288 F. Supp. 2d 895 (S.D. Ohio 2003) ...... 15

*Perry v. Beneficial Fin. Co.*, 81 F.R.D. 490 (W.D.N.Y. 1979) ... 31

*Pottinger v. City of Miami*, 720 F. Supp. 955
   (S.D. Fla. 1989) ...................................... 31

*Quinault Allottee Ass'n v. United States*, 453 F.2d 1272
(Ct. Cl. 1972) ........................................... 9

*Reich v. Gateway Press, Inc.*, 13 F.3d 685 (3d Cir. 1994) ...... 25

*Sala v. Nat'l R.R. Passenger Corp.*, Civ. A. No. 88-1572,
1988 WL 84125 (E.D. Pa. Aug. 4, 1988) ................... 16

*Seidman v. American Mobile Sys. Inc.*, 157 F.R.D. 354
(E.D. Pa. 1994) ........................................ 21

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d
1301 (9th Cir. 1990) ................................... 31

*Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188
(6th Cir. 1988) ........................................ 21

*Taylor v. United States*, 41 Fed. Cl. 440 (1998) .......... passim

*Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527
(W.D. Pa. 1994) ........................................ 21

*Whitman v. Dep't of Transp.*, 126 S. Ct. 2014 (2006) .......... 33

## STATUTES AND RULES

5 U.S.C. § 5546 ........................................... 17

5 U.S.C. § 6303 ........................................... 11

5 U.S.C. § 6307 ........................................... 11

38 U.S.C. § 7453 ...................................... passim

38 U.S.C. § 7454 ...................................... passim

38 U.S.C. chapter 73 ...................................... 3

38 U.S.C. chapter 74 ................................... 3, 4

*Class Action Fairness Act of 2005*, Pub. L. No. 109-2,
§ 2(a)(1) (2005) ....................................... 10

FRCP 23 ............................................... passim

## TABLE OF AUTHORITIES
(continued)

**Page**

### MISCELLANEOUS

H. Newburg, 3 *Newburg on Class Actions* §18.07 (2d ed. 1985) ... 22

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THELMA R. CURRY, YOLANDA QUIMBY, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>THE UNITED STATES,<br><br>       Defendant. | No. 02-101C<br><br>Judge Victor J. Wolski |

**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO CERTIFY CLASS ACTION**

**I.    INTRODUCTION.**

Plaintiffs have alleged, and this Court has found, that the Department of Veterans Affairs Health Administration ("DVA") has habitually underpaid its employees by denying them the "additional" pay, during periods of paid leave, that they regularly would have received had they not taken leave. Plaintiffs now seek to certify a class of these employees so that they may recover the amounts that the DVA owes them.

In the past year, the Court of Claims has granted class certification in two cases with strikingly similar facts and issues as the case at bar: *Barnes v. United States*, 68 Fed. Cl. 492 (2005), and *Filosa v. United States*, 70 Fed. Cl. 609 (2006). Both cases involved the government's practice of wrongfully withholding "additional" or "premium" pay from its employees, and the *Barnes* case concerned failure to include premium pay

when the employees took paid leave.  Yet these two authorities, and a third Claims Court case that relies on *Barnes* (*Land Grantors In Henderson, Union & Webster Counties, Ky. v. United States*, 71 Fed. Cl. 614 (2006)) are noticeably absent from Defendant's Amended Opposition (hereafter cited as "Def. Opp'n").  Rather than discuss the reasoning of the most current and relevant cases, defendant rehashes the same discredited arguments it has been making for years – i.e., that class actions are disfavored, and that the members of the class work at different jobs, in various parts of the country, and at different pay rates – apparently oblivious to the fact that this court has specifically rejected those very same arguments in recent published decisions.

Plaintiffs have closely examined the government's class certification opposition briefs in *Barnes* and *Filosa,* and they are virtually identical to the government's brief in *Curry.*  In all three cases, the government relies on the same citations decided before the adoption of Rule 23 as if this area of the law had been frozen in time.  And in *Curry*, the government simply ignores its own stipulation, relied on by this Court, that the DVA pay practices involved are systemic and the result of clear DVA policy, irrespective of employee job classification, pay grade, location, or circumstances of work.

Plaintiffs therefore respectfully request that the Court certify the class as requested herein.

## II.   FACTUAL BACKGROUND.

The parties have stipulated to the facts outlined in the Consolidated Statement of Uncontroverted Facts ("Stip."), included in the attached Appendix for the Court's convenience. In summary, the parties agree that:

- Plaintiff Yolanda Quimby is employed by the DVA as a Licensed Vocational Nurse ("LVN"), and plaintiff Thelma R. Curry was employed by the DVA as a Registered Nurse ("RN") within the applicable limitations period.

- Each plaintiff customarily and regularly received additional pay under 38 U.S.C. section 7453 for work at night (a tour of duty any part of which was within the period between 6:00 p.m. and 6:00 a.m.), and/or for work on weekends (a tour of duty any part of which was between the period commencing at midnight Friday and ending at midnight Sunday).

- DVA employed or employs within the applicable limitations period:

  o registered nurses and registered nurse anesthetists (collectively, "RNs" or "nurses") appointed under 38 U.S.C. chapter 73 who receive both basic pay and additional pay for night and/or weekend work under 38 U.S.C. section 7453;

  o physician assistants ("PAs") and expanded-function dental auxiliaries ("EFDAs") appointed under 38 U.S.C. chapter 74 who receive both basic pay and additional pay for night and/or weekend work under 38 U.S.C. sections 7453 and 7454; and

o "hybrid" employees (including, among others, licensed practical nurses ("LPNs") and LVNs) appointed under 38 U.S.C. chapter 74.  Beginning January 1, 2002, all hybrid employees received additional pay for weekend work under 38 U.S.C. sections 7453 and 7454, and before January 1, 2002, received such weekend additional pay if individually designated to do so by the Director of their DVA facility.  Plaintiff Quimby was so designated before January 1, 2002.  Within the entire period of the Complaint, hybrids individually designated to do so also received night additional pay under sections 7453 and 7454.  Hybrid employees receive basic pay and accrue leave under Title 5.

- Hybrid employees regularly scheduled to work at night received additional pay during periods of paid leave (annual, sick, court and military leave, and other paid leave under Title 5), provided the employee did not use eight or more hours of paid leave within the pay period (the "eight-hour limit").

- From approximately October 1993 to October 1997, hybrids received additional pay for regularly scheduled non-overtime Saturday and Sunday hours during periods of paid leave, but from approximately November 1997 to the present have not received such additional pay for those hours while on paid leave.

- RNs, PAs, and EFDAs regularly scheduled to work at night received additional pay during paid annual, sick, court and military leave, subject to the eight-hour limit.

• From approximately October 1993 to October 1997, RNs, PAs, and EFDAs received additional pay for regularly scheduled non-overtime Saturday and Sunday hours during paid court and military leave, but never received such premium pay during paid annual and sick leave.

(See Stip. ¶¶ 1-13; Plaintiffs' Appendix ("Pls. App.") at 1-3.)

## III. PROCEDURAL BACKGROUND.

### A.   The Complaint and Motion for Class Certification.

Plaintiffs filed the Second Amended Complaint on May 21, 2002, seeking, among other things, back pay for plaintiffs and a proposed class of similarly-situated individuals for periods of paid leave, continuation of pay, and excused absence (pursuant to a six-year statute of limitations period from the date of filing of the Complaint in the United States District Court) from September 4, 1995 in an amount equal to the reduction of their customary and regular additional "pay" under 38 U.S.C. §§ 7453 or 7454 that defendant unlawfully withheld from plaintiffs for those hours for which they were charged authorized paid leave or absence and for which they would have received such "additional pay" had they remained at work at their regular and customary work schedule until expiration of

their authorized paid leave or absence.[1]  (Complaint, Prayer ¶ (b).)

Plaintiffs moved for class certification on February 28, 2002.  Plaintiffs subsequently filed an Unopposed Motion to Stay Adjudication of Class Certification.  Both parties had planned to file cross-motions for summary judgment, and, given the nature of the legal issues involved in the case, it promoted greater judicial efficiency for the Court to decide those cross motions before ruling on plaintiff's class certification motion. The Court agreed with the parties to stay its decision on class certification until after it determined liability.  (See Order dated September 3, 2002; Pls. App. At 4.)

**B.   The Court's Ruling on Liability.**

In February 2003 plaintiffs filed a motion for partial summary judgment on the issue of defendant's liability to the above-described DVA employees for failure to pay those employees night and weekend additional pay for regularly-scheduled hours while on leave.  Defendant filed its opposition and cross-motion for summary judgment in April 2003.

In its July 8, 2005 ruling, the Court considered the following question:  "When employees who normally earn

---

[1] Plaintiffs filed the original complaint in the United States District Court for the Southern District of California on September 4, 2001.  The case was transferred to this Court in February 2002.  Plaintiffs subsequently filed the First Amended Complaint on March 1, 2002.  For simplicity, the current operative complaint, the Second Amended Complaint, will hereafter be referred to as the "Complaint."

additional pay because they work less-desirable shifts (weekends and/or nights) take paid leave, do they get the same pay (including the additional) that they would have received for working?" *Curry v. United States*, 66 Fed. Cl. 593, 594-95 (2005).

The Court granted-in-part and denied-in-part both parties' motions, relying in large part on *Lanehart v. Horner*, 818 F.2d 1574 (Fed. Cir. 1987), and *Armitage v. Untied States*, 991 F.2d 746 (Fed. Cir. 1993). The Court found as follows:

> Hybrids who have been designated to receive such additional pay for work performed are entitled to receive, as part of their pay for periods of annual, sick, military and court leave: (1) nighttime additional pay without an eight-hour limitation, (2) full weekend additional pay for leave taken prior to October 1, 1997, and (3) weekend additional pay, except for tours of duty any part of which would fall on Sunday, for leave taken after September 30, 1997. Since January 23, 2002, all hybrids have been entitled to receive, as part of their paid military, court, annual or sick leave, weekend additional pay, except for tours of duty any part of which would fall on Sunday.
>
> Registered nurses, PAs and EFDAs are entitled to receive, as part of their paid annual and sick leave: (1) nighttime additional pay subject to the VA regulation's own eight-hour rule, (2) full weekend additional pay for leave taken prior to October 1, 1997, and (3) weekend additional pay, except for tours of duty any part of which would fall on Sunday, for leave taken after September 30, 1997. Registered nurses, PAs and EFDAs are entitled to receive, as part of their paid court and military leave: (1) nighttime additional pay, not subject to any eight-

>    hour rule, (2) full weekend additional pay
>    for leave taken prior to October 1, 1997,
>    and (3) weekend additional pay, except for
>    tours of duty any part of which would fall
>    on Sunday, for leave taken after September
>    30, 1997.

*Curry*, 66 Fed. Cl. at 608.

### C.   Additional Named Plaintiffs.

On August 3, 2006, plaintiffs filed a Motion for Leave to

Add Additional Plaintiffs.  The motion identified 14 additional

individuals (who are either RNs, LVNs or LPNs) to represent the

class.  No other changes were proposed by the Motion for Leave.

Defendant's response was due on August 21, 2006.  Defendant did

not file a response, and therefore should be deemed not to

oppose the motion.  The Court has not yet ruled on the motion.

## IV.  CLASS CERTIFICATION IS APPROPRIATE IN THIS CASE.

### A.   The Standards For Class Certification.

Whether a case should be certified as a class action is

determined by analyzing the requirements of Rule 23 of the Rules

of the Court of Federal Claims ("RCFC").  RCFC 23(a) lists the

threshold requirements for all class actions.  RCFC 23(b) lists

requirements for determining whether the case in question may be

certified as a class action.  This court has grouped the

requirements of RCFC 23(a) and (b) into five categories:

>    (i) **numerosity** – a class so large that
>    joinder is impracticable; (ii) **commonality** –
>    in terms of the presence of common questions
>    of law or fact, the predominance of those
>    questions, and the treatment received by the
>    class members at the hands of the United
>    States; (iii) **typicality** – that the named
>    parties' claims are typic[al] of the class;

> (iv) **adequacy** – relating to fair representation; and (v) **superiority** – that a class action is the fairest and most efficient way to resolve a given set of controversies.

*Barnes*, 68 Fed. Cl. at 494.

In ruling on a motion for class certification, the substantive allegations in plaintiffs' complaint are accepted as true. *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). The only issue on a motion for class certification is whether plaintiffs are asserting a claim which, assuming it is meritorious, will satisfy the requirements of Rule 23. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 158 (1974); *Filosa*, 70 Fed. Cl. at 615.

RCFC 23 was completely rewritten in May 2002. The Committee Notes to RCFC 23 explain that the Rule principally adopts the criteria outlined in *Quinault Allottee Ass'n v. United States*, 453 F.2d 1272 (Ct. Cl. 1972). *See* Rules Comm. Note to revised RCFC 23; *Barnes*, 68 Fed. Cl. at 494. But as this court pointed out in *Barnes*, the RCFC 23 and *Quinault* factors are not identical, and where the two directly conflict, the RCFC 23 requirements control. *Barnes*, 68 Fed. Cl. at 494.

This court has recently confirmed that class certification issues are to be approached with no bias against the class action device. *Barnes*, 68 Fed. Cl. at 502 ("If the proposition that class actions are 'disfavored' ever was valid, it certainly is no longer so now."). The *Barnes* court concluded that continuing to disfavor class actions is contrary to the court's goal of bringing its opt-in class action procedures more closely

in line with those of the district courts, and threatens to "put this court at odds with the vast majority of cases in other circuits that have held that the comparably-worded Federal rule should be liberally construed – or, at least, not narrowly construed – in support of class certification." *Id.*; *see also Taylor v. United States*, 41 Fed. Cl. 440, 444 (1998) ("there appears to be no basis for stating that class actions are 'generally disfavored' and should be used only in 'rare and extraordinary cases'"); *Class Action Fairness Act of 2005*, Pub. L. No. 109-2, § 2(a)(1) (2005) ("Class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a Defendant that has allegedly caused harm."). Thus, the government's argument that class actions are disfavored is meritless.

The government's argument that class actions are inappropriate in government employee pay cases is similarly misconceived. *See Filosa, supra* (certifying class of DVA nurse care managers alleging the government improperly withheld additional pay for on-call duty services); *Barnes, supra*; *Taylor*, 41 Fed. Cl. at 448 (certifying class of employees alleging the government improperly withheld their separation pay).

**B.    Numerosity:   The Class is So Numerous that Joinder is Impracticable.**

Whether a proposed class satisfies RCFC 23(a)(1)'s numerosity requirement depends on the facts and circumstances of each case and does not require a specific minimum number of class members.  *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994).  Moreover, plaintiffs need not state the exact number of potential class members so long as the class is not amorphous.  *Id.*

Plaintiffs' class description carefully details with specificity who is included and excluded within the class:

> all persons who are past or present health care employees of the VA; who were or are employed since or after September 4, 1995; who regularly received "additional pay" pursuant to 38 U.S.C. § 7453 or § 7454 for working their regular and customary work schedule; and whose pay for regularly scheduled hours of work, including such "additional pay," was reduced for those hours for which the employee was or is charged authorized leave under 5 U.S.C. § 6303, § 6307 and other provisions of Title 5, and/or regulations promulgated by the VA, including continuation of pay, and authorized absence.

(See Complaint ¶ 13.)[2]

Here, the class members constitute a large but manageable class.  The pool of potential class members consists of

_____

[2] Because plaintiff's Complaint was filed before the Court amended RCFC 23 to allow for only opt-in class actions, plaintiffs had been seeking to certify an opt-out class. Plaintiffs now seek, in conformance with RCFC 23, to certify an opt-in class.  The class description outlined in paragraph 13 of the Complaint is otherwise unchanged.

thousands of present and former employees of the DVA who regularly work or worked at night or on weekends at a hospital or medical facility operated by or for the DVA.  (Complaint ¶¶ 13, 14.)  The class includes hybrids, RNs, PAs and EFDAs. (Complaint ¶ 14.)

The class is clearly sufficiently numerous that joinder of each member of the class would be impracticable.  *See generally, Barnes*, 68 Fed. Cl. at 493, 495, 502-03 (certifying a class that would potentially consist of approximately 5,000 present and former employees of the Navy).  To meet the joinder requirements of RCFC 20(a), a party must meet both of the following requirements:  "(i) a right to relief must be asserted by, or against, each plaintiff or defendant, relating to or arising out of the same transaction or occurrence, and (ii) some question of law or fact common to all the parties will arise in the action." *Id*. at 495.  Here, while plaintiffs' claims arise from common DVA policy, their claims do not arise out of precisely the same transaction because each plaintiff and potential class member was underpaid each bi-weekly pay period in separate transactions.  Although the transactions are *similar*, because defendant underpaid each plaintiff and potential class member during periods of paid leave by a sum that they regularly would have received had they not taken leave, the precise transactions are not *the same*.  *See id*. (noting that "same" for joinder purposes does not mean "similar").  Thus, joinder in this case is not only impracticable, it is impossible.

The government does not dispute that the proposed class is sufficiently large.  (See Def. Opp'n at 13.)  Rather, the government makes the unsupported claim that the class would be unmanageable.  Manageability is a factor relevant to the "superiority" element of class certification, not the "numerosity" element.  *Filosa*, 70 Fed. Cl. at 616.  And, as explained fully in Part IV.F below regarding "superiority," not only is the class manageable, but it also serves the interests of justice and judicial economy to certify the class rather than require each putative class member to file a lawsuit and have this Court adjudicate thousands of individual claims.

The proposed class is numerous, and joinder is impracticable.  Plaintiffs therefore easily satisfy the numerosity requirement of RCFC 23(a)(1).

**C.   Commonality:  The Proposed Class Members Share Common Questions of Law and Fact that Predominate Over Individual Issues.**

**1.   The Case Involves Common Questions of Law and Fact.**

RCFC 23(a)(2)'s commonality requirement does not require that all questions of law and fact be common to all members of the class.  *Arnold*, 158 F.R.D. at 448-49.  Instead, this requirement is satisfied so long as there is a common question of law or a common question of fact.  *See Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

This case presents an overarching legal issue, already decided by the Court in the affirmative:  Does the DVA's practice of failing to include remuneration equal to the

"additional pay" that the plaintiff class regularly and customarily earned, pursuant to 38 U.S.C. §§ 7453 and 7454, in the "pay" for authorized paid leave violate the "leave with pay" statutes of Title 5 and/or regulations of the DVA?

Alternatively, this issue can be phrased as described by this Court in its summary judgment ruling: "When employees who normally earn additional pay because they work less-desirable shifts (weekends and/or nights) take paid leave, do they get the same pay (including the additional) that they would have received for working?" *Curry*, 66 Fed. Cl. at 594-95. The case also presents a related common factual issue, namely, whether the DVA has habitually failed to pay plaintiffs and the proposed class members additional pay for periods of leave. As noted *infra*, defendant has stipulated to this common factual issue in its original cross-motion for summary judgment.

The government advances as its principal argument, apparently seriously, that there is no pending common issue of law or fact because the Court already made those findings when it decided liability. But defendant conveniently ignores the agreement between the parties, sanctioned by Judge Baskir to whom this case was originally assigned, to brief and resolve the issues of liability first before considering class certification. (See Order dated September 3, 2002; Pls. App. At 4.) The parties' agreement on this procedural realignment was premised on the complexity of the many questions of statutory construction presented in *Curry*; it simply made more sense to determine if plaintiffs had presented a winning case before

going to the expense of alerting thousands of DVA employees to heightened expectations of recovery.

RCFC 23(c)(1) and (d) clearly empower the Court with flexibility to determine the procedural order of determining class certification and liability.  And, RCFC 23(b)(2) requires a finding of commonality by the Court, not that class certification is inappropriate if the required commonality finding already has been made.  Obviously, the government waived any possible objection to proceeding with litigation of liability first, and plaintiffs should not be prejudiced by the parties' and the Court's collective agreement to stay the class certification issue pending resolution of the parties' cross-motions for summary judgment.

Because of the important benefits afforded to the judicial system and the class members, other federal court decisions have also consistently allowed cases to proceed as class actions after liability was determined against the defendant and damages issues remained.  *See, e.g., Owner-Operator Independent Drivers Ass'n, Inc. v. Arctic Express, Inc.*, 288 F. Supp. 2d 895 (S.D. Ohio 2003) (motion to decertify denied; although damages remained the sole issue to be adjudicated, class certification was still appropriate); *Lopez v. Orlor, Inc.*, 176 F.R.D. 35 (D. Conn., 1997) (class successfully moved for summary adjudication with respect to liability; despite defendants' objections, court continued to certify class with respect to both liability and damages); *Brown v. Pro Football, Inc.*, 146 F.R.D. 1 (D.D.C. 1992)("reasonable approximation of damages is achievable through

a common formula"); *Sala v. Nat'l R.R. Passenger Corp.*, Civ. A.
No. 88-1572, 1988 WL 84125, at *4 (E.D. Pa. Aug. 4, 1988)
(denying Amtrak's motion for reconsideration after Amtrak
conceded liability, and holding that Amtrak's concession
reinforced the court's initial determination that common
questions of law or fact existed and that continuing to certify
the class achieved judicial economy "by preventing the
proliferation of fifty or more duplicative lawsuits" and
eliminated "the likelihood that some passengers with relatively
small claims may not bring individual lawsuits due to the high
costs involved.").

      The government argues that the potential class members "are
geographically dispersed throughout the United States, and
occupy a wide array of job positions with widely varying
responsibilities under any number of different managerial
structures and authorities." (Def. Opp'n at 15). Defendant made
an identical argument in *Barnes*.  The *Barnes* court found that
this "does not alter the commonality calculus because, at its
core, this lawsuit challenges a system-wide practice or policy
that affects all of the putative class members." *Barnes*, 68 Fed.
Cl. at 496 (internal quotations and citations omitted).  In
*Barnes*, the plaintiffs and putative class members were "present
and former employees of the Navy who regularly work or worked at
night." *Barnes*, 68 Fed. Cl. at 496.  The court held that the
case involved common questions of law and fact sufficient to
satisfy RCFC 23(a)(2), the "most basic of [which] involve[d]
whether the Navy has systematically failed to pay the specified

individuals premium pay for leave of less than eight hours per pay period or on certain holidays in violation of various statutes, among them 5 U.S.C. § 5546." *Id.* (footnote omitted). Parallel common questions of law and fact sufficient to satisfy RCFC 23(a) exist in *Curry*.

Moreover, the stipulated facts satisfy the requirements of RCFC 23(b)(1) that "the United States has acted or refused to act on grounds generally applicable to the class."  And, the Court found that the DVA has acted on grounds applicable to the whole class, justifying relief for the whole class, inasmuch as the DVA has uniformly failed to pay the proper compensation to the plaintiff class who were regularly scheduled to work at night or on weekends but whose night or weekend additional pay pursuant to 38 U.S.C. §§ 7453, 7454 and/or the DVA's own regulations was not paid to them when they took authorized paid leave.

Accordingly, the commonality requirements of RCFC 23(a)(2) and 23 (b)(1) are satisfied.

### 2.   Common Legal and Factual Issues Predominate Over Any Individual Issues.

The common legal and factual issues in this case, discussed above, predominate over any individual issues because, as in *Barnes*, the DVA's "failure to comply with the Federal pay statutes [and the DVA's own regulations] is systemic and long-standing . . . ." *Barnes*, 68 Fed. Cl. at 496-97.  This "issue plainly is more substantial than – and thus predominates over – the relatively straightforward calculation issues associated

with determining the hours and amounts of premium pay to which each putative class member may be entitled." *Id.* at 497; *see also Taylor*, 41 Fed. Cl. at 446 ("one core legal question" is sufficient); *Christensen v. United States*, 49 Fed. Cl. 165, 167 (2001) ("factual issues affecting each individual member of the class and their assigned category are diminutive when compared to the overriding legal issues involved"); *Favreau, II v. United States*, 48 Fed. Cl. 774, 779 (2000) (factual differences "would not appear to be relevant to the court's resolution of the common legal issues . . . The third *Quinalt* factor is satisfied"); *Christian, II v. United States*, 46 Fed. Cl. 793, 817 (2000).

The government cites *Abrams v. United States*, 57 Fed. Cl. 439 (2003), for the proposition that individual damages issues preclude class certification. (Def. Opp'n at 18.) *Abrams* was a predecessor to *Barnes* involving Navy employees who alleged the government failed to pay them night and Sunday premium pay when excused from work on official holidays and on paid leave. *See Barnes*, 68 Fed. Cl. at 497; *Abrams*, 57 Fed. Cl. at 440. The government conceded in *Abrams* that it owed premium pay and represented to the court that class certification was unnecessary as it would pay back pay and interest to approximately 1,800 employees, thereby potentially mooting the issue. *See Barnes*, 68 Fed. Cl. at 497-98; *Abrams*, 57 Fed. Cl. at 441. The *Abrams* court denied class certification, concluding individual damages issues outweighed common issues. *Abrams*, 57 Fed. Cl. at 441. But the Navy reneged on its representation

after class certification was denied, and the *Barnes* court
pointed out that "when push came to shove," only the 39 named
employees actually benefited from the later *Abrams* settlement,
leaving unpaid the remaining 1,800 employees to be among *Barnes'*
potential class members. *Barnes*, 68 Fed Cl. at 498. "Based on
these events, this court will not ignore the apparent
commonality of the issues presented here based upon an expedient
concession that Defendant might revoke at any time and that, if
history is any guide, might never be applied administratively to
the putative members of the class." *Id.*

The government also cites *Black v. United States*, 24 Cl.
Ct. 471 (1991), *Cutright v. United States*, 15 Cl. Ct. 576
(1988), and *Busby Sch. of the No. Cheyenne Tribe v. United
States*, 8 Cl. Ct. 596 (1985), as support for its argument that
individual issues of damages entitlement preclude class
certification. (Def. Opp'n at 17-18.) These pre-RCFC 23 cases
are distinguishable here, just as they were in *Filosa v. United
States*, 70 Fed. Cl. 609 (2006). In *Filosa*, nurse care managers
employed by the DVA alleged that the DVA improperly withheld
"additional pay" for on-call duty services performed beyond
regular working hours in violation of Title 38. *See id.* at 611,
613-14. The government opposed plaintiffs' class certification
motion, arguing, among other things, that the proposed class did
not meet the "commonality" requirement of RCFC(b)(2) because
individual class members would have to prove entitlement to on-
call pay "(i.e., that they were officially scheduled to perform
services) during a particular period or periods and that such

pay was not provided." *Id.* at 618.  The government also argued
that individual factual issues as to damages remained.  *Id.*  The
*Filosa* court distinguished and rejected *Black*, *Cutright*, and
*Busby*.  *Id.* at 618-19.  Those cases are equally inapplicable
here.

>          a.   **Class Certification Is Appropriate Even If**
> **Individual Damages Must Be Determined.**

*Barnes*, *Filosa*, and *Land Grantors* all conclude under
analogous circumstances that individual damages issues do not
predominate over common questions of law and fact.  Indeed, if
individual damages calculations were determinative, "there
scarcely would be a case that would qualify for class status in
this court." *Barnes*, 68 Fed. Cl. at 498; *see also Filosa*, 70
Fed. Cl. at 619 (quoting same); *Land Grantors*, 71 Fed. Cl. at
624 (citing *Barnes* and *Taylor*, 41 Fed. Cl. at 444).

Here, the Court determined liability based upon the common
fact that each of the class members had their pay reduced when
on authorized, paid leave.  Their individualized damages were
not relevant to the determination of liability encompassing the
entire class.  As the court held in *Moore v. United States,* 41
Fed. Cl. 394, 399 (1998), "the computation of damages, although
necessarily individualized, should be relatively formulaic."
*See also Land Grantors*, 71 Fed. Cl. at 625 ("[i]t is premature
to assume that individual determination of damages will be
problematic"); *Barnes*, 68 Fed. Cl. at 498; *Hannon v. United
States*, 31 Fed. Cl. 98, 103 (1994) ("Moreover, if liability is
found, and quantification of . . . damages remains the sole

issue which requires a separate determination in each case, class certification should not be ruled out") (cited with approval in *Moore*);[3] *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) (damage issues do not overcome class certification with respect to liability); *Seidman v. American Mobile Sys. Inc.*, 157 F.R.D. 354, 360 (E.D. Pa. 1994) (individual damages calculations do not overcome certification based on common liability determination in securities fraud case); *Brown v. Pro Football*, 146 F.R.D. at 3 (holding there was a common method of proof of damages, and that a "reasonable approximation of damages is achievable through a common formula"); *accord Arctic Express, supra*; *Lopez v. Orlor*,

---

[3] In employment wage and hour cases, courts have repeatedly held that individual issues over calculation of damages do not defeat class certification. *See, e.g. McLaughlin v. Liberty Mut. Ins. Co.*, 10 Wage & Hour Cas. 2d (BNA) 24 (D. Mass. 2004) (overtime pay); *Bell v. Farmers Ins. Exchange*, 9 Wage & Hour Cas. 2d (BNA) 726 (Cal. 2004)(same); *Noble v. 93 University Place Corporation*, 9 Wage & Hour Cas. 2d (BNA) 1057 (S.D.N.Y. 2004)(same); *Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527 (W.D. Pa. 1994) (severance, vacation, bonus and other employment benefits); *Haywood v. Barnes*, 27 Wage & Hour Cas. (BNA) 873 (E.D.N.C. 1986)(itemized pay statements).

*Inc., supra.*[4]   The court rejected the government's very same argument in *Filosa*, stating that it could certify the class for liability purposes and "[l]ater, if necessary, the court can use a formula to determine damages for individual class members." *Filosa*, 70 Fed. Cl. at 619.

### b.   DVA Should Be Ordered to Re-Calculate the Precise Amount of Back Pay and Interest Owed to Each Eligible and Qualified Class Member.

In the case at bar, the government failed to provide night and weekend additional pay in clear contradiction of Title 38, the DVA's own regulations and the *Lanehart* doctrine.   Yet the government argues, without explanation, that class certification should be denied because damages would be a matter of "speculation."   (See Def. Opp'n at 19.)   But defendant maintains the books and records electronically with respect to the pay earned by each of the members of the class who regularly worked at night and/or on weekends.   *See Taylor*, 41 Fed. Cl. at 445 (former government employees are generally "readily identifiable" and "easily reachable").

Plaintiffs will demonstrate below how examination of those records would identify those pay periods in which each member of the class used authorized paid leave.   Examination of those same

---

[4] Virtually every successful class action will reach a point where liability is resolved against the defendant leaving as the remaining issue the calculation of each individual class member's damages.   *See Brown, supra* at 4 ("'[i]t is settled that individual issues of fact will invariably be present, and that that fact will not preclude a class action'") (quoting H. Newburg, 3 *Newburg on Class Actions* §18.07 (2d ed. 1985).

records would establish not only whether or not each member of the plaintiff class regularly worked at night and/or on weekends, but also how much their regular pay was reduced when they used authorized paid leave. Individualized damages plus interest could then be ascertained for each member of the class. Plaintiffs respectfully submit that such a precise computation of damages is not speculative, but rather places the burden of accountability upon the wrongdoer in accordance with the old adage, "If you break it, you own it." The DVA violated the law systematically for a number of years. The most direct, and fairest, method of remedying those violations would be for DVA to re-compute the appropriate amount of additional pay owed to each class member who chooses to "opt-in" after receipt of an appropriately framed class notice.

As demonstrated by the attached declaration and Earnings and Leave Statements, the government's bi-weekly pay records clearly show the number of hours each employee regularly worked at night and/or either on Saturday or Sunday. (See Declaration of Barbara Jean Cain in Support of Plaintiffs' Reply ¶ 3, and exhibits thereto; Pls. App. at 6, 9-14.) Moreover, a comparison of successive bi-weekly Earnings and Leave Statements discloses how many hours of night premium pay and/or Saturday (or Sunday) premium pay was NOT paid to the employee when he or she used annual, sick, or other paid leave, as well as the dollars-and-cents diminution of additional pay. (See Cain Decl. ¶¶ 3-4; Pls. App. at 6-14.)

Thus, DVA could be ordered to provide a detailed worksheet or Excel spreadsheet documenting each re-computation.  DVA's re-computation as to any individual claimant would stand unless formally challenged by class counsel or the claimant; the Court could appoint an independent, professional Class Action Administrator to process the mailing of the class notice, the receipt and management of claims forms, the determination of eligibility, and even to resolve with finality any potential objections to the re-computation of additional pay by DVA.  The computations of back pay and interest involve simple arithmetic.  Consequently, individual trials on the issue of damages are unnecessary.

Defendant cannot be heard now to complain that it is somehow "speculative" for the DVA to re-compute the proper amount of additional pay that should have been paid when authorized leave was used by the class.  By virtue of the stipulated facts, the government admitted that the DVA knew how to compute, and how to include, night and weekend "additional pay" when class members used paid leave.  Defendant acknowledged that the DVA applied the *Lanehart and Armitage* doctrines in three general categories: (1) as to night premium pay, whenever all members of the class (hybrids and RNs, PAs and EFDAs) used less than eight hours of paid leave within a pay period from the inception of the limitations period on September 4, 1995 to the present time; (2) as to weekend premium pay, whenever designated hybrids used all forms of paid leave on weekends from October 1993 to October 1997; and (3) as to weekend premium pay,

whenever RNs, PAs and EFDAs used paid court and military leave from October 1993 to October 1997. In fact, to this day DVA still applies the *Lanehart and Armitage* doctrines as to night premium pay for hybrids, though erroneously subject to the eight-hour limitation. Thus, when it was at least partially adhering to the *Lanehart and Armitage* doctrines, the DVA knew how to determine when hybrids and nurses were regularly scheduled to work at night and/or on weekends, and how to calculate the amount of additional pay that must be paid to them when they use paid leave. In other words, DVA knows how to do it. If ordered to compute damages in accordance with the specific findings of this Court as to liability, DVA has the electronic pay information and the database of class members' names to enable it to re-calculate the proper amount of additional pay that it should have paid to its employees in the first place.

Alternatively, damages can be established by other means without necessitating an individual trial for each class member, such as through the use of statistics. Courts have discretion to use statistical methodology of random sampling and extrapolation for determination of class damages. *Barnes*, 68 Fed. Cl. at 499 ("it is noteworthy that this court has employed damage estimations in other cases, and conceivably could employ similar principles here) (quoted with approval in *Filosa*, 70 Fed. Cl. at 619-20); *see also Grochowski v. Phoenix Const.*, 318 F.3d 80, 87-88 (2d Cir. 2003); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994); *McLaughlin v. DialAmerica Mktg.*,

*Inc.*, 716 F. Supp. 812, 816-17 (D.N.J. 1989) (formulas used to award back wages owed to non-testifying employees).

Another option, as noted in *Moore*, 41 Fed. Cl. at 399 n.3, involves appointing a special master pursuant to RCFC 53 to resolve any contested individual damages computations.

In any event, class certification is the most efficient and just vehicle to remedy defendant's violation of settled law.

**D.   Typicality:  Plaintiffs' Claims Are Typical of the Putative Class Members' Claims.**

Rule 23(a)(3) requires that "the claims of the representative parties are typical of the claims of the class." "The threshold for 'typicality'. . . is not high." *Filosa*, 70 Fed. Cl. at 620 (citation omitted).  The named plaintiff needs to show that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Barnes*, 68 Fed. Cl. at 498 (internal quotations and citations omitted).  Here, the government's own stipulation of facts confirms that plaintiffs' claims are typical, and in some instances identical, to the claims of the class members.

In this case, the putative class members are RNs, hybrid employees, PAs and EFDAs.  The current named plaintiffs are an LVN (a "hybrid" employee) and an RN.  (Complaint ¶ 5; Stip. ¶¶ 1, 2; Pls. App. At 1.)  The additional 14 proposed named plaintiffs listed in Plaintiffs' Motion For Leave to Add Additional Plaintiffs are RNs and hybrid employees (LVNs and LPNs).  This Court has ruled that the same rules and regulations that apply to

RNs apply equally to PAs and EFDAs and that the entitlement of PAs and EFDAs to "additional pay while on authorized, paid leave is *the same*" as that of RNs. *Curry*, 66 Fed. Cl. at 607 (emphasis added). Thus, the interests of PAs and EFDAs are identical to those of RNs.

In summary, the government admits:   (1) the current named plaintiffs are an RN and a hybrid employee; (2) the putative class members are RNs, hybrids, PAs and EFDAs (and this Court has found that the interests of PAs and EFDAs are the same as the interests of RNs); and (3) when RNs, hybrids, PAs and EFDAs took or used accrued authorized paid leave during periods of time they would have regularly and customarily been scheduled to work at night and/or on weekends, the DVA reduced their customary and regular "pay," under the circumstances described in the Joint Stipulation, by amounts equal to the "additional pay" they would have received had they not taken paid leave.

Plaintiffs' claims are therefore typical of the proposed class.  Here, as in *Barnes*, "[t]he only distinctions raised by Defendant in this regard are inconsequential." *Barnes*, 68 Fed. Cl. at 498 (finding that any individualized damage determinations would not prevent granting class certification). The reasons outlined above supporting "commonality" apply equally in the "typicality" analysis. *See id.* (noting that the two analyses "tend[ ] to merge"). As discussed in the "commonality" section above, the *Barnes* court also rejected the government's arguments, raised here as well, that class members hold different positions and are geographically diverse, because

the unifying foundation in plaintiffs' and the class members' claims is the system-wide policy of withholding additional pay.[5] *See Barnes*, 68 Fed. Cl. at 496.

Similarly, the government argues plaintiffs' claims are not typical because of *potential* differing policies and practices such as "time and accounting pay procedures." (Def. Opp'n at 22.) There is no such evidence, and again, defendant's stipulation of facts admits to a systemic pay practice. In addition, "consistent with the practice under the Federal Rules, if necessary, this court could later either create subclasses of individuals who were subject to particular payroll systems, or even order separate trials on the issue of damages." *Barnes*, 68 Fed. Cl. at 499. And "it is noteworthy that this court has employed damage estimations in other cases, and conceivably could employ similar principles here." *Id.*

Any individual damages issues therefore are insufficient to defeat class certification, and this case meets RCFC 23's "typicality" requirement.

**E.   Adequacy:  Plaintiffs Adequately Represent the Interests of the Proposed Class.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."

---

[5] Of note, the description of the plaintiff class in *Barnes* included both present and former employees, representing over 20 different positions, from RNs, LVNs and PAs to housekeeping staff, computer operators and warehouse staff.  *Id.* at 493. Thus, the *Barnes* class represented an even broader range of positions than in the instant case.

RCFC Rule 23(a)(4).   Adequacy of representation has two
components.   The first component looks into whether the named
plaintiffs' interests are in conflict with or antagonistic to
those of the class.   *Barnes*, 68 Fed. Cl. at 499.   The second
component examines whether the class is represented by competent
and experienced counsel.   *Id.*; *Linney v. Cellular Alaska P'ship*,
151 F.3d 1234, 1239 (9th Cir. 1998).

Here, each of the named plaintiffs (and the additional
proposed named plaintiffs) fit squarely within the proposed
class and are not subject to any unique defenses.   Defendant
cannot demonstrate how or why the interests of any of the named
plaintiffs could diverge in any way from the interests of any of
the members of the proposed class.   The interest of the named
plaintiffs is to establish that the DVA conform its policies and
practices to the requirements of Title 5, Title 38, the VA's own
regulations, and the *Lanehart* doctrine, and to compensate every
class member for the rightful "pay" which he or she has lost
when on periods of paid leave.   Thus, plaintiffs' interests are
not in conflict with or antagonistic to those of the class.[6]

Moreover, plaintiffs are represented by competent and
experienced counsel.   Plaintiff's lead counsel, Ira Lechner, was
counsel of record in numerous multi-plaintiff employment cases

---

[6] Indeed, as noted above, this Court has found that the
"entitlement [of PAs and EFDAs] to additional pay while on
authorized, paid leave is the same" as that of RNs.   *See Curry*,
66 Fed. Cl. at 607.   Plaintiff Curry's interests are therefore
not only aligned, but identical to the interests of the RN, PA
and EFDA putative class members.

involving the federal government, including *Lanehart* and *Armitage,* and as Class Counsel in *Archuleta v. United States*, C.A. No. 99-205C (June 1, 2006), involving 150,000 potential class members.  Mr. Lechner also serves as Co-Counsel in *Barnes.* (See Declaration of Ira Lechner in Support of Plaintiffs' Reply; Pls. App. at 15-16.)  Co-counsel, Robert Brownlie, is highly experienced at prosecuting and defending against class action suits.  Mr. Brownlie has been counsel in over 75 class action cases during the past 16 years of practice, including *Barnes*, and was found by the *Barnes* court to meet the adequacy of counsel requirement.  *Barnes*, 68 Fed. Cl. at 499.  (See Declaration of Robert Brownlie in Support of Plaintiffs' Reply; Pls. App. at 17-18.)

The government asserts that plaintiffs "seek to use the Court's authority bind the whole group, whether they are willing participants or not . . . ."  (Def. Opp'n at 23.)  Given the requirements of the current RCFC 23, plaintiffs seek to certify only an opt-in class.  Thus, "[t]o the extent the Government is concerned about unidentified class members, those concerns ignore the distinction between FRCP 23 and RCFC 23, *i.e.*, that

the latter provides only for opt-in class actions." *Land Grantors*, 71 Fed. Cl. at 626.[7]

Adequacy of representation clearly exists in this case, and plaintiffs' counsel should be appointed as class counsel pursuant to RCFC 23(g).

**F.   Superiority:   Class Certification Is the Superior Method to Adjudicate This Controversy Fairly and  Efficiently.**

Rule 23(b)(2) requires that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  In reviewing this issue, the Court analyzes, in part, the interest of individual class members in controlling prosecution of separate actions and issues related to the management of a class action.  RCFC 23(b)(2).  The court weighs any potential manageability or fairness problems against "the benefits to the system and the individual members likely to be derived from maintaining such an action." *Barnes*, 68 Fed. Cl. at 499.  Here, analysis of the prerequisites of RCFC 23(b)(2) establishes that class certification is not only appropriate in this case, but is the best method for the fair and efficient adjudication of the controversy.

---

[7] Further, class actions are routinely certified even if *every* potential class member cannot be located.  *See, e.g., Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1304 n.2 (9th Cir. 1990); *Pottinger v. City of Miami*, 720 F. Supp. 955, 958 (S.D. Fla. 1989); *Hartman v. Wick*, 678 F. Supp. 312, 328 (D.D.C. 1988) (certifying class of federal employment applicants despite agency's inability to identify all class members); *Perry v. Beneficial Fin. Co.*, 81 F.R.D. 490, 497 (W.D.N.Y. 1979) (finding class manageable even though up to 75% of members were not readily identifiable).

1.   **The Class Is Manageable.**

As indicated above, plaintiffs' class description carefully details with specificity who is included and excluded within the class (Complaint ¶ 13).

Defendant argues that although the proposed class is numerous, it is unmanageable.  (Def. Opp'n at 13.)  Defendant asserts, with no support whatsoever, that "[t]he process of identifying and testing potential class members would seriously frustrate the prompt resolution of this case."  (Id. at 14.)  As demonstrated above, the government's own records identify the potential class members and provide the specific answers necessary for recalculation of class members' "pay" when they used paid leave at any time during the limitations period extending back to September 4, 1995.  The government further argues that the proposed class is unmanageable because it includes former employees and potential claimants geographically dispersed throughout the world.  But the *Barnes* court rejected this very same argument, noting that these sorts of concerns "are hardly unique to this case and are of less moment where, as here, an agency undoubtedly possesses records from which to identify the addresses of its current employees and many of its past employees . . . ."  *Barnes*, 68 Fed. Cl. at 500.

All of the plaintiffs within the class either work for the United States currently, or receive a monthly retirement check from the United States, or (as defendant admits in its Amended Opposition) defendant has recorded the employee's last known home address on the final "Form 50" that each employee received

upon separating from federal employment.  Under established
inter-agency procedures, the Internal Revenue Service will
assist the DVA in sending the class notice to separated class
members whose old-Form 50 home address is no longer accurate on
a reimbursable basis, without divulging the current address
contained in IRS records to the DVA or to class counsel. (IRS
Policy Statement P-1-87, Part-1218.)  Each plaintiff within the
proposed class suffered monetary loss involving the same factual
background (reduction of additional pay when using periods of
authorized, paid leave), and raising identical legal questions.
Inasmuch as defendant has computer records of each such
employee's Earnings and Leave Statements that identify the
number of night and weekend hours worked per pay period, and the
number of hours of paid leave per pay period, the class is
manageable.  Thus, class certification is appropriate.[8]

---

[8] The government argues the class is not manageable because
individual questions concerning the Court's jurisdiction over
each putative class member's claim "depend[s] upon their
membership in a union that is party to a collective bargaining
agreement and the scope of that agreement."  (Def. Opp'n at 14-
15.)  To the extent this argument refers to *Whitman v. Dep't of
Transp.*, 126 S. Ct. 2014 (2006), the argument does not apply
here.  The U.S. Supreme Court remanded the case to the Ninth
Circuit (i) to consider whether the exclusivity provision (§
7121(a)(1) of the Civil Service Reform Act ("CSRA") or CSRA as a
whole removed federal courts' jurisdiction over claims by
federal employees subject to collective bargaining agreements
and (ii) to determine certain facts relevant to the jurisdiction
issue.  *Id*. at 1215-16.  Thus, the Supreme Court did *not*
determine that CSRA precludes federal jurisdiction.  The
governing law on this issue, therefore, is that of *Mudge v.
United States*, 308 F.3d 1220 (Fed. Cir. 2002), which was decided

**2.   The Claims of Many of the Class Members Is So
Small That It Is Doubtful They Would Otherwise Be Pursued.**

The amount owed each member of the plaintiff class varies
depending on the particular employee's length of employment
during the limitations period, the employee's hourly pay rate,
and the time the employee was excused from work on authorized
leave when the DVA did not provide additional pay as required.
Nonetheless, under the circumstances, plaintiffs anticipate that
*on average* a typical hybrid class member's recovery would be
less than $1,000 plus interest, while a typical RN's recovery
would be less than $ 2,000 plus interest.  However, many hybrids
and RNs who were employed for the entire period from 1995 to the
present time could recover relatively more back pay and
interest.  While individual recovery would not constitute a
significantly large monetary judgment, it would be important to
thousands of individual plaintiffs who are entitled to these
sums under the law.  *See Barnes*, 68 Fed. Cl. at 499-500
("[W]ithout a class action, these individuals may well be unable
to vindicate their rights.").  Obviously, it is unlikely that
each and every plaintiff would bring an individual claim, but
many may bring individualized claims in separate cases,
particularly RNs and hybrids who worked virtually all their
hours each pay period at night and on weekends.  *See Deposit
Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *see also
Taylor*, 41 Fed. Cl. at 447 ($25,000 or less is small enough);


in this Circuit and is therefore binding on this Court.  *Mudge*
concluded federal employees <u>do</u> have the right to seek a judicial
remedy under CSRA's exclusivity provision.  *Id*. at 1232-33.

*Berkley v. United States*, 45 Fed. Cl. 224, 233 (1999) ("[i]f the approximately 1,595 alleged class members who are located throughout the United States, were to bring these not-so-large claims individually, it would be cost prohibitive for some, if not many"); *Favreau, II*, 48 Fed. Cl. at 789.  However, given the inability to join similar claims absent class certification and that this Court's ruling on liability has been publicized, the prospect that thousands of individual cases could be filed certainly would not promote judicial economy and would be entirely unnecessary.  Further, when "the essential and critical legal question . . . has been resolved in favor of the plaintiff[,] . . . [i]t would be almost foolish for individual class members to pursue separate actions and thereby relitigate the legal question which they have already won."  *O'Meara v. United States*, 59 F.R.D. 560, 566 (N.D. Ill. 1973)

Moreover, if the Court does not certify the class, tens of thousands of DVA employees who were underpaid would not even receive any notice of this Court's finding of liability in order to potentially avail themselves of an individual judicial remedy.  And, in that event, the statute of limitations would begin to run anew and may prevent even those claimants who would be fortunate enough to learn of the Court's liability finding from recovering all of the money the government owes them.  Such a combination of inequitable results would run counter to the interests of justice, especially since the government systemically and knowingly withheld these employees' additional pay in direct violation of the established *Lanehart* doctrine.

*See O'Meara*, 59 F.R.D. at 565-66 ("Unless the government hopes to avoid paying many members who are entitled to the benefits provided by Congress, one class action would appear to be desirable from the point of view of all concerned.").

In view of the Court's findings as to liability, it is obvious that the government seeks to bar class certification in a callous attempt to avoid its responsibility to remedy its own violations of law to those who have worked nights and weekends in the government's service.

## V.    CONCLUSION.

The Court has found that the DVA was required to provide night and weekend additional pay to its employees who regularly worked nights and weekends at its hospital and medical facilities when those employees used authorized, paid leave. Yet the DVA failed to pay these required amounts to its employees. Denial of class certification will continue to enable the DVA to avoid paying each employee the "pay" that Congress and the DVA's own regulations mandated he or she receive and will occasion the filing of a multiplicity of suits by many of the class members, to the detriment of those potentially eligible and qualified claimants whose claims are probably too small to pursue in this court. These circumstances

support class certification in this case.  Plaintiffs therefore respectfully request the Court grant the motion for class certification.

Respectfully submitted,

ROBERT W. BROWNLIE, ESQ.
DLA Piper Rudnick Gray Cary
US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel:  (619) 699-2700
Fax:  (619) 699-2701

Co-Counsel for Plaintiffs

s/Ira M. Lechner
IRA M. LECHNER, ESQ.
Attorney
19811-4th Place
Escondido, CA  92029
Tel:  (760) 839-0565
Fax:  (760) 839-5755

Attorney for Plaintiffs

Dated:  September 1, 2006