# In the United States Court of Federal Claims

No. 02-101C
(Filed March 27, 2008)

| | | |
|---|---|---|
| **THELMA R. CURRY and YOLANDA QUIMBY, on behalf of themselves and all others similarly situated**,<br><br>Plaintiffs,<br><br>v.<br><br>**THE UNITED STATES**,<br><br>Defendant. | * | Class certification under RCFC 23; employees of the Veterans Health Administration; additional pay and authorized paid leave under 5 U.S.C. §§ 6303, 6307, 6322, 6323; 38 U.S.C. §§ 7425, 7453, 7454; RCFC 21 motion to add and drop parties. |

*Ira M. Lechner*, Escondido, California, for plaintiffs. *Robert W. Brownlie*, DLA Piper US LLP, San Diego, California, of counsel.

*Hillary A. Stern*, Commercial Litigation Branch, Civil Division, United States Department of Justice, with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, and *Kathryn A. Bleecker*, Assistant Director, all of Washington, D.C., for defendant. *Thomas McKeever*, Office of General Counsel, United States Department of Veterans Affairs, Washington, D.C., of counsel.

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

Before the Court is a motion to certify this matter as a class action. The plaintiffs are current and former employees of the United States Department of Veterans Affairs' Veterans Health Administration ("VHA"). These employees, and the members of the class that they seek to certify, serve or served in health care positions for the VHA, received additional pay for working less-desirable shifts, and had their pay reduced while taking paid leave. *See Curry v. United States*, 66 Fed. Cl. 593, 594-97 (2005). The parties agreed to postpone the question of class certification until liability was adjudicated on summary judgment. *Id.* at 594. After the Court had completely resolved the liability issues, for the most part in the plaintiffs' favor, *see id.* at 603, 607-08, the parties filed additional briefs regarding the class certification motion, and oral

argument on the motion was held. After carefully considering the parties' arguments on class certification, for the reasons that follow the Court GRANTS plaintiffs' motion for class certification. The Court also GRANTS plaintiffs' subsequent motions which, taken together, request leave to add twelve additional named plaintiffs and to withdraw one named plaintiff.

## I. BACKGROUND

In the prior opinion deciding the parties' summary judgment motions, the Court found the government liable for underpaying certain employees of the VHA: (1) registered nurses ("RNs"); (2) "hybrids," who are various health professionals including licensed vocational nurses ("LVNs");[1] and (3) physician assistants ("PAs") and expanded function dental auxiliaries ("EFDAs"). *Id.* Each category of employee is entitled by statute or regulation to both additional pay[2] and some form of authorized leave with pay,[3] but plaintiffs argued that the additional pay they would have received for working their shifts was improperly omitted from their leave pay. *See id.* at 595. After reviewing the statutory scheme and the authority of the Secretary of Veterans Affairs to regulate employee compensation, and following the Federal Circuit's holdings in *Armitage v. United States*, 991 F.2d 746, 751 (Fed. Cir. 1993) and *Lanehart v. Horner*, 818 F.2d 1574, 1583 (Fed. Cir. 1987), the Court determined the following: designated hybrids are entitled to additional pay when taking authorized paid leave at nighttime and are not limited by an eight-hour rule;[4] hybrids who receive additional pay for weekend work are entitled

---

[1] These positions are called "hybrids" because they are governed in some respects by Title 38 and in other respects by Title 5. *See James v. Von Zemenszky*, 284 F.3d 1310, 1314 (Fed. Cir. 2002).

[2] Additional pay is a ten percent premium added for work between 6 p.m and 6 a.m. (and paid for the entire shift if at least four hours of the shift fall within this period), and a twenty-five percent premium added when any part of a shift falls between midnight Friday and midnight Sunday. *Curry*, 66 Fed. Cl. at 595-96. All RNs, PAs, and EFDAs are entitled to additional pay by statute. *See* 38 U.S.C. §§ 7453(b)-(c), 7454. Hybrids are eligible to be designated to receive nighttime additional pay, 38 U.S.C. § 7454(b)(1), and, beginning January 23, 2002, are entitled to receive weekend additional pay. 38 U.S.C. § 7454(b)(2). Prior to that date, hybrids were eligible to be designated to receive the weekend additional pay. *See Curry*, 66 Fed. Cl. at 597 n.8.

[3] Authorized leave with pay includes annual accrued leave, military leave, sick leave, and court leave. *See Curry*, 66 Fed. Cl. at 595.

[4] Under 5 U.S.C. § 5545(a)(2), a nightwork premium is received for periods of leave with pay when fewer than eight hours of leave is taken in a pay period. This rule does not apply to hybrids, whose additional pay due to nighttime work is defined in 38 U.S.C. § 7453(b). *See* 38 U.S.C. § 7454(b)(1). Section 7453(b) contains no eight-hour limit and calculates the premium differently from section 5545(a) -- thus the former cannot be modified *sub silentio* by the latter, due to 38 U.S.C. § 7425(b). *See Curry*, 66 Fed. Cl. at 602.

to additional pay when taking authorized paid leave on weekends, except for shifts after September 30, 1997 any part of which fall on a Sunday;[5] RNs, PAs, and EFDAs are entitled to additional pay when taking authorized paid leave from nighttime shifts, with no eight-hour rule applying to military or court leave; and RNs, PAs and EFDAs are entitled to additional pay when taking authorized paid leave on weekends, except for shifts after September 30, 1997 any part of which fall on a Sunday. *Curry*, 66 Fed. Cl. at 608. Pursuant to a joint stipulation submitted with the summary judgment papers,[6] the government conceded that the VHA applies the eight-hour rule to the paid annual and sick leave from nighttime shifts taken by hybrids; that it has never paid RNs, PAs and EFDAs the weekend additional pay when annual or sick paid leave is taken; and that it stopped paying any weekend additional pay for any authorized paid leave taken by any of the employee categories after October 1997. *See* Ex. 1 to Supp. App. to Pls.' Reply Mem. of Pts. & Auth. in Supp. of Pls.' Mot. for Part. Summ. J. ("Jt. Stip.") ¶¶ 9-10**,** 13.

Plaintiffs initially filed a motion for class certification at the time the amended complaint in this transferred case was filed with our court, and then filed an amended motion on May 21, 2002. The proposed opt-in class would consist of the VHA health care employees in the above-described categories, employed on or after September 5, 1994,[7] who regularly worked shifts entitling them to additional pay but received reduced pay while on paid leave. Pls.' Sec. Am. Mot. to Certify Class Action at 1-2.[8] After defendant filed its opposition to the class certification motion, the Court granted plaintiffs' unopposed motion to stay adjudication of the class certification motion until summary judgment motions were filed and decided. Order (Sept. 3,

---

[5] Congress has prohibited executive branch agencies from paying premium pay for paid leave from a shift falling in whole or in part on a Sunday. 1997 Appropriations Act, sec. 636, 111 Stat. at 1316; *see Curry*, 66 Fed. Cl. at 600-02.

[6] *See Curry*, 66 Fed. Cl. at 594 n.1.

[7] The September 5, 1994 date, taken from the complaints filed in this case, *see* Second Am. Class Action Compl. ¶ 13, appears to be a typographical error -- as six years before the date the district court complaint was filed would be September 5, ***1995***. Plaintiffs silently inserted the correct date of September 5, 1995 when quoting the relevant portion of the complaint in their reply brief supporting class certification, *see* Pls.' Reply Mem. of Pts. & Auth. in Supp. of Mot. to Certify Class Action ("Pls.' Reply") at 11, and that is the date the Court will use for purposes of the motion for class certification.

[8] Plaintiffs originally sought to certify an opt-out class. *See* Pls.' Am. Mot. to Certify Class at 1. The 2002 revision of Rule 23 of the Rules of the Court of Federal Claims (RCFC), however, allows only opt-in classes -- in part because the limits on the court's injunctive powers make it less likely that the circumstances justifying opt-out classes will be found here. *See* RCFC 23(c)(2)(B) & Rules Committee Notes. Plaintiffs as a consequence modified the proposed certification to an opt-in class, leaving the class description otherwise unchanged. *See* Pls.' Reply at 11 n.2.

2002). Once the Court ruled upon the summary judgment motions, defendant was given the opportunity to file and did file an amended opposition to the class certification motion. *See* Def.'s Am. Opp. to Pls.' Mot. for Class Cert. ("Def.'s Opp."). Plaintiffs filed a reply memorandum, with an appendix including, *inter alia*, the declaration of Barbara Jean Cain, a now-retired VHA employee, and declarations of plaintiffs' counsel Ira M. Lechner and co-counsel Robert Brownlie. *See* Exs. 3-5 to App. to Pls.' Reply.

Before filing their reply papers, plaintiffs also moved to add fourteen additional plaintiffs as potential class representatives. *See* Pls.' Mot. for Leave to Add Add'l Pls. The government submitted an opposition to this motion out-of-time, to which plaintiffs replied.[9] Oral argument was held on the two motions, which are granted for the reasons that follow.

## II. DISCUSSION

### A. Criteria for Certifying a Class Action

Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC"), completely rewritten and reissued on May 1, 2002 (and subsequently amended in 2004), governs class actions. The rule's immediate predecessor simply provided that "[t]he court shall determine in each case whether a class action may be maintained and under what terms and conditions." Rule 23 of the United States Claims Court, 9 Cl. Ct. XXI, LI (eff. Nov. 1, 1985); *see also Taylor v. United States*, 41 Fed. Cl. 440, 444 (1998). Although the old rule did not contain any criteria for certifying and maintaining a class action, our court was guided by the Court of Claims precedent *Quinault Allottee Association v. United States* which, in the absence of a formal rule, borrowed some of the criteria then contained in Rule 23 of the Federal Rules of Civil Procedure ("FRCP"). 197 Ct. Cl. 134, 140-41 (1972); *see Taylor*, 41 Fed. Cl. at 445. The current rule follows *Quinault* in borrowing, nearly verbatim, the criteria from FRCP 23, modified to reflect our court's focus on awarding damages rather than issuing injunctive or declaratory relief and our court's choice to restrict class actions to those of the opt-in variety. *See* Rules Committee Notes to RCFC 23. Our rule provides:

> **(a) Prerequisites to a Class Action.** One or more members of a class may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the

---

[9] The government's motion for leave to file this document past the deadline is hereby GRANTED. Plaintiffs have subsequently amended their motion by withdrawing two of the additional potential class representatives. *See* Not. of Withdrawal of Prop. Add'l Class Rep. at 1; Mot. to Withdraw Thelma R. Curry at 1 n.1. Plaintiffs have also moved for leave to withdraw Thelma R. Curry as a named plaintiff, and concurrently renewed their modified request to add additional plaintiffs. *See* Pls.' Mot. to Withdraw Thelma R. Curry.

> claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> **(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> **(1)** the United States has acted or refused to act on grounds generally applicable to the class; and
>
> **(2)** the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class; and (C) the difficulties likely to be encountered in the management of a class action.

RCFC 23(a), (b).

These requirements have been conveniently restated as comprising five elements: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; and (5) superiority. *See Barnes v. United States*, 68 Fed. Cl. 492, 494 (2005). To prevail in their motion to certify a class, plaintiffs must establish that their proposed class action satisfies each element. *See id.* at 495 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997)).[10] For the purpose of determining whether a class action should be certified, the court assumes that the factual assertions contained in the complaint are true. *See id.* (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 405-06 (1977)).

**B. Plaintiffs Have Carried Their Burden and the Proposed Class Is Certified**

Although the defendant disputes this action's suitability as a class action under four of the five class certification elements, the arguments primarily rest on the elements of commonality and superiority. Among the authorities relied upon by the government are *Jaynes v. United States*, 69 Fed. Cl. 450 (2006), *Abrams v. United States*, 57 Fed. Cl. 439 (2003), and several opinions pre-dating the current RCFC 23. *See*, *e.g.*, Def.'s Opp. at 17-19; Tr. at 26, 50. Plaintiffs rely upon, *inter alia*, the relatively recent decisions of our Court in *Barnes* and in *Filosa v. United States*, 70 Fed. Cl. 609 (2006). *See* Pls.' Reply at 1-2, 16-20, 32. As the Court

---

[10] As RCFC 23 is patterned after FRCP 23, other federal courts' treatment of the latter may be persuasive in construing the former. *See*, *e.g.*, *Barnes*, 68 Fed. Cl. at 494 n.1; *Jaynes v. United States*, 69 Fed. Cl. 450, 453 n.8 (2006).

explains below, plaintiffs' authorities are found to be most directly on point and persuasive for purposes of the class certification motion.

*1. The Numerosity Requirement Under RCFC 23(a)(1) Is Not Disputed*

Plaintiffs estimate that membership in their proposed class would exceed 10,000. Second Am. Class Action Compl. ¶ 16. The government concedes that the numerosity requirement has been met by plaintiffs. Def.'s Opp. to Pls.' Mot. for Class Cert. at 14; Def.'s Opp. at 13; Tr. at 31.

*2. Common Questions of Law and Fact Predominate Under RCFC 23(a)(2), (b)(2)*

Without a doubt, there are questions of law and fact that are common to the proposed class. In general, the common question of law is whether health care employees of the VHA who receive premium pay for working less-desirable shifts are entitled to this higher pay when taking authorized, paid leave. *See Curry*, 66 Fed. Cl. at 595-96. The common question of fact is whether the VHA followed a system-wide policy of reducing this pay when health care employees took paid leave. *See id.* at 596-97. Splitting the potential class members into two categories, "hybrids,"[11] on the one hand, and RNs, PAs, and EFDAs, on the other, the government in a joint stipulation has conceded that pay has been categorically reduced when the proposed class members take paid leave. *See* Jt. Stip. ¶¶ 9-11, 13. Thus, the government "has acted or refused to act on grounds generally applicable to the class." RCFC 23(b)(1).

These common questions are very similar to the ones presented in *Barnes*, which concerned premium pay received by employees of naval hospitals and medical facilities. *See Barnes*, 68 Fed. Cl. at 493, 496. Defendant initially argued that there were no common questions in the case *sub judice* because the proposed class consisted of the two separate categories mentioned above, with hybrids' benefits resting on different bases from those of RNs, PAs, and EFDAs. Def.'s Opp. to Pls.' Mot. for Class Cert. at 14-16. This, however, seems at best an argument for dividing the proposed class into two subclasses, under RCFC 23(c)(4). The government now appears to concede that the questions of the VHA health care employees' entitlement to premium pay when paid leave is taken, and the VHA's systematic failure to pay them this amount, are common questions for purposes of RCFC 23. *See* Def.'s Opp. at 16-17. The government instead argues that these common questions are no longer a part of this case. *Id.*

In the summary judgment ruling, the Court determined that hybrids who receive nighttime additional pay are entitled to this additional pay when taking annual or sick leave, regardless of the number of hours of leave taken in a pay period. *Curry*, 66 Fed. Cl. at 602-03. The

[11] The hybrid category, for purposes of this case, consists of certified or registered respiratory therapists, licensed physical therapists, licensed practical or vocational nurses, pharmacists, and occupational therapists. *See* 38 U.S.C. § 7454(b)(1)-(2). It apparently also includes graduate nurse technicians. *See* Jt. Stip. ¶ 8.

government concedes that it does not pay this premium when eight or more hours of leave is taken in a pay period. Jt. Stip. ¶ 9. The Court determined that hybrids who receive weekend additional pay are entitled to this additional pay when taking paid leave, except (beginning October 1, 1997) for shifts any part of which fall on a Sunday. *Curry*, 66 Fed. Cl. at 600-03. The government concedes that in November 1997 it stopped paying the weekend additional pay when hybrids take paid leave. Jt. Stip. ¶ 10. The Court also determined that RNs, PAs, and EFDAs are entitled to weekend additional pay when paid leave is taken, except (beginning October 1, 1997) for shifts any part of which fall on a Sunday. *Curry*, 66 Fed. Cl. at 606-07. The government concedes that it has never paid these employees weekend additional pay when they have taken annual or sick leave, and that it stopped paying them the weekend additional pay for court and military leave in October, 1997. Jt. Stip. ¶ 13. In light of these determinations and concessions, the government argues that "because the Court has already resolved the liability issues in this case, there are no common issues remaining for the Court to decide." Def.'s Opp. at 16.

The problem with this argument is that this Court is not the final word on the question of liability, which may still be appealed. During the hearing on this motion, counsel for the government was given the opportunity to stipulate that no appeal would be taken, and declined. Tr. at 33-34. Thus, the district court decision in *Gaffney v. United States*, which found that a common question did not predominate because that question was already conclusively resolved by the Federal Circuit, has no relevance to this matter. *See Gaffney*, 834 F. Supp. 1, 6 (D.D.C. 1993). Nor is the decision denying class certification in *Abrams* of much relevance. There, the government apparently "conceded the common legal issue" of liability, *Abrams*, 57 Fed. Cl. at 440, "an expedient concession" that was observed only as to the named parties and not the potential class members. *Barnes*, 68 Fed. Cl. at 497-98. Here, the government has not conceded liability for additional pay even for the named parties, let alone the entire proposed class. In any event, given such thorny questions as the statute of limitations period for individual cases, it is unlikely that the government would enter a legally-binding commitment to pay every member of the proposed class the amounts they would be owed under the Court's summary judgment ruling -- and nothing short of such a commitment could remove the common questions from this case.

The Court holds that in deciding whether common questions predominate over individual questions for purposes of class certification, it does not matter whether the common questions have already been summarily adjudicated. If the rule were otherwise, in the future no plaintiffs would ever agree to postpone the determination of a class certification motion until after a motion for partial summary judgment were decided, due to the defendant's "heads I win, tails you lose" result. Under the government's approach, summary judgment in the plaintiffs' favor means the common questions are to be ignored or discounted, and summary judgment in its favor would make class certification moot. *But see Wiesmueller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir. 2008) (holding that a merits determination against a named plaintiff does not moot a pending class certification motion). Defendant has provided no precedents supporting this approach, while the plaintiffs have, to the contrary, identified opinions in which district courts refused to decertify classes after the common liability issues have been decided. *See*, *e.g.*, *Owner-Operator*

*Indep. Drivers Ass'n v. Arctic Express, Inc.*, 288 F. Supp. 2d 895, 901-03 (S.D. Ohio 2003); *Brown v. Pro Football, Inc.*, 146 F.R.D. 1, 3-5 (D.D.C. 1992). The Court concludes that common questions remain, and are not reduced in stature, after they have been ruled upon via summary judgment.

The requirement that common questions of law or fact must "predominate over any questions affecting only individual members," RCFC 23(b)(2), may be characterized as a determination of the substantiality of the "generalized proof" required to resolve certain issues and not others, *see Barnes*, 68 Fed. Cl. at 496 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)), or the logical outgrowth of a challenge to a "system-wide failure." *See Filosa*, 70 Fed. Cl. at 618. Although the element of predominance for maintaining a class action is "far more demanding" than the element of commonality for certifying a class action, *see Barnes*, 68 Fed. Cl. at 496 (quoting *Amchem Prods.*, 521 U.S. at 624), "factual variation among the class grievances" is acceptable as long as "a common nucleus of operative fact" exists. *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). The "[m]ere fact that damage awards will ultimately require individualized fact determinations is insufficient, by itself" to defeat a class action. *McCarthy v. Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1986).

The Court concludes that on the issue of whether the common questions predominate, this case cannot be distinguished from *Barnes*, in which our court appropriately determined that where the government's alleged "failure to comply with the Federal pay statutes is systematic and long-standing, that issue plainly is more substantial than -- and thus predominates over -- the relatively straightforward calculation issues associated with determining the hours and amounts of premium pay to which each putative class member may be entitled." *Barnes*, 68 Fed. Cl. at 497; *see also Filosa*, 70 Fed. Cl. at 618 (finding that "the common question of law satisfies the 'predominance' requirement . . . because the cause of action challenges a system-wide failure"). Clearly, the predominant question in this case is whether the VHA has failed, on a system-wide basis, to pay certain categories of employees premium pay to which they are entitled when they take paid leave. The application of the common question's answer to the members of the proposed class does not involve complicated factual determinations regarding damages. The relevant positions -- RNs, PAs. EFDAs, and the various hybrid positions -- are specific and easily identifiable. Whether or not these employees received nighttime or Saturday premium pay or took paid leave is clearly marked on their individual earnings and leave statements, and is likely retained in the agency's computer records. *See* App. to Pls.' Reply at 9-14.

This case does not involve fact-intensive individualized determinations of the sort required in *Jaynes*, 69 Fed. Cl. at 457-58, where the actual tasks performed and conditions in which they were performed needed to be determined, or in *Black v. United States*, 24 Cl. Ct. 471, 477-78 (1991), where the class that a *pro se* plaintiff sought to establish required individual determinations of mental conditions. Instead, damages can be based on information found on the face of government records, and "could be computed mechanically, with relatively little controversy." *Hannon v. United States*, 31 Fed. Cl. 98, 103 (1994). Indeed, it may well be the case that damages can be determined using a formula or through extrapolations based on

statistical sampling methods. *See Filosa*, 70 Fed. Cl. at 619-20; *Barnes*, 68 Fed. Cl. at 499 (noting our Court "has employed damage estimations in other cases") (citations omitted); *Taylor v. United States*, 41 Fed. Cl. 440, 444 (1998) (explaining that in a class action "the court can use a formula to determine damages for individual class members"); *see also Moore v. United States*, 41 Fed. Cl. 394, 397, 399 (1998) (noting that in an inverse condemnation class action involving potentially more than 2000 members, damages "should be relatively formulaic").

Finally, defendant contends that another individual issue that complicates matters is the question of union membership. *See* Tr. at 28-29. Because the Federal Circuit left open the question whether a collective bargaining agreement ("CBA") can make an administrative grievance procedure the exclusive procedure for back pay claims, *see Mudge v. United States*, 308 F.3d 1220, 1233 (Fed. Cir. 2002), the government argues that it is possible that some class members belong to unions which have waived their right to a judicial forum for back pay claims via the terms of the relevant CBAs. Tr. at 28; *see also* Def.'s Opp. at 3, 15. The Court does not believe that such speculation can elevate individual issues over the predominant common questions in this case, and notes the persuasive precedent from our Court in *Mudge* on remand, which held that "[t]he government's contention that a union has power to negotiate away a federal employee's access to a judicial forum [through a CBA] is without merit." *Mudge v. United States*, 59 Fed. Cl. 527, 532 (2004). Accordingly, plaintiffs have satisfied the requirement of commonality.

*3. Claims of the Named Parties Are Typical of the Class Under RCFC 23(a)(4)*

The threshold of the typicality requirement is "not high," but rather "modest," and the applicable test is "not unusually restrictive." *Fisher v. United States*, 69 Fed. Cl. 193, 200 (2006) (citations and internal quotation omitted). Plaintiffs prevail on this point if they can show that "even if some factual differences exist between the claims of the named representatives and the claims of the class . . . the named representatives' claims share the same essential characteristics as the claims of the class at large." *Id.* at 200 (citation omitted). Typical does not mean identical, *see Bazemore v. Friday*, 478 U.S. 385, 405-06 (1986), and a finding of commonality leads to one of typicality. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) ("Both [requirements] serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected . . . ."). Typicality has been found where the named plaintiffs are similarly situated to the rest of the proposed class by virtue of employment history or land ownership, jurisdiction under the same statute, and allegations of an analogous statutory violation. *See, e.g.*, *Barnes*, 68 Fed. Cl. at 498; *Taylor*, 41 Fed. Cl. at 446-47; *Moore*, 41 Fed. Cl. at 399-400.

Defendant emphasizes the apparent "dissimilarity" of the named plaintiffs to the proposed class. Underscoring the wide geographical distribution of class members, their varied job descriptions and leave schedules, and the array of facilities in which they work, the government argues that typicality cannot be met as a matter of course. *See* Def.'s Opp. at 20-22. Defendant,

however, construes the typicality requirement too narrowly, and relies for support on cases in which the personal history of the claimants -- and of the named plaintiffs -- was paramount. *Cf. Christian v. United States*, 46 Fed. Cl. 793, 816 (1999) (finding claims turned on career field, skill, and individual military record); *Cooke v. United States*, 1 Cl. Ct. 695, 699 & n.5 (1983) (finding claims were based on one's individual relationship to hostages, and nature and scope of injuries). In contrast, the case at bar concerns claims that do not turn on the specific duties of employees or the quality of their performance, but rather on two objective, indisputable factors -- their job category and the shifts they worked.

The current named plaintiffs are a retired RN (Curry) and a hybrid (Quimby), both VHA employees serving within the applicable limitations period who received additional pay for night and weekend work and whose pay was reduced when taking authorized leave with pay. Second Am. Class Action Compl. ¶¶ 5-8, 12; Jt. Stip. ¶¶ 1-3. The members of the proposed class are RNs, hybrids, PAs, and EFDAs, all of whom were or are employed by the VHA on or after September 5, 1995, who regularly received additional pay for nighttime or weekend shifts and whose pay was reduced when taking authorized leave with pay. *See* Pls.' Sec. Am. Mot. to Certify Class at 1-2; Pls.' Reply at 11. The essential characteristics of the plaintiffs' claims -- receipt of additional pay for night and weekend work which was reduced when on paid leave -- are shared with the members of the proposed class. The Court has already found that the entitlement to additional pay when on paid leave is the same for PAs and EFDAs as it is for RNs, *see Curry*, 66 Fed. Cl. at 608, and there appears to be no reason why an RN's claim could not represent all three positions. And while hybrids have a broader entitlement to back pay -- as their nighttime additional pay was improperly limited by the eight-hour rule when taking annual or sick leave, *see Curry*, 66 Fed. Cl. at 602-03 -- this is a potential ground for dividing the class into subclasses under RCFC 23(c)(4)(B), but does not render the claims untypical.

The Court concludes that, regarding the element of typicality, this case again cannot be distinguished from *Barnes*, which concerned the nighttime premium pay of an even wider range of employees than fall within the class proposed here. *See Barnes*, 68 Fed. Cl. at 493. "The only distinctions raised by defendant in this regard are inconsequential." *Id.* at 498. The plaintiffs have carried their burden of establishing typicality.

*4. Plaintiffs and Their Counsel Adequately Represent the Class Under RCFC 23(a)(4)*

Two criteria determine the adequacy of plaintiffs' representation of a class under the rules of our court. First, class counsel must be "'qualified, experienced and generally able to conduct the litigation.'" *Barnes*, 68 Fed. Cl. at 499 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). And second, "'the class members must not have interests that are 'antagonistic' to one another.'" *Id.* (quoting *Drexel*, 960 F.2d at 291). The Court finds that the adequacy requirement is met.

Regarding the first criteria, Messrs. Ira M. Lechner and Robert W. Brownlie have extensive experience in class litigation and appear capable of providing competent representation

to plaintiffs in this matter. Mister Lechner has served as counsel of record in numerous employment cases brought against the United States, including *Lanehart*, *Armitage*, and *Barnes*, and has practiced exclusively in our Court and before the Federal Circuit for the past two decades. *See* App. to Pls.' Reply at 15-16 (Lechner Decl.). Mister Brownlie has served as counsel in over seventy-five class action cases, also including *Barnes*, and has contributed to scholarship in the field. *See id.* at 17-18 (Brownlie Decl.). He also pledges to "commit the resources necessary to represent the class." *Id.* at 18. Defendant has not challenged counsel's qualifications.[12]

Defendant does not appear to seriously challenge the adequacy of plaintiffs to protect the interests of the class. It raises concerns about the opt-out nature of the class as initially proposed (which are no longer relevant), speculates that prospective members may not wish to opt into the class, and implies that plaintiffs cannot represent employees of "more than 300 different facilities of at least half a dozen different types." Def.'s Opp. at 23. But plaintiffs have alleged that they "do not have interests antagonistic to, or in conflict with, the class," Second Am. Class Action Compl. ¶ 18, and defendant has not identified any reason to believe this is not the case. Plaintiffs have satisfied the requirement of demonstrating that they "will fairly and adequately protect the interests of the class." RCFC 23(a)(4).

*5. Class Action Is Superior for Fair and Efficient Adjudication Under RCFC 23(b)(2)*

In order for a class action lawsuit to be maintained in our Court, the Court must find "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." RCFC 23(b)(2). Superiority under RCFC 23(b)(2) encompasses the advantage to prospective class members of litigating their own claims, the risk of inconsistent adjudications should multiple actions be pursued, and the court's conceivable difficulties in managing the class action. *See id.*; *see also Quinault*, 197 Ct. Cl. at 141 (examining, *inter alia*, whether the "claims of many allottees are so small that it is doubtful that they would be pursued other than through this case"). When reviewing motions to certify a class, this court has previously utilized a cost-benefit analysis, weighing foreseeable manageability or fairness problems against "the benefits to the system and the individual members likely to be derived from maintaining such an action." *Barnes*, 68 Fed. Cl. at 499.

Although not always identifying the arguments as such, the government raises several objections challenging the superiority of a class action to resolve the monetary claims of the proposed class members. First, it contends that a class action would not be manageable because class members would be difficult to identify. Def.'s Opp. at 13. Because the agency decided in October 1997 to stop paying employees the weekend additional pay to which they were entitled while on leave, when only Sunday pay was forbidden by Congress, the government argues that

---

[12] Per plaintiffs' request, *see* Pls.' Reply at 31, Messrs. Ira M. Lechner and Robert W. Brownlie are hereby appointed class counsel pursuant to RCFC 23(g). The Court finds these attorneys adequate under RCFC 23(g)(1)(B) and (C). *See* RCFC 23(g)(2)(B).

separating Sunday paid leave from Saturday paid leave unduly complicates matters. *Id.* at 14. Due to the different job positions involved and the differences in entitlements to additional pay in different time periods, the government contends that "the result becomes a class whose very definition is an exercise in confusion." *Id.*; *see also* Tr. at 39. The Court cannot agree.

While deriving and interpreting the sources of the VHA's employees' legal entitlements to additional pay while on paid leave was no simple matter, *see Curry*, 66 Fed. Cl. at 595-607, the result of this determination is not hard to apply to prospective class members. The hybrid category is composed of specific positions at VHA. Since January 23, 2002, all hybrids are entitled to weekend additional pay, but prior to that date only designated employees received it (as was and still is the case concerning nighttime additional pay). *Id.* at 597 & n.8. This is hardly a complication, as prospective class members should know whether or not they received the additional pay in question, and this can be verified by the earnings and leave statements. *See* App. to Pls.' Reply at 9-14. These statements also identify whether the premium pay was for a Saturday or Sunday shift. *Id.* As for RNs, PAs, and EFDAs, only weekend additional pay for leave taken from weekend shifts is at issue. These individuals should know whether they worked on weekends, and this can be verified by the earnings and leave statements. *See id.* This matter is not nearly so complicated as the proposed class in *Armitage v. United States*. *See* 18 Cl. Ct. 310, 314 (1989) (class defined by plaintiffs contained four identifiers, five disqualifiers, and two undefined terms which required self-nomination or -exclusion). For potential members, the questions really boil down to two: did you receive additional pay for regularly working the relevant shift (night or weekend), and did you take paid leave during the relevant period? Here, the definition of the class poses no management difficulties.

The government's other arguments appear somewhat contradictory, although this may be explained by the fact that it was opposing what was initially designated as an opt-out class. On the one hand, the government argues that because "potential class members are geographically dispersed throughout the United States," at perhaps "over 300 facilities nationwide," that coordination and communication "poses logistical problems." Def.'s Opp. at 15. This dispersion, and the inclusion of former employees in the proposed class, makes it less than certain that all potential members will be notified, the government contends. *Id.* On the other hand, the government argues that class certification "would inundate this Court with thousands of claims, each of which would need to be proven individually as to both liability and damages." *Id.* at 26. But these considerations seem, to the Court, to weigh in favor of a class action as the superior means of litigating this matter.

If class certification were denied, the Court would still be "inundate[d]" with thousands of claims, unless the claims are too small to justify being brought individually. But this latter prospect is one of the main justifications for class actions in the first place. *See Amchem Prods.*, 521 U.S. at 617; *Barnes*, 68 Fed. Cl. at 499-500; *Quinault*, 197 Ct. Cl. at 140-41. Plaintiffs allege that there are more than 10,000 potential class members. Second Am. Class Action Compl. ¶ 16. They estimate that a typical hybrid might be entitled to $1,000 plus interest, while a typical RN might be entitled to less than $2,000 plus interest. *See* Pls.' Reply at 34. But for the

efficiencies and economies of a class action, these individuals may not find it possible or practical to obtain a court award of the back pay to which they would be entitled, under this Court's summary judgment ruling. And to the extent that individuals are able to bring their own suits, "there is no way, other than a class action, to ensure the consolidation of cases before a single judge that do not qualify as directly-related cases," *Barnes*, 68 Fed. Cl. at 500, and thus these individuals may not get the benefit of the Court's determinations of the common liability questions. Moreover, due to the geographical dispersion of potential class members, there may well be many individuals who are not aware of the Court's summary judgment ruling and will not, absent notice pursuant to class certification, know that they are entitled to back pay for leave taken from weekend or nighttime shifts. But it is hardly in the interests of justice to keep government employees in the dark concerning their legally-entitled benefits. *See O'Meara v. United States*, 59 F.R.D. 560, 565-66 (N.D. Ill. 1973).

The Court concludes that plaintiffs have established that a class action is superior to any available alternative means of litigating this matter. For this element, the Court again finds that the *Barnes* decision is directly on-point and persuasive. The "cost/benefit analysis tips decidedly in favor of class certification," *Barnes*, 68 Fed. Cl. at 499, for the same reasons given in *Barnes*. *See id.* at 499-501. The Court does not find identifying or notifying potential class members to be particularly daunting, given the records at the government's disposal. And, as was discussed above, a class action might facilitate the use of damages formulas, estimates, or extrapolations based on statistical sampling, making this vehicle superior to individual lawsuits brought by the prospective class members. *See Filosa*, 70 Fed. Cl. at 619-20; *Barnes*, 68 Fed. Cl. at 499; *Taylor*, 41 Fed. Cl. at 444; *Moore*, 41 Fed. Cl. at 399; *Hannon*, 31 Fed. Cl. at 103. If the Court were to subsequently determine, after all class members have opted-in, that damages needed to be determined on an individual basis, the class certification could be altered to cover just the issue of liability, under RCFC 23(c)(4)(A), and separate damages trials could be held. *See, e.g.*, *Barnes*, 68 Fed. Cl. at 499. After all, "courts often bifurcate trials into liability and damages phases, severing common liability questions from individual damages issues." 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.45(2)(a) (3d ed. 1997).

For the reasons explained above, the Court concludes that plaintiffs have established that this case may be maintained as a class action.

### C. Plaintiffs' Request for Leave to Add and to Withdraw Named Plaintiffs Is Granted

Plaintiffs have also moved under RCFC 21 for leave to add twelve additional plaintiffs as class representatives, and to drop Ms. Curry as a named plaintiff. *See* note 9, *supra*. In pertinent part, RCFC 21 states that "parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." RCFC 21. The twelve additional plaintiffs are alleged to be nine RNs who were employed by the VHA and regularly received weekend premium pay, and three hybrids who were employed by the VHA and regularly received premium pay for weekend or night work. *See* Pls.' Mot. to Withdraw Thelma R. Curry at 1-2 & Ex. 1.

Defendant opposed plaintiffs' motion, claiming prejudice because it has not had the opportunity to ascertain whether the new proposed plaintiffs are union members, or even past or present VHA employees. Def.'s Opp'n to Pls.' Mot. to Add Add'l Pls. at 2-3. The government was also concerned that plaintiffs sought to add additional class representatives to bolster their grounds for class certification. *Id.* at 3. Defendant's counsel brought up this second point at the hearing, and acknowledged that once a class were certified it could be appropriate to "promote" some of the class members to be additional named plaintiffs as insurance against something "unfortunate" happening to the named plaintiffs. Tr. at 53.

The Court has already decided to certify plaintiffs' proposed class as meeting the prerequisites to class action under RCFC 23(a) and the maintenance requirements under RCFC 23(b). In doing so, plaintiffs' request for leave to add twelve additional plaintiffs as class representatives was not taken into consideration. Therefore, finding that it is not unjust to permit the addition of named plaintiffs in order to protect the interests of the class, the Court **GRANTS** plaintiffs' motion, as modified, to add additional plaintiffs and to drop Ms. Curry as a named plaintiff.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiffs' motion to certify a class. The opt-in class shall consist of persons who meet the following requirements:

1. Past or present health care employees of the VHA who were or are employed under 38 U.S.C. chapters 73 or 74 as RNs, nurse anesthetists, PAs, EFDAs, certified or registered respiratory therapists, licensed physical therapists, licensed practical nurses, LVNs, pharmacists, occupational therapists, or graduate nurse technicians; and

2. who were or are employed by the VHA on or after September 5, 1995;

3. who regularly received "additional pay" pursuant to 38 U.S.C. §§ 7453 or 7454 for working their regular and customary work schedule; and

4. whose pay for regularly scheduled hours of work, including such additional pay, was or is reduced by those hours for which the employee was or is charged authorized leave under 5 U.S.C. §§ 6303 (annual accrued leave), 6307 (sick leave), 6322 (court leave), 6323 (military leave), or their regulatory equivalents;

5. excluded are physicians, dentists, podiatrists, optometrists, student nurses and other student employees.

The named plaintiffs serving as class representatives now are: Yolanda Quimby, Barbara Jean Cain, Sandra A. Cesnik, Rose Ellen Flint, Sandra M. Gibson, Sue A. Heck, Marie Louise

Laverdiere, Mary Ann Mackin, Mary M. Miller, Florence D. Rice, Nancy L. Robinson, Susan C. Swimley, and Donna L. Thompson.

Henceforth, this case shall be referred to as *Yolanda Quimby,* et al. *v. United States*.

On or before April 28, 2008, the parties shall file a joint status report indicating how this case should proceed, including a proposed course for meeting the notice requirements of RCFC 23(c)(2)(B).

**IT IS SO ORDERED.**

s/ Victor J. Wolski

**VICTOR J. WOLSKI**
Judge