IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YOLANDA QUIMBY, *et al.*, on behalf of themselves and all others similarly situated, | ) | |
| Plaintiffs, | ) | No. 02-101C |
| | ) | Judge Wolski |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

JOINT PRELIMINARY STATUS REPORT

The parties respectfully submit the following joint status report, as requested by the Court in its Order dated March 27, 2008. The parties have not been able to agree on all issues presented in this report. Accordingly, the parties' respective positions are set forth separately below.

## I. PLAINTIFF'S REPORT: CLASS NOTICE.

The Court has granted class certification and found Defendant liable to the class for back pay for failing to pay to the class members the "additional pay" that they would have earned had they not taken annual, sick, military and/or court leave. As the Court found in its Orders granting summary judgment, *Curry v. United States*, 66 Fed. Cl. 593 (2005) ("*Curry I*"), and granting class certification, *Curry v. United States*, ---- Fed. Cl. ----, No. 02-101C, 2008 WL 868038 (Fed. Cl. Mar. 27, 2008) ("*Curry II*"), the class members are civilian healthcare employees of the Veterans Health Administration ("VHA") who fall into two broad categories: (1) "hybrid" employees[1]; and (2) registered nurses ("RNs"), physician assistants ("PAs") and expanded function dental auxiliaries ("EFDAs").

Because eligible class members are owed back pay and interest going as far back as September 1995, Plaintiffs respectfully suggest that it would be necessary to move forward with the class notice, the opt-in procedure, and the determination of individual eligibility to specific

[1] Hybrid employees are a group consisting of allied health professionals including licensed vocational nurses ("LVNs"), licensed practical nurses ("LPNs"), licensed physical therapists, certified or registered respiratory therapists, occupational therapists, pharmacists, and graduate nurse technicians.

damages as expeditiously as possible. Plaintiffs are prepared to cooperate with the Court immediately in designing the Class Notice and applying it to the database of electronically stored information ("ESI") containing the names, current or last known addresses, and social security numbers that the Defendant is obligated to provide in accordance with the Court's findings of liability and class certification. Therefore, Plaintiffs propose the following:

**A. Type of Notice and Claim Form.**

**1. Two Class Notice Forms.**

As outlined in the Court's summary judgment order, the criteria governing eligibility of hybrid employees on the one hand, and Registered Nurses, PAs, and EFDAs on the other hand, are different in a number of respects. Accordingly, Plaintiffs request that two class notices—each specifically "tailored" to each of the two major subgroups-- be sent to facilitate greater understanding by class members and to minimize confusion as between potential claimants within each group. One notice should be sent to all hybrid employees who were (or are) employed by the VHA at any time between September 5, 1995 and the present, specifically related to the criteria identified by the Court that are applicable to hybrid employees. The second notice should be sent to all RNs, PAs, and EFDAs who were (or are) employed by the VHA at any time between September 5, 1995 and the present, specifically addressed to the criteria applicable to that group.

As noted in the Court's Order granting class certification, "class members should know whether or not they received the additional pay in question, and this can be verified by the earnings and leave statements. [Citation omitted.] These statements also identify whether the premium pay was for a Saturday or Sunday shift." *Curry II*, ---- Fed. Cl. ----, 2008 WL 868038, at *9. Thus, Plaintiffs submit that the appropriate notice should be sent to all current and former RNs, PAs, EFDAs and hybrid employees (subject to the limits of the class period) in order to permit them, as a first step in the process, to have the opportunity to self-select whether they fall within the parameters of the class definition, thereby narrowing the number of potentially eligible class members. As the Court noted: "For potential members, the questions really boil down to

two: did you receive additional pay for regularly working the relevant shift (night or weekend), and did you take paid leave during the relevant period?" *Id*. Thereafter, as a second step, Defendant then would have the opportunity to compare each claimant's recollection with the appropriate pay records that it has in its ESI database, subject to challenge by claimants. To notify all potential class members of their opportunity to file a claim is an electronically more simplified, and potentially more accurate, notification process than depending unilaterally on Defendant to select the identity of potential claimants by combing through its records to determine, without external supervision, who it claims worked on nights and weekends and took paid leave during the relevant period.[2] Accordingly, the proposed class notices and claim forms attached to this Status Report provide for this self-selection method in accord with the Court's opinion.

Attached collectively hereto as Exhibit A are the two class notices that Plaintiffs propose. These notices are based in large part on the class notice that was approved by Judge Allegra in the class action case of *Barnes v. U.S.*, Case No. 04-1335C, which is currently pending in this Court. The *Barnes* case involves very similar issues and a similar class as in the instant case.[3] Plaintiffs request that the Court adopt the attached class notices for this case.

Attached collectively hereto as Exhibit B are the two claim forms that Plaintiffs propose. These claim forms are based on the claim form was used in *Archuleta v. United States*, Case No. 99-205C, where Judge Smith of this Court approved the class settlement. The *Archuleta* case

[2] Further, allowing Defendant to select the potential class members who get notice would be like allowing the party that violated the law to choose who is permitted to bring suit against it.

[3] Judge Allegra certified a class in the *Barnes* case of non-military employees of the Department of the Navy who were or are employed after August 18, 1998, who worked "nightwork" as defined by Title 5 at a hospital or medical facility operated by or for the Department of the Navy, whose premium pay for "nightwork" under Title 5 was unpaid for "periods of leave with pay during these hours" of less than eight hours within a pay period, and/or whose "pay" for officially authorized holidays under Title 5 was not "the same pay for that day as for a day on which an ordinary day's work is performed" because it did not include the "nightwork" premium pay for "periods of absence with pay during these hours due to holidays" under Title 5. *Barnes v. U.S.*, 68 Fed. Cl. 492, 502-03 (2005).

involved similar issues and a similar class as in the instant case.[4] Plaintiffs request that the Court adopt the attached claim forms for this case.

**2. Class Notice and Claim Form Sent Simultaneously.**

Because there should be two class notices, there should also be two claim forms. Further, the class notices and claim forms should be sent simultaneously for ease of understanding among class members, to minimize the likelihood that class members will no longer have the notice by the time the claim form arrives, and to decrease mailing costs.

**B. Administration of Class Notices.**

**1. Class Action Administrator.**

Plaintiffs request that a class action administrator be used to streamline and coordinate the mailing of notices and receipt of returned claim forms. Judge Allegra in the *Barnes* action designated an administrator where the class was estimated to contain only 6,000 members. Plaintiffs estimate the class size in the instant case will be in excess of 100,000 employees and former employees. Therefore, it is proper to appoint a class action administrator in this case.

Plaintiffs propose that Epiq Systems Inc. (which acquired Poorman-Douglas Corp. in 2004) be used as the class action administrator. Judge Smith in the *Archuleta* case approved Epiq Systems (known as Poorman-Douglas at that time) to serve as Class Administrator for a class of approximately 100,000 employees, and Judge Firestone of this Court also designated Epiq Systems as Class Settlement Administrator in *NTEU v. United States*, 54 Fed. Cl. 701 (2002). (See Declaration of Ira M. Lechner ("Lechner Decl."), attached hereto as Exhibit C.) As explained in his declaration, Mr. Lechner has worked intensely with Epiq Systems for two years in the *Archuleta* case and has found the company to be highly competent and professional. (Id.) Further, the government had no objection to Epiq Systems in either the *Archuleta* case or the

[4] Judge Smith certified a class in the *Archuleta* case of retired and separated employees of 17 federal agencies (other than the VA) who regularly received Sunday premium pay and/or a foreign post allowance, immediately prior to retirement or separation, or whose pay rate would have increased as a result of pay adjustments that would have become effective for that employee had the employee remained in service for the period of his or her unused annual leave.

*NTEU* litigation. (See id.) Attached hereto for the Court's reference is a presentation prepared by Epiq Systems that illustrates the company's capabilities and experience with respect to administering the class notice and the opt-in responses in this case. (Ex. D.)

In particular, Plaintiffs propose that the attorneys involved in this action, and the relevant employees from Epiq Systems, sign a confidentiality agreement not to disclose the class members' private information as was executed in *Archuleta* with the government's consent. As described below, Defendant should be required to provide Epiq Systems with an ESI list of all potential class members, including their names, Social Security Numbers ("SSNs") and current or last known addresses. Plaintiffs request that the Court order Defendant to provide this ESI list within 30 days after the Court enters an order concerning the requests in this Joint Status Report and Plaintiff's accompanying Motion for Order Requiring Defendant to Bear Class Notice and Administrative Costs, or within 30 days after Plaintiffs' attorneys and relevant Epiq employees execute the appropriate confidentiality agreement (or a reasonable time as certified by Defendant).

**2. Specifics Of Class Action Notices**

Plaintiffs propose that the potential claimants to whom the two class notices and claim forms should be sent include: (1) individuals within the putative class who are currently employed by the VHA; (2) individuals within the putative class who retired or separated from September 5, 1995 to the present, as well as (3) individuals who died during the class period. Accordingly, Plaintiffs request that the Court require Defendant to electronically transmit to Epiq Systems the following information:

(i) the full name, Social Security Number ("SSN"), and current mailing address for RNs, PAs, EFDAs, and hybrids who are currently employed by the VHA. This information is now available in the VHA's records;

(ii) the full name, SSN, and current mailing address for RNs, PAs, EFDAs, and hybrids (and their spousal annuitants) who retired during the class period and who currently receive a

monthly annuity from the United States. This information is available from the Office of Personnel Management ("OPM");

(iii) the full name, SSN, and last known mailing address for RNs, PAs, EFDAs, and hybrids who retired on or after September 5, 1995 but who died in the interim without leaving a living spousal annuitant. This information also is available from OPM;

(iv) the full name, SSN, and last known mailing address of RNs, PAs, EFDAs, and hybrids who separated from September 5, 1995 to the present time. This information is available in VHA records, or from the National Personnel Records Center.

After Defendant has electronically transmitted the above information to Epiq Systems, Epiq Systems will cross-check that information with respect to former employees identified in categories (iii) and (iv) with its extensive internal databases to obtain any updated addresses. Epiq will then mail the class notices, place the advertisements featuring the class notices in the publications selected by the Court, and organize and manage the notices and the opt-in forms that are returned. (*See id.*)

**3. Method of Notice and Administration.**

To increase the likelihood that as many class members as possible who were underpaid are able to opt-in to the class and receive the damages to which they are entitled, Plaintiffs propose that the notice period should be 120 days in length (with a grace period of 60 additional days for those claimants whose original notice was returned to Epiq as containing an incorrect address in order to provide Epiq with sufficient time to obtain an updated address and re-mail the notice). All potential class members should receive reminder notices via e-mail, telephone and mail at two intervals during the notice period. Plaintiffs propose that the first reminder be sent approximately at the midpoint during the 120-day period, and the second reminder be sent near the close of the 120-day period. The reminder notices should provide class members an opportunity to request another claim form if they have lost or misplaced the one that they initially received. (See id.)

Further, Plaintiffs request that, with respect to any class notices returned to Epiq Systems as undeliverable during this notice period, Epiq Systems be permitted to utilize a special Internal Revenue Service ("IRS") Finder's Program. Under this program, the IRS will directly notify potential claimants of their rights to file a claim by using the address in the last-filed income tax return that matches the Social Security Numbers of those individuals whose notices were returned as undeliverable.

In addition to the mailed notices and mail, e-mail and telephone reminders described above, a Notice of Publication should be posted as an advertisement in USA Today, the AARP Magazine, and the professional journals and newsletters identified by Epiq that target nurses, occupational and respiratory therapists, and other healthcare professionals. Epiq has listed the costs of such notices, the dates that such notices must be submitted for publication in order to be printed in the September 2008 timeframe, and the professional orientation of each journal or newsletter. (Ex. E and F.) Notice by publication, in addition to direct mail, is an essential ingredient to providing fair notice to all members of the class because while Defendant can obtain the current address of all putative class members who have retired or who are currently employed at the VA, there are potentially thousands of putative class members who separated from the VA many years ago whose last known address is now invalid. These persons may have married and thereby changed their name, or died, or moved on numerous occasions so that electronic databases can not locate all of them. The notices by publication should run on two separate occasions: the first notice in all of the publications listed in Exhibit E should be timed to run approximately when the mailed notices are placed in the mail, and a reminder notice should be run in all of the professional journals and publications approximately at the midway point during the notice period.[5] Defendant complains of the projected expense of publication, but such costs

[5] As the Court is aware, this case concerns many employees who have separated from the VHA as early as 13 years ago. The VA is the second largest agency in the federal government. Those employees or their surviving family members are potential claimants, and the last known addresses for many of these individuals undoubtedly are out-of-date. Therefore, publication in the national newspaper USA Today, the AARP monthly magazine, and in various professional journals and newsletters directed to nurses and other healthcare professionals is essential to ensure that all potential class members receive appropriate notice of their opportunity to opt-in as

pale in comparison to the multi-millions of dollars that Defendant has underpaid these employees in violation of the law. The time has come for Defendant to remedy its violations.

**C. Defendant Should Bear The Costs of all Class Notices and The Administrative Costs Of The Opt-In Class, as well as Reasonable Attorneys' Fees and Pre-Judgment Interest.**

Because the Court has already found Defendant liable to the class, Defendant should be required to bear all costs of class notice, including costs of identifying class members, distributing class notices and claim forms, publication of notices, and the costs of the administration of the notices and claim forms, including the reasonable and customary management fees of Epiq Systems, as discussed further in the accompanying Motion for Order Requiring Defendant to Bear Class Notice Costs And Administration of Opt-In Class. In addition, Plaintiffs have submitted, concurrently with this Joint Status Report, a memorandum (Ex. G) putting Defendant on notice that Plaintiffs will move at the appropriate time to order Defendant to pay pre-judgment interest and reasonable attorneys' fees under the provisions of the Back Pay Act.

## II. DEFENDANT'S REPORT

### A. Class Notice

#### 1. Individuals To Whom Written Notice Should Be Mailed

Defendant agrees with plaintiffs that mailing two class notices, one directed to RN's, PA's and EFDA's, and the other directed at hybrid employees, will minimize confusion for potential claimants within the two groups. However, defendant does not agree that notices should be sent to "all" employees in those categories. The class certified by this Court consists of employees in those categories who "regularly received 'additional pay' pursuant to 38 U.S.C. 7453 or 7454 for working their regular and customary work schedule." It is to these employees that the notices should be sent.

claimants.

The VA has advised defendant that it has the capability of identifying those employees in the relevant categories who regularly received additional pay. We believe that limiting the notification to these employees will make notification easier as well as faster and more efficient.

**2. Time Frame For Compiling List Of Addressees For Mailing**

Plaintiffs have proposed that the Court order defendant to provide the ESI list within 30 days after the Court enters an order concerning the requests in this joint status report. An ESI list comprised of all the employees plaintiffs propose to include in the list can be prepared within 30 days. The VA has advised us that it will shortly be able to determine exactly how long it will take to review a list of employees comprised as plaintiffs have requested and to reduce it to only those employees who fall within the certified class. As soon as we have received this information, we will file a supplement to this joint status report.

**3. Content Of Notice And Claim Forms**

Defendant agrees with plaintiffs' draft notice and claim forms for RN's, PA's, and EFDA's which are attached to this joint status report. With respect to the notice and claim forms for hybrids, defendant notes that, since this lawsuit was filed, additional categories of employees have been classified as hybrid that are not reflected on the notice and claim forms proposed by plaintiffs. Specifically, in 2003, Congress converted 22 occupations to hybrid status; in 2004, another half-dozen were added to the hybrid category. See Veterans Health Care, Capital Asset, and Business Improvement Act of 2003, Pub. L. 108-170, and Veterans Health Programs Improvement Act 0f 2004, Pub. L. 108-422, as codified at 38 U.S.C. 7401(3) (2006). The notice and claims forms should be modified to reflect these changes.

**B. Class Action Administrator**

Defendant agrees, in theory, that a class action administrator should be used to coordinate the mailing and receipt of returned claim forms. However, we are not prepared to agree to the retention of Equip Systems Inc., as proposed by plaintiffs. First, government counsel is not authorized to agree to the retention of any company to perform a task at an unstated price. Second, even assuming that Equip Systems Inc. has the necessary ability and expertise to perform

the administrative function, it is possible that another company with equal qualifications that can perform the same tasks for a lesser price. Indeed, it is unclear to defendant that a contract to perform the administrative tasks involved in this case can be awarded without competitive bidding. Defendant agrees, however, that if an administrator is appointed, a confidentiality agreement should be signed by company employees as well as the attorneys involved in this action prohibiting participants from disclosing class members' private information.

**C. Method Of Notice**

Plaintiffs have proposed an opt-in period of 120 days from the date notices are mailed, with a grace period of 30 additional days for claimants whose original notices are returned undeliverable. They have also proposed two reminder notices via e-mail, telephone and mail.

Defendant does not object to a 120-day opt-in period, although we generally believe that a shorter opt-in period will generate a greater response. We oppose plaintiffs' request for e-mail and telephone reminders; these methods of contacting putative plaintiffs are excessively intrusive and border upon harassment. Additionally, we believe that one reminder notice 30 days before the end of the opt-in period is sufficient.

Defendant agrees with the proposed grace period for undelivered notices. We also agree that the IRS findings' program is an effective means of reaching putative class members whose present addressees have not be discoverable through any of the other databases mentioned in plaintiffs' portion of this status report.

Finally, defendant opposes plaintiffs' proposal for publication of the notice as an advertisement in USA today, the AARP magazine and the other national publications identified by Equip Systems Inc. The estimated cost of these notices is over $350,000.00, an exorbitant and unjustified sum, especially when added to the expense of the three mailings proposed by plaintiffs. Given the variety of databases plaintiffs have identified for obtaining present addresses for putative class members, the number of putative class members who will be unreachable by mail is likely to be extremely small and cannot justify the expense of a national advertising campaign. As a reasonable alternative to the national advertising proposed by

plaintiffs, defendant suggests that press releases be distributed to columnists, journals, websites, and organizations serving the professions of putative class members and Federal employees generally. We believe this will accomplish the same goal as the national advertising campaign but at a far lesser cost.

**D. Cost Of Class Notice, Attorney Fees And Interests**

Finally, defendant opposes plaintiffs' suggestion that defendant bear the burden of all of the costs of class notice. The general rule, as set forth by the Supreme Court, is that plaintiffs must bear the cost of notification. Eisen v. Carlisle and Jacquelin, 417 U.S. 156 (1974). "It is part of the ordinary burden of financing plaintiffs' suit." Id., at 178-179.

Plaintiffs assert that it is appropriate to impose the cost of notification upon defendant in light of this Court's finding in favor of plaintiffs upon the issue of liability. However, this lawsuit is far from over. At this time, we have no idea what percentage of putative class members will opt in to the lawsuit or how many will ultimately recover damages. Until the lawsuit has been entirely resolved, we cannot determine to what extent a deviation from the "general rule" is justified.

Plaintiffs also appear to be suggesting in their portion of this report, that defendant should be ordered to pay pre-judgment interest and reasonable attorneys' fees and expenses under the provisions of the Back Pay Act, 5 U.S.C. 5596. We note that any application for attorney fees and expenses under the Back Pay Act is premature at this point. However, plaintiffs' counsel has advised us verbally that attorney fees and expenses are mentioned in the status report only to put the Court on notice of plaintiffs' intention to seek fees and expenses at the appropriate time. Therefore, it is not necessary for us to argue the merits of awarding fees at this time.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/Ira M. Lechner, Esq.
IRA M. LECHNER, ESQ.
Attorney
19811-4th Place
Escondido, CA 92029
Tele: (760) 839-0565
Fax: (760) 839-5755

Attorney for Plaintiffs

Robert W. Brownlie, Esq.
DLA Piper US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: (619) 699-2700
Fax: (619) 699-2701

Co-Counsel for Plaintiffs

Dated: May 12, 2008

s/Hillary A. Stern
HILLARY A. STERN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 "L" Street
Washington, D.C. 20530

Tele: (202) 305-7561
Fax: (202) 305-7643

Attorneys for Defendant

Dated: May 12, 2008

**PLAINTIFFS' EXHIBIT A**

UNITED STATES COURT OF FEDERAL CLAIMS

# If you ARE or WERE employed as a Registered Nurse ("RN"), as a Physician Assistant ("PA"), or as an EFDA of the Veterans Health Administration ("VHA") on or after September 5, 1995, a class action lawsuit may affect your rights.

*The United States Court of Federal Claims authorized this notice;this is not a solicitation from a lawyer.*

- **THE UNITED STATES COURT OF FEDERAL CLAIMS IN WASHINGTON, D.C. HAS DECIDED THAT THE VA VIOLATED FEDERAL PAY STATUTES BY FAILING TO PAY REGISTERED NURSES ("RNs") , PHYSICIAN ASSISTANTS ("PAs"), AND EFDAs WEEKEND "PREMIUM PAY" OF 25% IN THREE SITUATIONS:**

- **(1) WHEN RNs, PAs, AND EFDAs WERE EXCUSED FROM REGULARLY SCHEDULED SATURDAY AND/OR SUNDAY WEEKEND DUTY WHENEVER THEY USED PAID ANNUAL LEAVE AND SICK LEAVE BETWEEN SEPTEMBER 5, 1995 AND SEPTEMBER 30, 1997 ; AND/OR**

- **(2) WHEN RNs, PAs, AND EFDAs WERE EXCUSED FROM REGULARLY SCHEDULED SATURDAY SHIFTS (THAT DID NOT INCLUDE ANY SUNDAY HOURS) WHENEVER THEY USED PAID ANNUAL LEAVE AND SICK LEAVE BETWEEN OCTOBER 1, 1997 UNTIL THE PRESENT TIME.**

- **(3) WHEN RNs, PAs, AND EFDAs WERE EXCUSED FROM DUTY FOR SATURDAY SHIFTS (THAT DID NOT INCLUDE ANY SUNDAY HOURS) WHENEVER YOU USED MILITARY TRAINING LEAVE AND/OR COURT OR WITNESS LEAVE FROM OCTOBER 1, 1997 TO THE PRESENT TIME.**

- The Court has decided that the VA was wrong in failing to pay premium pay to RNs, PAs, and EFDAs in these situations as a result of a lawsuit filed by VA employees in the United States Court of Federal Claims.

- The Court also decided to allow the lawsuit to continue as a class action **on behalf of all RNs, PAs, and EFDAs** who were affected by the VA's violations of federal pay laws. The Court will now decide how much back pay and interest will be owed to each RN, PA, and EFDA who decides to be included in the lawsuit by filing an "Opt-In Notice and Claim Form". There is no money available until the Court decides how much the VA must pay in back pay and interest to each eligible RN, PA, and EFDA who files an "Opt-In Notice and Claim Form".

- <u>However, your legal rights are affected, and you have a choice to make now</u>:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **ASK TO BE INCLUDED** | **Be included in this lawsuit. Await outcome. Give up certain rights.** By asking to be included in this lawsuit, you acquire rights to any money that may come from trial or a settlement. If you are included in this lawsuit, you will be bound by the outcome, whether favorable or unfavorable to you. If you ask to be included in this lawsuit, you will not have to pay any lawyer's fee or any expenses. However, you give up any rights to sue the VA on your own, and at your own expense, about the same legal claims that |

| | |
|---|---|
| | have been alleged in this lawsuit. |
| **DO NOTHING** | **Get no benefits from the lawsuit. Keep rights to sue VA on your own and at your own expense.** By doing nothing, you will NOT be included in this lawsuit and you will have **no rights forever** to any money that may come from a trial or settlement. However, you keep the right to sue the VA on your own, and at your own expense, about the same legal claims alleged in this lawsuit. |

- **YOUR OPTIONS ARE EXPLAINED IN THIS NOTICE:**
- **TO ASK TO BE INCLUDED IN THIS LAWSUIT, YOU MUST SUBMIT THIS "OPT-IN NOTICE AND CLAIM FORM" (SEE ATTACHED FORM) BEFORE _______, 2008. IF YOU FAIL TO FILE YOUR OPT-IN NOTICE AND CLAIM FORM BEFORE ___________, 2008, YOU WILL LOSE YOUR RIGHTS TO RECOVER ANY BACKPAY AND INTEREST FROM THIS LAWSUIT FOREVER.**
- **DO NOT DELAY SUBMITTING THIS OPT-IN NOTICE IF YOU WISH TO BE INCLUDED IN THIS LAWSUIT TO RECOVER BACK PAY AND INTEREST.**
- **THIS NOTICE ALSO INCLUDES A CLAIM FORM IN WHICH YOU ASK FOR YOUR SHARE OF THE MONEY, DEPENDING ON WHICH YEARS YOU WERE EMPLOYED, OR ARE STILL EMPLOYED, AS A RN, PA, or EFDA BY THE VHA.**
- **Any questions? Read on.**

## WHAT THIS NOTICE CONTAINS


| | |
|---|---|
| **BASIC INFORMATION**...<br>1. Why did I get this notice?<br>2. What is this lawsuit about?<br>3. What is a class action and who is involved?<br>4. Why is this lawsuit a class action? | PAGE 4 |
| **THE CLAIMS IN THE LAWSUIT**...<br>5. What are the Plaintiffs asking for?<br>6. Is there any money available now? | PAGE 5 |
| **WHO IS IN THE CLASS**...<br>7. I'm still not sure if I am included. | PAGE 5 |
| **YOUR RIGHTS AND OPTIONS**...<br>8. What happens if I submit an Opt-In Notice?<br>9. What happens if I do not submit an Opt-In Notice? | PAGE 6 |
| **THE LAWYERS REPRESENTING YOU**...<br>10. Do I have a lawyer in this case?<br>11. Should I get my own lawyer?<br>12. How will the lawyers be paid? | PAGE 7 |
| **THE TRIAL**...<br>13. How and when will the Court decide who is right?<br>14. Do I have to come to the trial?<br>15. Will I get money after the trial? | PAGE 7 |
| **GETTING MORE INFORMATION**...<br>16. Are more details available? | PAGE 8 |
| **CLASS ACTION OPT-IN NOTICE AND CLAIM FORM**... | PAGE __ |


## BASIC INFORMATION

### 1. Why did I get this notice?

**The VA's records show that you currently work, or previously worked, as an RN, PA, or as an EFDA, for the VHA at some point after September 5, 1995.** This notice explains that the Court has allowed, or "certified," a class action lawsuit against the VA. As an employee of the VA at some time after September 5, 1995, you may be eligible to participate in the class action lawsuit. Therefore, you have legal rights and options that you must exercise now before the Court decides how much back pay and interest is owed by the VA to each of the eligible RNs, PAs, and EFDAs.

## 2. What is this lawsuit about?

This lawsuit is about whether the VA violated federal pay statutes by failing to pay "premium pay" to RNs, PAs, and EFDAs who were regularly scheduled to work in the situations described in the first page of this Notice.

The Court has decided that the claims being made against the VA are correct. The Court now will decide how much back pay and interest is owed by the VA to each one of the eligible RNs, PAs, and EFDAs who file the attached "Opt-In Notice and Claim Form" indicating that they want to be included in the lawsuit.

Judge Victor J. Wolski of the United States Court of Federal Claims is overseeing this class action case. The lawsuit is known as *Quimby, et al., v. United States*, No.02-101C.

## 3. What is a class action and who is involved?

In a class action lawsuit, one or more people called "Class Representatives" (in this case, several RNs and "hybrid" employees of the VA) sue on behalf of other employees who have similar claims. The entire group of employees together is called a "Class", or "Class Members." The people who sued – and all Class Members like them – are the "Plaintiffs" in the case. In this case, the United States of America, on behalf of the VA, is the "Defendant". The United States Court of Federal Claims in Washington, D.C. will resolve the issues for everyone who asks the Court to be included in the Class by submitting an "Opt-In Notice and Claim Form". Those individuals who do not submit an Opt-In Notice will be excluded forever from the Class in this case.

## 4. Why is this lawsuit a class action?

The Court decided that this lawsuit can be a class action and move towards the computation of individual damages consisting of back pay and interest because it meets the requirements of Rule 23 of the Rules of the United States Court of Federal Claims. On March 27, 2008, the Court ruled that this case could be maintained as a class action and determined the following:

- The potential Class is so numerous that joinder of all members is impracticable;
- There are questions of law and fact common to the class;
- The Plaintiffs' claims are typical of the claims of the rest of the Class;
- The Plaintiffs, and the lawyers representing the Class, will fairly and adequately represent the interests of the Class;
- The common legal questions and facts predominate over any questions affecting only individual class members; and
- This class action will be more efficient than having many individual lawsuits.

For more information, see the Court's March 27, 2008 Order, which is available on the website www.myVAbackpay.com , or at the Court.

## THE CLAIMS IN THE LAWSUIT

### 5. What are the Plaintiffs asking for?

The Plaintiffs are asking for money damages as back pay for the amount of weekend "premium pay" that they claim was not paid to all eligible RNs and PAs who file an "Opt-In Notice and Claim Form" as Class Members, plus interest to be paid to all those Class Members.

Class Counsel (see question 10) have recently estimated that the average potential damage award, that may be paid to each Class Member who worked for the VA during the entire class period, is **between $1,000 and $10,000**, depending on your job classification, pay grade, how many weekend shifts you worked, and how many hours of annual leave, sick leave, and/or military/court leave you used during the period between September 5, 1995 and the present time.

Some Class Members may be entitled to more or less depending on their individual circumstances. This is Class Counsel's estimate and it has not been calculated or endorsed by either the Court or the VA.

### 6. Is there any money available now?

No money is available now. Money will only become available to Class Members when the Court decides how much back pay and interest is owed to each eligible Class Member who files an "Opt-In Notice and Claim Form" , or if the Plaintiffs and Defendant choose to settle the case. There is no guarantee that money ever will be obtained.

## WHO IS IN THE CLASS

You need to decide whether you are affected by this lawsuit.

### 7. I'm still not sure if I am included.

If you are still not sure whether you are included, you can get free help by calling or writing to the Class Action Administrator at the phone number or address listed in question 16.

## HERE ARE YOUR RIGHTS AND OPTIONS:

*You must decide whether **to ask** to be included in the Class by submitting an "Opt-In Notice and Claim Form", or to do nothing and be excluded from the Class, AND YOU MUST DECIDE NO LATER THAN __________, 2008, OR BE FOREVER EXCLUDED FROM RECEIVING ANY BACK PAY AND INTEREST FROM THIS LAWSUIT .*

## 8. What happens if I submit an Opt-In Notice?

If you wish to participate in this case and share in any potential damage award of back pay and interest from this case, you must complete and sign an "Opt-In Notice and Claim Form".

The "Opt-In and Claim Form" is attached as the last pages of this packet.

**You must return it via U.S. mail** to Class Action Administrator, c/o Epiq Systems, P.O. Box ____, Beaverton, OR 97005-_____.

Your "Opt-In Notice and Claim Form" must be postmarked no later than _________, 2008.

If your Opt-In Notice and Claim Form is not postmarked by ____________, 2008, you will not be included in the Class forever.

As a member of the Class your rights in this litigation will be represented by the Class Representatives and Class Counsel. You will receive the benefit of, and be bound by, all rulings, orders, or judgment entered or any settlement approved by the Court, whether favorable or unfavorable. **If you choose to participate in this case by submitting an Opt-In Notice and Claim Form, you will NOT be required to pay any attorneys' fees or costs related to the case**.

## 9. What happens if I do not submit an Opt-In Notice and Claim Form?

If you do not submit an Opt-In Notice and Claim Form postmarked on or before________, 2008, you will be barred from participating as a Class Member in this case and you will not receive any monetary recovery from either a trial or settlement.

However, you retain the right to sue the VA separately about the same legal claims that have been alleged in this lawsuit and you will not be legally bound by the Court's judgment in this class action. If you decide to pursue your claim independently, outside this class action, we encourage you to do so immediately and consult with your personal attorney immediately because certain statutes of limitations may bar or limit your claims. You are entitled to enter an appearance in this matter through private counsel if you desire. If you chose to hire your own lawyer, you will personally have to pay that lawyer.

## THE LAWYERS REPRESENTING YOU

### 10. Do I have a lawyer in this case?

The Court decided that Ira Lechner Esq., and Robert W. Brownlie, Esq. of the law firm of DLA Piper US LLP, are qualified to represent you and all Class Members. They are called "Class Counsel." Mr. Lechner and Mr. Brownlie are experienced in handling similar cases against the United States and other employers. **Address all your questions only to the Class Action Administrator at the address noted in the answer to question 16. DO NOT CALL OR WRITE THE UNITED STATES COURT OF FEDERAL CLAIMS.**

### 11. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel is working on your behalf. But, you are permitted to hire your own lawyer if you would like to do so. For example, you can ask him or her to appear in Court for you if you want someone other than Class Counsel to speak for you. However, if you choose to hire your own lawyer, you will personally have to pay that lawyer.

### 12. How will the lawyers be paid?

If Class Counsel succeed in recovering back pay and interest money for the Class, either as a result of trial or settlement, they may ask the Court for their fees and expenses. **You will not have to pay these fees and expenses.** If the Court grants Class Counsel's request, the fees and expenses would either be deducted from any money obtained for the Class, or paid separately by the United States. If the Class Counsel's fees and expenses are paid out of the money obtained for the Class, there will be a reduction in the amount available for distribution to Class Members, and it may reduce the amount of money you may be awarded. **If there is no recovery in this case, you will not be required to pay any attorneys' fees or costs to Class Counsel.** In no event will you be asked to pay Class Counsel directly ("out of pocket") to pay their fees and costs. However, as mentioned in question 11, if you choose to hire your own lawyer, you will personally have to pay your own lawyer.

## THE PROCESS OF DETERMINING INDIVIDUAL DAMAGES

The Court will conduct a process to decide how much the VA owes each eligible, individual Class Member who files an "Opt-In Notice and Claim Form" no later than _______, 2008.

### 13. How and when will the Court decide how much money is owed to each eligible RN or PA:

As long as the case is not resolved by a settlement or otherwise, Class Counsel will have to prove the Plaintiffs' claims. The Court will decide on a process to determine individual back pay and interest to be held in the United States Court of Federal Claims, 717 Madison Pl., N.W., Washington, D.C. 20005. There is no guarantee that the Plaintiffs will get any money for the Class.

## 14. Do I have to attend a trial?

You do not need to attend a trial. Class Counsel will present proof of damages for Plaintiffs, and the VA will present the defenses. You or your own lawyer are welcome to come at your own expense.

## 15. Will I get money after the process is completed?

If the Plaintiffs obtain money as a result of the trial or a settlement, you will be notified about the amount. We do not know how long this will take.

# GETTING MORE INFORMATION

## 16. Are more details available?

The pleadings and other records in this lawsuit may be examined at any time during regular business hours at the Office of the Clerk of the United States Court of Federal Claims. The address for the Court is:

> United States Court of Federal Claims
> 717 Madison PI., N.W.,
> Washington, D.C. 20005.

For more information about this lawsuit, you may view the official website maintained by Class Counsel at www.myVAbackpay.com or you can contact the Class Action Administrator, Epiq Systems. The address for Epiq Systems is:

> Class Action Administrator,
> c/o Epiq Systems,
> P.O. Box _______,
> Beaverton, OR 97005-_____.

The telephone number to reach Epiq Systems is 1-800-__________.

UNITED STATES COURT OF FEDERAL CLAIMS

**If you ARE or WERE employed as a Certified or Registered Respiratory Therapist, Licensed Physical Therapist, Licensed Practical Nurse ("LPN"), Licensed Vocational Nurse ("LVN"), Pharmacist, Occupational Therapist, OR Graduate Nurse Technician—also known as "Hybrid" employees-- by the Veterans Health Administration ("VHA") on or after September 5, 1995, a class action lawsuit may affect your rights.**

*The United States Court of Federal Claims authorized this notice; this is not a solicitation from a lawyer.*

- The United States Court of Federal Claims in Washington, D.C. has decided that the VA violated federal pay statutes by failing to pay night work and weekend "premium pay" to the "hybrid" employees, who worked in the occupations listed above, when you used paid leave in four situations:

- (1) **Those employees who were specifically designated as "hybrid" employees between September 5, 1995 and October 1, 1997**, should have been paid weekend "premium pay' of 25% whenever they were excused from regularly scheduled Saturday shifts (that did not include any Sunday hours) when they used paid annual leave, sick leave, military leave, and/or court or witness leave.

- (2) **Those employees who were specifically designated as "hybrid" employees between October 1, 1997 and January 23, 2002**, should have been paid weekend "premium pay' of 25% whenever they were excused from regularly scheduled Saturday shifts (that did not include any Sunday hours) when they used paid annual leave, sick leave, military leave, and/or court or witness leave.

- (3) **All Certified or Registered Respiratory Therapists, Licensed Physical Therapists, Licensed Practical Nurses ("LPNs"), Licensed Vocational Nurses ("LVNs"), Pharmacists, Occupational Therapists, or Graduate Nurse Technicians who were employed at the VHA between January 23, 2002 until the present time** should have been paid weekend "premium pay' of 25% whenever they were excused from regularly scheduled Saturday shifts (that did not include any Sunday hours) when they used paid annual leave, sick leave, military leave, and/or court or witness leave.

- (4) **All Certified or Registered Respiratory Therapists, Licensed Physical Therapists, Licensed Practical Nurses ("LPNs"), Licensed Vocational Nurses ("LVNs"), Pharmacists, Occupational Therapists, or Graduate Nurse Technicians who were employed at the VHA between September 5, 1995 until the present time** should have been paid nighttime "premium pay" of 10% when these "hybrid" employees were excused from duty between the hours of 6 p.m. and 6 a.m. (such as on the 2nd or 3rd shifts) whenever such "hybrid" employees used annual leave or sick leave from September 5, 1995 to the present time.

- The Court has decided that the VA was wrong in failing to pay premium pay to "hybrid" employees in these situations as a result of a lawsuit filed by VA employees in the United States Court of Federal Claims.

- The Court also decided to allow the lawsuit to continue as a class action on behalf of **all of these employees** who were affected by the VA's violations of federal pay laws. The Court will now decide how much back pay and interest will be owed to each of these eligible employees or former employees who decide to be included in the lawsuit by filing an "Opt-In Notice and Claim Form". There is no money available until the Court decides how much the VA must pay in back pay and interest to each eligible person who files an "Opt-In Notice and Claim Form".

- <u>However, your legal rights are affected, and you have a choice to make now</u>:

| **Your Legal Rights and Options in this Lawsuit** | |
|---|---|
| **ASK TO BE INCLUDED** | **Be included in this lawsuit. Await outcome. Give up certain rights.**<br>By asking to be included in this lawsuit, you acquire rights to any money that may come from a trial or a settlement by the VA. You will not have to pay any lawyer's fee or any expenses. If you are included in this lawsuit, you will be bound by the outcome, whether favorable or unfavorable to you. However, you give up any rights to sue the VA on your own, and at your own expense, about the same legal claims that have been alleged in this lawsuit. |
| **DO NOTHING** | **Get no benefits from the lawsuit. Keep rights to sue VA on your own and at your own expense.**<br>By doing nothing, you will NOT be included in this lawsuit and you will have **no rights forever** to any money that may come from a trial or settlement of this case. However, you keep the right to sue the VA on your own, and at your own expense, about the same legal claims alleged in this lawsuit. |

- **<u>YOUR OPTIONS ARE EXPLAINED IN THIS NOTICE:</u>**
- **TO ASK TO BE INCLUDED IN THIS LAWSUIT, YOU MUST SUBMIT THIS "OPT-IN NOTICE AND CLAIM FORM" (SEE ATTACHED FORM) BEFORE _______, 2008. IF YOU FAIL TO FILE YOUR OPT-IN NOTICE AND CLAIM FORM BEFORE ______________, 2008, YOU WILL LOSE YOUR RIGHTS TO RECOVER ANY BACKPAY AND INTEREST FROM THIS LAWSUIT FOREVER.**
- **DO NOT DELAY SUBMITTING THIS OPT-IN NOTICE IF YOU WISH TO BE INCLUDED IN THIS LAWSUIT TO RECOVER BACK PAY AND INTEREST.**

- **THIS NOTICE ALSO INCLUDES A CLAIM FORM IN WHICH YOU ASK FOR YOUR SHARE OF THE MONEY, DEPENDING ON WHICH YEARS YOU WERE EMPLOYED, OR ARE STILL EMPLOYED, AS A HYBRID EMPLOYEE BY THE VHA.**

- **Any questions? Read on.**

**WHAT THIS NOTICE CONTAINS**


| | |
|---|---|
| **BASIC INFORMATION**........................................................................<br>1. Why did I get this notice?<br>2. What is this lawsuit about?<br>3. What is a class action and who is involved?<br>4. Why is this lawsuit a class action? | PAGE 4 |
| **THE CLAIMS IN THE LAWSUIT** .......................................................<br>5. What are the Plaintiffs asking for?<br>6. Is there any money available now? | PAGE 5 |
| **WHO IS IN THE CLASS** ....................................................................<br>7. I'm still not sure if I am included. | PAGE 6 |
| **YOUR RIGHTS AND OPTIONS**..........................................................<br>8. What happens if I submit an Opt-In Notice?<br>9. What happens if I do not submit an Opt-In Notice? | PAGE 6 |
| **THE LAWYERS REPRESENTING YOU** .............................................<br>10. Do I have a lawyer in this case?<br>11. Should I get my own lawyer?<br>12. How will the lawyers be paid? | PAGE 7 |
| **THE PROCESS OF DETERMINING INDIVIDUAL DAMAGES** .............<br>13. How and when will the Court decide who is right?<br>14. Do I have to come to the trial?<br>15. Will I get money after the trial? | PAGE 8 |
| **GETTING MORE INFORMATION** ......................................................<br>16. Are more details available? | PAGE 9 |
| **CLASS ACTION OPT-IN NOTICE AND CLAIM FORM** ......................... | PAGE __ |

## BASIC INFORMATION

### 1. Why did I get this notice?

The VA's records show that you currently work, or previously worked, as a **Certified or Registered Respiratory Therapist, Licensed Physical Therapist, Licensed Practical Nurse ("LPN"), Licensed Vocational Nurse ("LVN"), Pharmacist, Occupational Therapist, or Graduate Nurse Technician** for the VHA at some point in time after September 5, 1995. This notice explains that the Court has allowed, or "certified," a class action lawsuit against the VA. As an employee of the VA at some time after September 5, 1995, you may be eligible to participate in the class action lawsuit. Therefore, you have legal rights and options that you must exercise now before the Court decides how much back pay and interest is owed by the VA to each of the eligible "hybrid" employees.

### 2. What is this lawsuit about?

- In this lawsuit, a Judge of the United States Court of Federal Claims in Washington, D.C. has decided that the VA violated federal pay statutes by failing to pay night work and/or weekend "premium pay" to the "hybrid" employees, who worked in the occupations listed above, when they used annual leave, or sick leave, or military training leave, and/or court or witness leave in the situations described in the first page of this Notice.

- The Court has decided that the claims against the VA are correct. The Court now will decide how much back pay and interest is owed by the VA to each one of the eligible "hybrid" employees who file the attached "Opt-In Notice and Claim Form" indicating that they want to be included in the lawsuit.

- Judge Victor J. Wolski of the United States Court of Federal Claims is overseeing this class action case. The lawsuit is known as *Quimby, et al., v. United States*, No.02-101C.

### 3. What is a class action and who is involved?

In a class action lawsuit, one or more people called "Class Representatives" (in this case, several RNs and "hybrid" employees of the VA) sue on behalf of other employees who have similar claims. The entire group of employees together is called a "Class", or "Class Members." The people who sued – and all Class Members like them – are the "Plaintiffs" in the case. In this case, the United States of America, on behalf of the VA, is the "Defendant". The United States Court of Federal Claims in Washington, D.C. will resolve the issues for everyone who asks the Court to be included in the Class by submitting an "Opt-In Notice and Claim Form". Those individuals who do not submit an Opt-In Notice will be excluded forever from the Class in this case.

### 4. Why is this lawsuit a class action?

The Court decided that this lawsuit can be a class action and move towards the computation of individual damages consisting of back pay and interest because it meets the requirements of Rule 23 of the Rules of the United States Court of Federal Claims. On March 27, 2008, the Court ruled that this case could be maintained as a class action and determined the following:

- The potential Class is so numerous that joinder of all members is impracticable;
- There are questions of law and fact common to the class;
- The Plaintiffs' claims are typical of the claims of the rest of the Class;
- The Plaintiffs, and the lawyers representing the Class, will fairly and adequately represent the interests of the Class;
- The common legal questions and facts predominate over any questions affecting only individual class members; and
- This class action will be more efficient than having many individual lawsuits.

For more information, see the Court's March 27, 2008 Order, which is available on the website www.myVAbackpay.com, or at the Court.

## THE CLAIMS IN THE LAWSUIT

### 5. What are the Plaintiffs asking for?

The Plaintiffs are asking for money damages as back pay for the amount of "premium pay" that they claim was not paid to all eligible "hybrid" employees who file an "Opt-In Notice and Claim Form" as Class Members, plus interest to be paid to all those Class Members.

Class Counsel (see question 10) have recently estimated that the average potential damage award, that may be paid to each Class Member who worked for the VA as a "hybrid" employee as described above is **between $1,000 and $ 4,000**, depending on your job classification, pay grade, how many nighttime hours between 6 p.m. and 6 a.m. and/or weekend shifts you worked, and how many hours of annual leave, sick leave, military leave, or court or witness leave you used during the period between September 5, 1995 and the present time.

Some Class Members may be entitled to more or less depending on their individual circumstances. This is Class Counsel's estimate and it has not been calculated or endorsed by either the Court or the VA.

### 6. Is there any money available now?

No money is available now. Money will only become available to Class Members when the Court decides how much back pay and interest is owed to each eligible Class Member who files an "Opt-In Notice and Claim Form", or if the Plaintiffs and Defendant choose to settle the case. There is no guarantee that money ever will be obtained.

## WHO IS IN THE CLASS

You need to decide whether you are affected by this lawsuit.

### 7. I'm still not sure if I am included.

If you are still not sure whether you are included, you can get free help by calling or writing to the Class Action Administrator at the phone number or address listed in question 16.

**HERE ARE YOUR RIGHTS AND OPTIONS:**

You must decide whether **to ask** to be included in the Class by submitting an "Opt-In Notice and Claim Form", or to do nothing and be excluded from the Class, AND YOU MUST DECIDE NO LATER THAN _________, 2008, OR BE FOREVER EXCLUDED FROM RECEIVING ANY BACK PAY AND INTEREST FROM THIS LAWSUIT.

### 8. What happens if I submit an Opt-In Notice?

If you wish to participate in this case and share in any potential damage award of back pay and interest from this case, you must complete and sign an "Opt-In Notice and Claim Form".

The "Opt-In and Claim Form" is attached as the last pages of this packet.

**You must return it via U.S. mail** to Class Action Administrator, c/o Epiq Systems, P.O. Box ____, Beaverton, OR 97005-_____.

Your "Opt-In Notice and Claim Form" must be postmarked no later than _________, 2008.

If your "Opt-In Notice and Claim Form" is not postmarked by _____________, 2008, you will not be included in the Class forever.

As a member of the Class your rights in this litigation will be represented by the Class Representatives and Class Counsel. You will receive the benefit of, and be bound by, all rulings, orders, or judgment entered or any settlement approved by the Court, whether favorable or unfavorable. **If you choose to participate in this case by submitting an Opt-In Notice and Claim Form, you will NOT be required to pay any attorneys' fees or costs related to the case**.

### 9. What happens if I do not submit an Opt-In Notice and Claim Form?

If you do not submit an Opt-In Notice and Claim Form postmarked on or before________, 2008, you will be barred from participating as a Class Member in this case and you will not receive any monetary recovery from either a trial or settlement.

However, you retain the right to sue the VA on your own about the same legal claims that have been alleged in this lawsuit and you will not be legally bound by the Court's judgment in this class action. If you decide to pursue your claim independently, outside this class action, we encourage you to do so immediately and consult with your personal attorney immediately because certain statutes of limitations may bar or limit your claims. You are entitled to enter an appearance in this matter through private counsel if you desire. If you chose to hire your own lawyer, you will personally have to pay that lawyer.

## THE LAWYERS REPRESENTING YOU

### 10. Do I have a lawyer in this case?

The Court decided that Ira Lechner Esq., and Robert W. Brownlie, Esq. of the law firm of DLA Piper US LLP, are qualified to represent you and all Class Members. They are called "Class Counsel." Mr. Lechner and Mr. Brownlie are experienced in handling similar cases against the United States and other employers. **Address all your questions only to the Class Action Administrator at the address noted in the answer to question 16. DO NOT CALL OR WRITE THE UNITED STATES COURT OF FEDERAL CLAIMS.**

### 11. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel is working on your behalf. But, you are permitted to hire your own lawyer if you would like to do so. For example, you can ask him or her to appear in Court for you if you want someone other than Class Counsel to speak for you. However, if you choose to hire your own lawyer, you will personally have to pay that lawyer.

### 12. How will the lawyers be paid?

If Class Counsel succeed in recovering back pay and interest money for the Class, either as a result of trial or settlement, they may ask the Court for their fees and expenses. **You will not have to pay these fees and expenses.** If the Court grants Class Counsel's request, the fees and expenses would either be deducted from any money obtained for the Class, or paid separately by the United States. If the Class Counsel's fees and expenses are paid out of the money obtained for the Class, there will be a reduction in the amount available for distribution to Class Members, and it may reduce the amount of money you may be awarded. **If there is no recovery in this case, you will not be required to pay any attorneys' fees or costs to Class Counsel.** In no event will you be asked to pay Class Counsel directly ("out of pocket") to pay their fees and costs. However, as mentioned in question 11, if you choose to hire your own lawyer, you will personally have to pay your own lawyer.

## THE PROCESS OF DETERMINING INDIVIDUAL DAMAGES

The Court will conduct a process to decide how much the VA owes each eligible, individual Class Member who files an "Opt-In Notice and Claim Form" no later than _______, 2008.

### 13. How and when will the Court decide how much money is owed to each eligible RN or PA:

As long as the case is not resolved by a settlement or otherwise, Class Counsel will have to prove the Plaintiffs' claims. The Court will decide on a process to determine individual back pay and interest to be held in the United States Court of Federal Claims, 717 Madison Pl., N.W., Washington, D.C. 20005. There is no guarantee that the Plaintiffs will get any money for the Class.

### 14. Do I have to attend a trial?

You do not need to attend a trial. Class Counsel will present proof of damages for Plaintiffs, and the VA will present the defenses. You, or your own lawyer, are welcome to come at your own expense.

### 15. Will I get money after the process is completed?

If the Plaintiffs obtain money as a result of the trial or a settlement, you will be notified about the amount. We do not know how long this will take.

## GETTING MORE INFORMATION

### 16. Are more details available?

The pleadings and other records in this lawsuit may be examined at any time during regular business hours at the Office of the Clerk of the United States Court of Federal Claims. The address for the Court is:

United States Court of Federal Claims
717 Madison PI., N.W.,
Washington, D.C. 20005.

For more information about this lawsuit, you may view the official website maintained by Class Counsel, www.myVAbackpay.com or you can contact the Class Action Administrator, Epiq Systems. The address for Epiq Systems is:

Class Action Administrator,
c/o Epiq Systems,
P.O. Box _______,
Beaverton, OR 97005-_____.

The telephone number to reach Epiq Systems is 1-800-__________.

**PLAINTIFFS' EXHIBIT B**

# CLAIM FORM INSTRUCTIONS – FOR RNs, PAs, and EFDAs

The following instructions will help you determine if this is the correct Claim Form for your circumstances, and will assist you in completing the form.

This Claim Form should be completed by all former or current VHA employees:

a) **If you were employed by the VHA as a RN, PA, or as an EFDA, and you were regularly scheduled to work on Saturdays or on Sundays anytime between September 5, 1995 and September 30, 1997**,

**and/or**

b) **If you were (or are) employed as a RN, PA, or as an EFDA, and you were (or still are) regularly scheduled to work on Saturdays (on a shift that did not include Sunday hours) between October 1, 1997 and the present time.**

If you meet any of these requirements, you must fully complete the attached Claim Form to be eligible to receive back pay and interest. Anyone who wants to be included in this class action lawsuit in order to receive back pay and interest must return this form to the Class Action Administrator no later than **______, 2008**.

If you *do not* meet any of these requirements, PLEASE STOP NOW. You may still be eligible for compensation in this case IF YOU WERE A "HYBRID" EMPLOYEE, but this is not the correct Claim Form for your circumstances. You can receive further information about the lawsuit and determine if you are eligible for another type of compensation by visiting the website www.myVAbackpay.com , or by writing to the Class Action Administrator.

## Section A – Class Member and Claimant Information

If you are the Class Member, follow the instructions in the left column. If the Class Member is deceased and you are a spouse annuitant, family representative, or the executor of his or her estate, follow the instructions in the right column. *Required fields have a grey highlight on these instructions.*

| Box | Class Member | Spouse Annuitant, family representative or Executor |
|---|---|---|
| 1-3 | Enter your name | Enter the name of the deceased Class Member (not your name) |
| 4 | Leave blank | Enter your name |
| 5-8 | Enter your mailing address. All correspondence, as well as any award you are entitled to, will be sent to this address. | Enter your mailing address. All correspondence, including any award you are entitled to, will be sent to this address. |
| 9 | Enter your telephone number | Enter your telephone number |
| 10 | Enter your e-mail address. If you do not have an e-mail address, this box can be left blank. | Enter your e-mail address. If you do not have an e-mail address, this box can be left blank. |
| 11 | Enter your Social Security Number | Enter the Social Security Number of the Class member. |
| 12 | Leave blank | Enter your Social Security Number, or enter the Estate Identification Number assigned to the Class Member's Estate. Please note that if you are entitled to an award, this number will be used for tax purposes. |
| 13 | Check the "yes" box | Check the "no" box |
| 14 | Leave blank | Check the appropriate box, based on your relationship to the deceased Class Member. |
| 15 | Check the "no" box | If the Class Member died between September 5, 1995 and the present time, check the "yes" box. Otherwise, check the "no" box. |
| 16 | Leave blank | If you checked "yes" in box 15, enter the date of the Class Member's death. **You MUST provide a copy of the Class Member's death certificate.** |

| Box | Class Member | Spouse Annuitant, family representative or Executor |
|---|---|---|
| 17 | Provide the Employee Status Information in Section B. | Provide the Employee Status Information in Section B. |
| 18 | Leave blank | If there are one or more individuals who you believe might be entitled to share the award, enter the name, Social Security Number and relationship of each person. If there is no one else you believe to be entitled to share the award, write "N/A." |

## Section B – Employee Status Information

This section contains information about your employment with the VHA. Do the best you can in attempting to recall this information as it can be helpful in calculating what award, if any, to which you are entitled. But, if you can not recall these details specifically, do not be concerned as your award will be calculated from VHA records anyway. Please answer the questions to the best of your knowledge. **If you can not recall any of these details, just leave the box blank**:

(1) Do you recall being regularly scheduled to work either on Saturdays or Sundays anytime during any of the following years (check one or more of the boxes if the answer is "Yes" ):

1995____; 1996____; 1997____(between January 1 and September 30);

(2) Do you recall being regularly scheduled to work on Saturdays (on a shift that did not include any Sunday hours) anytime during any of the following years (check one or more of the boxes if the answer is "Yes" ):

1997____(between October 1 and December 31);1998____;1999 _____; 20000_____; 2001____; 2002____; 2003____; 2004____; 2005____; 2006____; 2007____; 2008______

## Section C- Signature

**By signing your name in the space below, you understand that you are consenting to join the collective action of plaintiffs on whose behalf the named Plaintiffs have alleged the violations described in the accompanying notice. You are also declaring, under penalty of perjury under the laws of the United States and applicable state laws, that you were or are one of the employees, or an heir or legal representative of one of the employees described in the accompanying notice, and that, to the best of your knowledge, you believe you are entitled to a distribution arising out of this lawsuit according to the description of the finding of the United States Court of Federal Claims that the VA failed to pay weekend premium pay when you used paid leave, as printed in the accompanying Notice.**

Sign Your Name: ________________________________________ Date: ________________________________

Print Your Name: ______________________________________ Relationship to Employee: ________________

## Submitting your Claim Form

Before you send this form to the Settlement Administrator, be sure you have done the following:

- ☐ Completed all required fields in Section A.
- ☐ Thoroughly reviewed all data in Section B to ensure that it is accurate and complete to the best of your recollection.
- ☐ Signed and dated the certification in Section C.

If you have completed all three steps, please mail the form to:

Class Action Administrator
PO Box _____
Portland, OR 97208-_______

**YOU MUST MAIL THE COMPLETED FORM NO LATER THAN __________,2008 OR YOU WILL LOSE ALL RIGHTS TO COLLECT ANY BACK PAY AND INTEREST IN THIS CASE.**

**DO NOT DELAY IN MAILING THIS COMPLETED FORM.**

If you have any further questions, you may contact a Claimant Services Representative by calling **1-866-833-_____**.

# CLAIM FORM INSTRUCTIONS – FOR CERTIFIED OR REGISTERED RESPIRATORY THERAPISTS, LICENSED PHYSICAL THERAPISTS, LICENSED PRACTICAL NURSES ("LPNs"), LICENSED VOCATIONAL NURSES ("LVNs"), PHARMACISTS, OCCUPATIONAL THERAPISTS, AND GRADUATE NURSE TECHNICIANS

The following instructions will help you determine if this is the correct Claim Form for your circumstances, and will assist you in completing the form.

This Claim Form should be completed by all former or current VHA employees who meet one or more of the following requirements:

- (1) **If you were specifically designated as a "hybrid" employee, AND YOU REGULARLY WORKED ON SATURDAY OR SUNDAY SHIFTS <u>ANYTIME BETWEEN SEPTEMBER 5, 1995 AND OCTOBER 1, 1997</u>;**

**AND/OR**

- (2) **If you were specifically designated as a "hybrid" employee, AND YOU REGULARLY WORKED ON SATURDAY SHIFTS (that did not include any Sunday hours) <u>ANYTIME BETWEEN OCTOBER 1, 1997 AND JANUARY 23, 2002</u>;**

**AND/OR**

- (3) **YOU WERE (OR ARE) A Certified or Registered Respiratory Therapist, Licensed Physical Therapist, Licensed Practical Nurse ("LPN"), Licensed Vocational Nurse ("LVN"), Pharmacist, Occupational Therapist, or Graduate Nurse Technician AND YOU REGULARLY WORKED ON SATURDAY SHIFTS (that did not include any Sunday hours) <u>ANYTIME BETWEEN JANUARY 23, 2002 AND THE PRESENT TIME</u>;**

**AND/OR**

- (3) **YOU WERE (OR ARE) A Certified or Registered Respiratory Therapist, Licensed Physical Therapist, Licensed Practical Nurse("LPN"), Licensed Vocational Nurse ("LVN"), Pharmacist, Occupational Therapist, or Graduate Nurse Technician AND YOU REGULARLY WORKED BETWEEN THE HOURS OF 6 P.M. AND 6 A.M. (SUCH AS ON THE 2ND OR 3RD SHIFTS) <u>ANYTIME BETWEEN SEPTEMBER 5, 1995 AND THE PRESENT TIME.</u>**

If you meet any one of these requirements, you must fully complete the attached Claim Form to be eligible to receive back pay and interest. Anyone who wants to be included in this class action lawsuit in order to receive back pay and interest must return this form to the Class Action Administrator no later than **______, 2008**.

If you *do not* meet any of these requirements, PLEASE STOP NOW. You may still be eligible for compensation in this case IF YOU WERE A RN, PA, OR EFDA, but this is not the correct Claim Form for your circumstances. You can receive further information about the lawsuit and determine if you are eligible for another type of compensation by visiting the website www.myVAbackpay.com, or by writing to the Class Action Administrator.

## Section A – Class Member and Claimant Information

If you are the Class Member, follow the instructions in the left column. If the Class Member is deceased and you are a spouse annuitant, family representative, or the executor of his or her estate, follow the instructions in the right column. *Required fields have a grey highlight on these instructions.*

| Box | Class Member | Spouse Annuitant, family representative or Executor |
|---|---|---|
| 1-3 | Enter your name | Enter the name of the deceased Class Member (not your name) |
| 4 | Leave blank | Enter your name |
| 5-8 | Enter your mailing address. All correspondence, as well as any award you are entitled to, will be sent to this address. | Enter your mailing address. All correspondence, including any award you are entitled to, will be sent to this address. |
| 9 | Enter your telephone number | Enter your telephone number |
| 10 | Enter your e-mail address. If you do not have an e-mail address, this box can be left blank. | Enter your e-mail address. If you do not have an e-mail address, this box can be left blank. |
| 11 | Enter your Social Security Number | Enter the Social Security Number of the Class member. |
| 12 | Leave blank | Enter your Social Security Number, or enter the Estate Identification Number assigned to the Class Member's Estate. Please note that if you are entitled to an award, this number will be used for tax purposes. |
| 13 | Check the "yes" box | Check the "no" box |
| 14 | Leave blank | Check the appropriate box, based on your relationship to the deceased Class Member. |
| 15 | Check the "no" box | If the Class Member died between September 5, 1995 and the present time, check the "yes" box. Otherwise, check the "no" box. |
| 16 | Leave blank | If you checked "yes" in box 15, enter the date of the Class Member's death. **You MUST provide a copy of the Class Member's death certificate.** |
| 17 | Provide the Employee Status Information in Section B. | Provide the Employee Status Information in Section B. |
| 18 | Leave blank | If there are one or more individuals who you believe might be entitled to share the award, enter the name, Social Security Number and relationship of each person. If there is no one else you believe to be entitled to share the award, write "N/A." |

## Section B – Employee Status Information

This section contains information about your employment with the VHA. Do the best you can in attempting to recall this information as it can be helpful in calculating what award, if any, to which you are entitled. But, if you can not recall these details specifically, do not be concerned as your award will be calculated from VHA records anyway. Please answer the questions to the best of your knowledge. **If you can not recall any of these details, just leave the box blank**:

(1) Do you recall being regularly scheduled to work either on the 2nd or 3rd shifts after 6 p.m. and before 6 a.m. anytime during any of the following years (check one or more of the boxes if the answer is "Yes" ):

1995____; 1996____; 1997____; 1998____;1999_____; 20000_____; 2001____; 2002____; 2003____; 2004____;

2005____; 2006____; 2007____; 2008____;

(2) Do you recall being regularly scheduled to work either on Saturdays or Sundays anytime during any of the following years (check one or more of the boxes if the answer is "Yes" ):

1995____; 1996____; 1997____(between January 1 and September 30);

(3) Do you recall being regularly scheduled to work on Saturdays (on a shift that did not include any Sunday hours) anytime during any of the following years (check one or more of the boxes if the answer is "Yes" ):

1997____(between October 1 and December 31);1998____;1999 _____; 20000_____; 2001____; 2002____; 2003____; 2004____; 2005____; 2006____; 2007____; 2008______

## Section C- Signature

**By signing your name in the space below, you understand that you are consenting to join the collective action of plaintiffs on whose behalf the named Plaintiffs have alleged the violations described in the accompanying notice. You are also declaring, under penalty of perjury under the laws of the United States and applicable state laws, that you were or are one of the employees, or an heir or legal representative of one of the employees described in the accompanying notice, and that, to the best of your knowledge, you believe you are entitled to a distribution arising out of this lawsuit according to the description of the finding of the United States Court of Federal Claims that the VA failed to pay night premium pay and/or weekend premium pay when you used paid leave, as printed in the accompanying Notice.**

Sign Your Name: ________________________________________ Date: ________________________________

Print Your Name: ______________________________________ Relationship to Employee: ________________

## Submitting your Claim Form

Before you send this form to the Settlement Administrator, be sure you have done the following:

- ☐ Completed all required fields in Section A.
- ☐ Thoroughly reviewed all data in Section B to ensure that it is accurate and complete to the best of your recollection.
- ☐ Signed and dated the certification in Section C.

If you have completed all of these steps, please mail the form to:

Class Action Administrator
PO Box _____
Portland, OR 97208-_______

**YOU MUST MAIL THE COMPLETED FORM NO LATER THAN __________,2008 OR YOU WILL LOSE ALL RIGHTS TO COLLECT ANY BACK PAY AND INTEREST IN THIS CASE.**

**DO NOT DELAY IN MAILING THIS COMPLETED FORM.**

If you have any further questions, you may contact a Claimant Services Representative by calling **1-866-833-_____**.

**PLAINTIFFS' EXHIBIT C**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| YOLANDA QUIMBY et al.,<br><br>Plaintiffs,<br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | C. A. No. 02-101C<br><br>(Judge Wolski) |

**DECLARATION OF IRA M. LECHNER**

I, Ira M. Lechner, do hereby affirm as follows:

1. I am counsel of record for the plaintiffs in the above-captioned case. I have concentrated my legal work on the representation of individuals in multi-plaintiff or class action litigation under the Fair Labor Standards Act and the Back Pay Act.

2. I was counsel of record for the plaintiffs in *Archuleta v. United States*, No. 99-205C (Senior Judge Smith), in which the court approved a settlement with respect to 17 Federal agencies on June 1, 2006. The court appointed Poorman-Douglas Corp. to serve as Settlement Administrator without objection from the Defendant. Poorman-Douglas later was acquired by Epiq Systems without any change in supervisory personnel working on the administration of the *Archuleta* settlement. I have worked on the administration of the *Archuleta* class action settlement with the key personnel at Epiq Systems on a weekly basis from June 1, 2006 until the present time.

3. Including separated employees who were reached by notice publication, the class consisted of over 100,000 potential claimants, and over 35,000 claimants have

been paid back pay and interest. I am pleased with the impartiality, efficiency, and fair-minded administration of the terms of the settlement by Epiq's managers. In my opinion, Epiq's fee structure is competitive in the industry. They have been responsive to the many challenges posed by the administration of such an extensive class of claimants, and they have conducted themselves in a professional manner throughout the almost-two year period of administration. I am confident that Epiq will manage the class notice and opt-in administration of the case at bar with fairness and impartiality if the Court selects it as Class Action Administrator.

I declare under penalty of perjury pursuant to the provisions of 28 U.S.C. Section 1746 that the foregoing is true and correct.

Executed on May 12, 2008

S/ Ira M. Lechner

__________________________

Ira M. Lechner

**PLAINTIFFS' EXHIBIT D**

# Class Action and Claims Solutions

**PROJECT OVERVIEW FOR**

**IRA LECHNER**
**MAY 5, 2008**

1.0 OVERVIEW ........ 3
**1.1 Program Management** ........ 3
**1.2 Program Management Planning** ........ 3
1.2.1 Program Management Control, Tracking, and Reporting ........ 3
**1.3 System Configuration** ........ 4
**1.4 Claims Administration** ........ 4
1.4.1 Receipt and Logging ........ 5
1.4.2 Data Capture ........ 5
1.4.3 Review Adequacy of Documentation and Completeness ........ 5
1.4.4 Allocation, Reporting and Audit ........ 5
1.4.5 Final Award Register ........ 5
**1.5 Fund Management and Tax Reporting** ........ 5
**1.6 Claim Payment Distribution** ........ 6
**1.7 Shut Down and Archival** ........ 6
2.0 TECHNICAL SOLUTIONS ........ 7
**2.1 Use of Existing Infrastructure and Assets** ........ 7
**2.2 Dashboard and Reporting Infrastructure** ........ 8
**2.3 Call Center Support** ........ 8
**2.4 Risks and Mitigation** ........ 8
3.0 PROJECT MANAGEMENT PLAN ........ 9
4.0 COMMUNICATION PLAN ........ 9
5.0 PAST PERFORMANCE ........ 9
**5.1 NTEU** ........ 10
**5.2 In re Archuleta v. The United States** ........ 11
6.0 KEY PERSONNEL ........ 11
7.0 NOTICE ........ 12
**7.1 Direct Mail** ........ 12

**Project Overview**
May 5, 2008

# 1.0 OVERVIEW

Epiq Class Action & Claims Solutions ("Epiq"), formerly known as Poorman-Douglas Corporation, brings to you the value of nearly 40 years of project and data management, quality assurance and case administration experience. Epiq specializes in the administration of Wage & Hour/ERISA class action cases as well as Securities Antitrust, Discrimination, Financial Services, Insurance, Lending Practices, and Product Liability class action cases. While Epiq administers cases of all sizes and scope, we are recognized as the leader in large and complex case administration.

Our success stems from our development and repeated enhancement of our Epiq Approach to class actions, backed by the power of our proprietary database - ClaimsMatrix®, innovative technologies, and our veteran team of specialists. Tried and true, our experts pioneered the class action claims administration process and designed our approach based on unmatched depth of experience, identifying best practices, putting controls in place, and then replicating and refining this process for close to 40 years, across hundreds of cases. Our process provides end-to-end class action and claims solutions with a single partnership.

## 1.1 Program Management

The parties can establish its own level of comfort in its control over Epiq's administration services. Epiq's innovative technology will give you the ability to monitor progress on an hourly basis, if it so chooses. Alternatively, Epiq's breadth of experience will enable you to focus on litigation duties and depend upon Epiq to ensure that the Settlement is implemented according to the terms of the Settlement Agreement. The Epiq Team will incorporate our experience in case administration and closely monitor the project against the budget, reporting any variance and exceptions to normal-course-of-business claims activities.

## 1.2 Program Management Planning

During the initial project start up period, the Epiq Team will work with the parties to develop the Project Management Plan, secure the appropriate staff and solidify the claims administration process and technical infrastructure. We will work with you on the proposed project organization and the roles of the team, confirm communication points of contact, establish working logistics, and review the project tasks, milestones, and schedule for the claims administration program.

### 1.2.1 Program Management Control, Tracking, and Reporting

Following review and finalization of the Project Management Plan with you, the Epiq Team will implement the plans, procedures, and reporting tools needed to monitor and control the project's staff, technologies, and processes. This foundation will allow us to manage the administration and to work closely with you to make joint, informed decisions and to manage risks. The parties can view the administration on a claim by claim basis or simply monitor regular reports.

#### 1.2.1.1 Cost & Schedule Management

The Epiq Team will track and report settlement administration costs, including monthly invoicing and payment. We will compare monthly expenses to the total budget in order to avoid project costs exceeding the total project estimate. We will communicate any overage in expenses to you and will raise concern early in the process if changes in process or procedure will directly impact the original estimate.

#### 1.2.1.2 Quality Assurance, Prevention of Fraud and Performance Reporting

Throughout its history, Epiq has been an industry leader in addressing and preventing fraudulent transactions. We have accomplished this goal through arduous training of claims analysts to keep a watchful eye for suspicious claims. We encourage our analysts to investigate when they are alerted by "red flags." We also implement internal procedures to prevent unscrupulous activity and to protect our clients' and class members' private information.

Epiq has been instrumental in working with law enforcement to curtail illegal activity. In 2005, Epiq worked with the Department of Justice to prosecute Alan Scott who attempted to submit phony claims in the Conseco Securities Litigation and the Western Savings & Loan Securities Litigation being administered by Epiq. Our staff noticed that Mr. Scott had submitted fraudulent tax records, and not the brokers' trading confirmation slips which Epiq requires, to support his claims. With the assistance of testimony by Epiq experts, Mr. Scott was recently sentenced to another 3 ½ years in a federal penitentiary.

Prior to our involvement, Mr. Scott and another serial filer of false claims, Richard Lagerveld, had collected a total of over $9 million dollars through separate but similar false claims submitted to other claims administrators who failed to catch the doctored documentation and paid the claims. Our competitors mailed the multimillion dollar checks to Lagerveld at a homeless shelter in San Diego. Scott submitted his claims while in a federal penitentiary.

Epiq will report on performance via weekly stewardship of claims processing, metrics on efficiency, and Dashboard tracking of service levels such as duration of call and length-of-time to answer incoming calls to the call center.

#### 1.2.1.3 Communication and Status Reporting

Epiq will provide you a Project Manager to handle day-to-day communication and coordinate the various administrative tasks. All case activity and status updates will be available through the Project Manager, as well as through standard on-line Dashboard reporting and reports-on-demand queries. The parties will be able to view relevant summary statistics and/or individual claims status at its own convenience, 24 hours per day, 7 days per week, all year long.

## 1.3 System Configuration

Epiq will utilize a data processing application, ClaimsMatrix®, that has been thoroughly developed and tested and currently hosts over 150 cases. The application is configurable and handles any type of matter, including large securities cases.

If you require special configuration or customized screens or reports, these should be discussed in advance of case start-up. Budget funding has been included for a moderate level of customization.

## 1.4 Claims Administration

The key to the successful startup of a case and to its ongoing quality operation is the time and effort to develop protocols and procedures detailing how each situation in settlement administration will work. Epiq will work directly with the parties to develop the protocols and procedures taking the terms in the Settlement Agreement and translating them to step-by-step processing guidelines.

#### 1.4.1 Receipt and Logging

Epiq will open, log, date stamp, affix a document ID label, and scan all documents received in relation to this project. Proof of Claim Forms and supporting documentation, as well as all correspondence and responses to deficiency notices, will be processed on a timely basis to allow you to monitor volume, bottlenecks, and recognized loss trends during the implementation.

#### 1.4.2 Data Capture

In addition to scanning an image of the material received, Epiq will OCR or manually key all data from the hard copy Proof of Claim Forms into ClaimsMatrix®. Claims filed on-line via the Settlement Web site are recorded directly in ClaimsMatrix®. The aggregate of Web, and paper claims in a single database ensures accurate weekly reporting on claim filings and flagging of any duplicate submissions.

#### 1.4.3 Review Adequacy of Documentation and Completeness

Epiq reviews the documentation initially to determine that the person filing the Proof of Claim Form is eligible to participate in the Settlement. After discussing the rules for participation in the Settlement with you, we accept only documents approved by you that clearly show the claimant purchased the affected securities during the class period.

A claimant must also provide documentation for each transaction claimed on the Proof of Claim Form. The claimant may not provide documentation supporting only the transactions that increase recognized loss, while refusing to supply documentation of transactions decreasing that loss or showing a gain and thereby result in a decrease in recognized loss.

#### 1.4.4 Allocation, Reporting and Audit

During the claims processing period, Epiq will provide you progress reports on an agreed upon regular basis. The parties would have the ability to view the global status of the matter via the Dashboard reporting and the status of individual claims through a secure internet connection. At a minimum, you will receive reports that provide gross numbers of claims received and the number of claims in each status, together with the recognized loss of those claims.

After the claims filing deadline has passed and all claims have been processed, Epiq will apply the allocation program and determine each claimant's individual recognized loss, as well as the total amount of recognized loss of all claimants. Epiq conducts ongoing quality controls on our work throughout the entire claims processing period. When processing concludes, we will conduct audits of a statistically relevant portion of the claims to confirm the validity of the work.

#### 1.4.5 Final Award Register

Epiq will provide a final award register that will contain a recommendation of the claims that should be paid and the pro rata portion of the fund that should be paid to each claimant. The allocation coding and subsequent reports are independently audited and verified before submission to you for approval.

### 1.5 Fund Management and Tax Reporting

Epiq has a wealth of experience in the distribution of awards on qualifying claims. Based on the allocation formulas and the filed claims, our programs will automatically calculate the amount of cash due to each approved claimant. We have reporting mechanisms in place to list accepted and rejected claims. We are also experienced at preparing affidavits for the Court regarding claims processing procedures and proposed distributions.

A rigorous review and control procedure is conducted for preparation of the distribution. Once the distribution is approved, we normally issue awards to eligible and approved claimants to the address of record. We provide an award register and other reports reflecting the distribution.

We perform distributions on a fee basis, using a trust account that is funded by the Escrow Account. We can also provide distribution services for a reduced fee, if a bank that is an Epiq business partner holds the funds.

Our checks are printed on-site with MICR encoding and secure check stock. All financial instruments are handled with dual custody and in areas secured by access keys and camera monitoring. The check stock is kept in a secure location and is carefully controlled to prevent misuse.

Other Distribution Activities Include:

- Compile and reconcile information regarding the Settlement Fund.
- Calculate the distribution of cash due each approved claimant.
- Prepare affidavit for Court regarding claims processing procedures and proposed distribution.
- Process electronic payments or print checks for approved claimants.
- Design letter to include with award.
- Mail 1099 forms if necessary and follow IRS reporting procedures.
- Provide award register to necessary parties.

The following are services that Epiq can provide to aid in meeting tax requirements.

- Complete Form SS4 to establish TIN for fund.
- Summarize activity in Settlement Fund for preparation of U.S. Income Tax Return.
- Estimate and make quarterly payments to qualified depository in timely manner.
- Prepare Form 1120-SF for qualified settlement fund and file with necessary payments.
- Respond to any communication from the IRS, including late payment penalty notifications, and provide representation at any meetings and/or examinations concerning the settlement funds by the IRS.

## 1.6 Claim Payment Distribution

During the start-up process, the Project Manager will work with you to review the rules for calculations and disbursements. The requirements of the Settlement and the damages expert will be analyzed and implemented with testing and specific claim examples for approval. Accounting of all calculations, pro rata awards, payment issues, voids, and reissues, and fund balances are reported on a daily basis with monthly reconciliation by the Disbursements Department.

## 1.7 Shut Down and Archival

Once activities associated with the Settlement Administration conclude, Epiq will take the necessary steps to archive and secure all hard copy and electronic documents, as well as any information contained within the claims application, under standard retention guidelines. The toll-free phone line and Web site will be shutdown and archived. Hard copy documents will be maintained in our secure vault for one year at

which time they will be shipped to a third-party or securely destroyed to ensure the privacy of class member information. All electronic data will be stored for up to three years unless otherwise instructed.

# 2.0 TECHNICAL SOLUTIONS

Epiq offers comprehensive technical capabilities to deliver a complete solution for the Settlement. Our technical services group has almost 40 years of combined experience handling the most sensitive and complex data and applications for clients across a range of industries, from financial and healthcare to manufacturing and services. Our infrastructure, processes, and procedures have passed the rigorous, independent audits of bank and insurance clients, and we hold a SAS 70 certification, essential to any provider of services to the financial industry.

Epiq has extensive experience and has led the way technically in the administration of large and complex legal matters. We have had numerous cases in which we have demonstrated performance in on-line claims filing, electronic noticing and interactive claims administration where multiple parties participate in a multi-step adjudication process. Our applications can be engineered to integrate all phases of administration including the tracking and escalation of claimant phone calls and inquiries.

Epiq has also been a pioneer in on-line claims filing. We understand the unique care this area requires, and we have experience with a variety of approaches, depending on the claimant population, the settlement terms, conditions and business rules. For example, solutions for on-line claims filing can be as simple as providing a Claim Form that can be filled out on-line, tracked in the database, printed, signed and mailed by the client for processing and adjudication. It can also be a completely on-line experience where claimant authentication is required and access to claimant specific data is used to help the claimant file the claim electronically. Both of these methods have pros and cons and as the Settlement terms, conditions and business rules are finalized and reviewed, the experienced staff of Epiq business and technical professionals will work with you to craft a solution that best fits the needs of the Settlement.

## 2.1 Use of Existing Infrastructure and Assets

To meet your objectives, the Epiq Team will leverage existing and proven infrastructure to deliver a "turn key" solution that requires minimal configuration or development. We will use proven methodologies to support system configuration and testing during the Startup Phase, thereby reducing the time required to implement Settlement Administration.

Additionally, the Epiq Team will utilize pre-existing system management processes, years of operations and maintenance experience with systems at similar or higher activity volumes and pre-existing, proven systems to deliver the most value to you. The systems that we will utilize is already support 24x7 operations, are architected for redundancy (i.e., no critical single points of failure) and have sophisticated disaster recovery plans.

Epiq application development work is done in a highly controlled environment where SAS 70 prescribed processes – for example, the separation of development, test and production environments – are carefully followed. Epiq solutions are supported by a secure network environment. Our network is perimeter-secured with internal and external firewalls which are frequently tested and monitored. Web servers operate in a protected "DMZ," and Web based applications that contain client specific data operate under SSL with 128-bit encryption. The process, protocols, infrastructure and applications have all been thoroughly tested and audited to conform to the highest standards adopted by financial institutions. We also support customer solutions with a leading-edge hardware platform that includes HP/Compaq servers, Cisco Routers, and EMC and Isilon storage with access to over 12 terabytes of capacity. Critical Web servers, database servers and business object servers are clustered to offer fail-over protection.

## 2.2 Dashboard and Reporting Infrastructure

Epiq has a near real-time, secure Web interface for statistical reporting – the ClaimsMatrix® Dashboard. Epiq reports statistical information in a variety of formats that can be provided on a weekly, monthly, quarterly, or annual basis. We have the capability to use an on-line format hosted on a site that requires security clearance and user authentication. We report the following statistical information:

- Notices mailed as part of the original notice mailing
- Notices returned as undeliverable
- Notices returned with forwarding address information
- Notices mailed following the initial Notice
- Records researched for current address information
- Paper claims received
- Online claims received
- Current award total for claims received
- Unique visitors to Web site
- Calls received into the toll-free information hotline
- E-mail inquiries/correspondence received
- E-mail inquiries/correspondence forwarded for resolution
- E-mail/correspondence inquiries responded to or otherwise resolved
- Awards issued
- Awards paid

Weekly statistical reports cover notice mailings, undeliverables, phone calls, Web site accesses (hits), claims filed, claims in process, and claims paid.

Monthly stewardship reports are based on the weekly statistics and provide a textual summary of progress.

Regular database reports will be generated as required by the client, showing the detail of claims in progress to support the weekly statistics and monthly stewardship reports.

## 2.3 Call Center Support

Epiq maintains a fully staffed call center at its Beaverton, Oregon facilities. Epiq has innovative technology that will allow a phone agent to access an individual claimant's records to aid them in filing a claim and, if necessary, answer questions regarding defective letters or the claims process in general, according to a script created by Epiq in consultation with you.

## 2.4 Risks and Mitigation

Attached below is a table with Epiq's assessment of risks with the solution and proposed strategies to mitigate those risks, including criteria for determining when a risk event occurs.

**Table 2.4-1: Risks and Mitigation Strategies**

| Risk | Criteria for Determining Event Has Occurred | Risk Mitigation Strategies |
|---|---|---|
| Call center support volumes dramatically | Average call wait times increase dramatically | Contact center managers constantly evaluate call flows and update VRU to handle new questions and issues in an automated way. Contact centers have roll-over capability, and can staff quickly for |

| Risk | Criteria for Determining Event Has Occurred | Risk Mitigation Strategies |
|---|---|---|
| exceed estimates | | sustained traffic surges. |
| System-critical component fails | System response times drop while the component in question is brought back online, but there will be no service outage | All critical infrastructure components are redundant (i.e. no single point of failure), with a full backup and system management plan to restore components quickly and bring system back to full capacity. |
| Claim response rate is much higher than anticipated | Spike in claims intake and case statistics reflect totals filed greater than estimated | The Project Manager will monitor claims intake volumes. The PM will also run production metrics reports on a regular basis to ensure that processing timelines will be met and to notify you of any budget impact. Epiq will communicate increased activity and suggest resource changes, as appropriate. |
| Allocation formula is not applied correctly to determine correct award amounts | Independent audit of specific claim calculations identifies error in methodology | Programming logic is tested against all known use case scenarios and verified by two-tier review system. Independent audit also occurs prior to any award payments to ensure no negative impact to Fund. |

## 3.0 PROJECT MANAGEMENT PLAN

Epiq will prepare a Milestone Tracker that will detail every key event or deadline associated with your matter. The document will be maintained and updated throughout case implementation advising you when certain deadlines are approaching and if deliverables were provided in a timely manner.

A Project Manager will work with you to define case requirements and staffing needs and will increase or decrease staff as needed during case administration.

## 4.0 COMMUNICATION PLAN

Epiq will provide you with a Project Manager and qualified group of claims analysts. We will provide you with reports with real-time case statistics via an online database. We will also provide feedback regarding the project costs and expenses and will prepare monthly stewardship reports as needed.

If desired, regular project management meetings may be conducted at your offices to review status of progress, exceptions or issues addressed, and projections for processing completion based on volume trends.

## 5.0 PAST PERFORMANCE

Epiq has handled over 500 cases with a worldwide scope, including 87 currently active cases. Annually, we mail over 50 million pieces of first-class mail, process hundreds of thousands of documents, print more than 15 million checks, and manage $1.5 billion in fund deposits.

Epiq has extensive experience in administering cases of all sizes. A summary of a recent complex employment case follows:

## 5.1 NTEU

**In re National Treasury Employees Union v. The United States of America**
Case No. 02-128 C
United States District Court, District of Columbia.

| | |
|---|---|
| 212,722 | Government Employees |
| 8 | Years of Payroll Data |
| 224 | Government Special Rates Salary Replacement tables |
| 561,176 | Notices and Claim Forms to Mail |
| 116,448 | Claims to Process |
| 196,512 | Checks to Print and Mail |
| $159,830,760 | Awards to Disburse |
| $14,242,363 | Federal and State Taxes to Withhold and Report |
| 173,408 | Telephone Calls |
| 146,272 | Letters from Class Members |

US Government enters into a landmark settlement to recalculate the payroll of more than 212,000 employees from an eight year period.

Epiq has breadth and depth to fulfill US Government's complex needs: calculate millions of payroll records and administer entire settlement from notice, claims processing and class member inquiries to award calculation, distributions, class member challenges and tax reporting.

Epiq consultants coordinated with US Department of Justice, US Department of Treasury, Office of Personnel Management and National Treasury Employees Union (NTEU) to ensure administrative needs completely understood and satisfied.

US Office of Personnel Management provided several million payroll records. Epiq developed Allocation Formula to process amounts through 224 Salary Replacement tables covering employee occupations and grades for 13 discrete time periods across eight year class period. Allocation Formula calculated back pay with interest (as determined by prevailing quarterly interest rates in each of the 13 time periods) supplemented by Lost Premium Pay, compound daily interest and special adjustments for Retirees and Annuitants.

Programming of Allocation Formula comprised 2,594 lines of Cobol code. Formula subjected to three separate audits. First by US Office of Personnel Management, second by Professor of Finance Martin Asher of the Wharton Business School and third by Brown Greer LLP on behalf of NTEU. Epiq Allocation Formula withstood scrutiny of all three independent audits.

Using sophisticated address correction methodologies Epiq reached class members, successors and heirs. Remarkable 55% response rate compared to 2%-8% class action norm. Notice customized by dates of employment, occupation, job grade, pay rate determinant, agency and duty station.

## 5.2 In re Archuleta v. The United States

**Case No. 02-128 C**
United States District Court, District of Columbia.

| | |
|---|---|
| 83,660 | Government Employees |
| 7 | Years of Payroll Data |
| 17 | Government Agencies Included |
| 87,824 | Notices and Claim Forms to Mail |
| 55,468 | Claims to Process |
| 35,550 | Checks to Print and Mail |
| $2,770,721.54 | Awards to Disburse |
| 34,532 | Telephone Calls |
| 7,325 | Letters from Class Members |

US Government enters into a landmark settlement to recalculate the payroll of more than 80,000 employees.

Epiq has breadth and depth to fulfill US Government's complex needs: calculate millions of payroll records and administer entire settlement from notice, claims processing and class member inquiries to award calculation, distributions, class member challenges and tax reporting.

Epiq consultants coordinated with US Department of Justice, US Department of Treasury, and the Office of Personnel Management to ensure administrative needs completely understood and satisfied.

US Office of Personnel Management provided tens of thousands of payroll records. Epiq developed Allocation Formula to process amounts through numerous tables covering employee occupations and grades. Allocation Formula calculated back pay with interest, supplemented by Lost Back Pay, compound daily interest and special adjustments for Retirees and Separated Employees.

Using sophisticated address correction methodologies Epiq reached class members, successors and heirs. Remarkable 39% response rate compared to 2%-8% class action norm. Notice customized by dates of employment, occupation, job grade, pay rate determinant, agency and duty station.

The final distribution involved the calculation and coordination of $1,332,842.71 in payroll taxes.

# 6.0 KEY PERSONNEL

To support the Settlement, Epiq will adopt the same approach as we do in other class action matters. We will offer a staff of qualified executives and managers with whom you will work throughout the Settlement Administration. We will also provide direct access to the President of the company and the Director of Class Action.

We manage project staff size to meet your needs and expectations. We work closely with a trusted agency and find it easy to recruit educated, diligent and dedicated employees. We have an extensive data

center that can handle large, complex and time-sensitive mailings and can increase our call center capacity and agents as needed.

# 7.0 NOTICE

Using a combination of a Direct Mail Notice, and Media Publication would ensure that the maximum number of claimants receive the Notice and Claim Form packet and have a chance to respond or file a claim in this matter. A breakdown of the three notice components follows.

## 7.1 Direct Mail

The Project Manager will work with you to coordinate the mailing of notices. The mailing process includes data analysis such as de-duping of files, postal standardization, and address updating. If addresses are not known to be current, we will pass the file through an address update service such as National Change of Address ("NCOA") or LexisNexis AllFind.

Outgoing pieces are bar coded for a quick and cost efficient update of undeliverable pieces to the claims database. Undeliverable records can then be researched further for re-mailing of notices or reporting to the parties and Court. Re-mailing of notices can happen as often as necessary to ensure compliance with the terms of a settlement. As claims filing or comment deadlines approach, we will re-mail daily. During less critical periods, we may only re-mail weekly to reduce coordination expenses.

Outgoing pieces are assigned a unique tracking number. In the notice database we maintain a record of the date of mailing, undeliverable date, address change date, source, and re-mail date. This is important in order to respond to objections on adequate notice and to report to the Court on effective reach of notice.

**PLAINTIFFS' EXHIBIT E**

**Epiq Systems Noticing**
Nurse Campaign, R.Oseas

| Publication | | Frequency | Distribution | Circulation | Monthly Edition | 1st Insertion Space & Material Close | Ad Unit | Insertions | Daily Discounted Rate | Total Discounted Rate |
|---|---|---|---|---|---|---|---|---|---|---|
| **Magazines** | | | | | | | | | | |
| | *AARP* | Bi-Monthly | National | 23,000,000 | Sept-Oct | 6/2/2008 | 1/3 Page | 1 | $203,420.00 | $203,420.00 |
| | *American Physical Therapy Magazine* | Monthly | National | 67,739 | Sept | 6/1/2008 | 1/2 page | 2 | $3,480.00 | $6,960.00 |
| | *Registered Nurse* | Monthly | National | 261,996 | Sept | 8/8/2008 | 1/4 Page | 2 | $5,390.00 | $10,780.00 |
| | *American Association of Critical Care Nurses News* | Monthly | National | 80,000 | Sept | 7/1/2008 | 1/4 Page | 2 | $3,500.00 | $7,000.00 |
| | *Nursing 2007* | Monthly | National | 265,646 | Sept | 7/1/2008 | 1/4 Page | 2 | $6,500.00 | $13,000.00 |
| **Newspapers** | | | | | | | | | | |
| | *The USA Today* | Daily | National | 2,280,754 | Daily | 5 business days prior to issue date | 1/8 Page | 1 | $22,185.00 | $22,185.00 |
| **Journals** | | | | | | | | | | |
| | *Journal of American Academy of Nurse Practitioners* | Monthly | National | 22,200 | Sept | 8/1/2008 | 1/4 Page | 2 | $1,795.00 | $3,590.00 |
| | *American Association of Nurse Anesthetists Journal* | Bi-Monthly | National | 36,000 | Oct | 8/29/2008 | 1/4 Page | 2 | $2,080.00 | $4,160.00 |
| | *American Journal of Nursing* | Monthly | National | 305,840 | Sept | 8/1/2008 | 1/4 Page | 2 | $5,315.00 | $10,630.00 |
| | *State Board of Nursing Magazines* | Monthly | See list of states | 2,013,000 | Sept | 6/1/2008 | 1/3 Page | 2 | $32,580.00 | $65,160.00 |

| | |
|---|---|
| Expenses | |
| Long Distance/Fax | $100.00 |
| Mechanicals/Art Design | $300.00 |
| **Estimated Total** | **$347,285.00** |

10300 SW Allen Blvd.
Beaverton, OR 97005
503.350.5210
www.epiqsystems.com

4/30/2008

**PLAINTIFFS' EXHIBIT F**

An AARP Services, Inc. Media Sales Publication

EDITORIAL PROFILE

AARP THE MAGAZINE is edited for mature readers. AARP The Magazine provides features, pertinent news and practical advice from travel to technology, from health and finance to fashion and self-fulfillment. It also provides interaction with the publication through member surveys and polls.

PUBLISHER'S POSITIONING STATEMENT

AARP's lifestyle channel extends from AARP The Magazine (ATM), the world's largest circulation magazine. Geared exclusively towards 50+ Americans seeking to enhance their quality of life as they age, ATM has interactive web-based extensions, an experiential traveling road show, books + weekly syndicated radio and television programming.

PT--Magazine of Physical Therapy—

Is the professional issues magazine of the American Physical Therapy Association (APTA). Published to meet the needs and interests of APTA members and to promote physical therapy as a vital professional career, PT provides legislative, health care, human interest, and Association news and serves as a forum for discussion of professional issues and ideas in physical therapy practice.

RN—Registered Nurse Magazine

EDITORIAL PROFILE

RN is a peer-reviewed journal that serves registered nurses in various specialties, primarily those working in hospital-affiliated facilities. Roughly 40% of the editorial is clinical, 35% is professional and 25% is lifestyle-oriented. Legal issues, ethical questions, and professional news and discussions are among the non-clinical topics covered. RN offers CE tests every month.

PUBLISHER'S POSITIONING STATEMENT

RN is a leading nursing publication among registered nurses and the premier source of up-to-date clinical information. For 70 years, RN has provided time-crunched nurses with the clinical, professional, and personal tools they need to excel on the job and off. RN has won eight editorial awards from the ASHPE since 2007 and has been awarded 28 first-place Neal awards. Its award-winning editorial provides solutions

for the clinical, personal, and professional challenges of nursing. RN's quality circulation reaches more hospital and acute care nurses than any other journal in the market. Packages also available with sister publication, Healthcare Traveler.

AACN NEWS

EDITORIAL PROFILE

AACN NEWS is edited for The American Association of Critical-Care Nurses. It covers news in critical care nursing, as well as The Association News.

Nursing 2007 for 2008--

EDITORIAL PROFILE

NURSING2007 is a skill enrichment journal for practicing nurses. The how-to articles deal with clinical nursing (i.e., patient care and closely related matters). Articles written by nurses and health professionals chosen for expert knowledge. Manuscripts are previewed and pretested for accuracy and useability by members of the 44 member Editorial and Advisory Boards. Articles are heavily edited for conciseness and readability; profusely illustrated. Regular Departments include: Tips and Timesavers, Nursing the Net, Myths & Facts, Sharing, I.V. Rounds, Confidentially, Clinical Do's and Don'ts, Medication Errors, Legal Questions, Drug Challenge, Career Tips, Ethical Problems, Advice, PRN, Letters and Others.

PUBLISHER'S POSITIONING STATEMENT

Nursing2007 is an award-winning how-to journal created to provide practical, hands-on information to nurses. Readers say the journal is their first choice for quick-read updates on the most comprehensive range of nursing topics, including clinical and professional information on drugs, diseases, nursing care strategies, and legal/ethical issues. Continuing-education articles offer abundant opportunities for nurses to advance their skills. Nursing2007's hallmark "from-the-heart" narratives highlight the compassionate side of nursing. The journal's

## JOURNAL OF THE AMERICAN ACADEMY OF NURSE PRACTITIONERS

### EDITORIAL PROFILE

JOURNAL OF THE AMERICAN ACADEMY OF NURSE PRACTITIONERS presents original, peer-reviewed articles that address clinical practice, clinical management, prescribing and clinically focused health policy, research, education and other issues for providers. Because of its widespread distribution, the Journal provides an excellent tool for promoting your products and expertise to a health care audience.

## AANA Journal

### EDITORIAL PROFILE

THE AANA JOURNAL is the official peer-reviewed scholarly journal of the American Association of Nurse Anesthetists. In the journal, original manuscripts foster the understanding of the science of anesthesia delivery and investigate issues, ideas and innovations that advance the practice of nurse anesthesia. Authors submit original research, case reports, survey/review articles, letters to the editor, and book reviews. Regularly featured columns include "Legal Briefs" and "Education News." Each issue carries an ongoing continuing education series, the AANA Journal Course, for which CRNAs receive 6 credits upon completion.

## STATE BOARD OF NURSING MAGAZINES

Comprised Of

Arkansas State Board of Nursing
Arizona State Board of Nursing
District of Columbia Board of Nursing
Indiana State Board of Nursing
Kentucky State Board of Nursing
Nebraska State Board of Nursing
Nevada State Board of Nursing
New Mexico State Board of Nursing
North Carolina State Board of Nursing
North Dakota State Board of Nursing
Ohio State Board of Nursing
South Carolina State Board of Nursing
South Dakota State Board of Nursing
Tennessee State Board of Nursing

Washington State Board of Nursing
Wyoming State Board of Nursing
Arkansas Nurses Association

**EDITORIAL PROFILE**

STATE BOARDS OF NURSING MAGAZINES provides educational articles of interest to every nurse of every degree as well as student nurses, State Board meeting highlights, disciplinary actions, changes in rules and regulations regarding the practice of nursing in that state.

**PLAINTIFFS' EXHIBIT G**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| YOLANDA QUIMBY, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 02-101C<br><br>Judge Victor J. Wolski |

**PLAINTIFFS' MEMORANDUM OF LAW REGARDING RECOVERY OF ATTORNEYS' FEES AND INTEREST UNDER THE BACK PAY ACT**

In conjunction with the Joint Status Report filed concurrently herewith, Plaintiffs respectfully submit this memorandum of law regarding Plaintiffs' entitlement to recover attorneys' fees and interest under the Back Pay Act. The Court has already conclusively determined Defendant is liable to the class for failing to pay to the class members, whenever they used certain paid leave, the "additional pay" that they would have regularly earned had they not taken such leave. Accordingly, at the appropriate juncture in this case, Plaintiffs' intend to move the Court for an order awarding attorneys' fees and interest for the reasons discussed below.

Under the Back Pay Act, an employee who is found "to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee" is entitled to receive: (i) the amounts he or she would have earned had the unjustified or unwarranted personnel action not occurred, (ii) reasonable attorneys' fees and (iii) pre-judgment interest. 5 U.S.C. § 5596(b)(1), (2); *see also Astor v. United States*, 79 Fed. Cl. 303, 318 (2007).

Plaintiffs in this case clearly meet the three factors required to receive back pay, attorneys' fees and pre-judgment interest under the Back Pay Act: "(1) the employee must have

been affected by an unjustified or unwarranted personnel action; (2) the employee must have suffered a withdrawal or reduction of all or part of his pay; and (3) but for the action, the employee would not have experienced the withdrawal or reduction." *See Astor*, 79 Fed. Cl. at 319. Here, the Court found in its July 8, 2005 summary judgment order that the class members suffered a reduction of a part of their pay when the Government wrongfully and improperly failed to pay them "additional pay" for days when they normally and regularly would have received such pay had they not taken authorized leave. This satisfies all three of the factors under the Back Pay Act: (1) the employees were affected by an unjustified or unwarranted personnel action in that a portion of the pay they should have received was improperly withheld; (2) the employees suffered a reduction in part of their pay (the "additional pay"); and (3) but for the action, the employees would not have experienced the reduction because the Court found that the employees were entitled to "additional pay" while on leave under the circumstances outlined in the Court's July 8, 2005 summary judgment order.

Thus, Plaintiffs will, at the appropriate time in this case, move the Court for an order requiring Defendant to pay pre-judgment interest and Plaintiffs' attorneys' fees.

Respectfully submitted,

Of Counsel:
ROBERT W. BROWNLIE, ESQ.
DLA Piper US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: (619) 699-2700
Fax: (619) 699-2701

Co-Counsel for Plaintiffs

s/Ira M. Lechner
IRA M. LECHNER, ESQ.
Attorney
19811-4th Place
Escondido, CA 92029
Tel: (760) 839-0565
Fax: (760) 839-5755

Attorney for Plaintiffs

Dated: May 12, 2008