**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| YOLANDA QUIMBY et al.,<br><br>Plaintiffs,<br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | C. A. No. 02-101C<br><br>(Judge Wolski) |

**DECLARATION OF IRA M. LECHNER**

I, Ira M. Lechner, do hereby affirm as follows:

1. I have been informed by supervisory personnel at Epiq Systems that approximately 1,200 heirs (excluding spousal annuitants) of former employees of the 17 largest federal agencies filed a claim in *Archuleta et al. v. United States*, and approximately 1,900 heirs (excluding spousal annuitants) filed a claim in *NTEU et al. v. United States*. There were 82,061putative class members in *Archuleta*, and 212,722 putative class members in *NTEU*. There is no efficient or effective method to identify all potential heirs of deceased former federal employees, other than spousal annuitants, through the use of commercial databases.

2. The same supervisory personnel at Epiq also informed me that there are databases of death records (accessible by social security numbers), but those databases do not consistently track potential heirs because heirs are not identified by social security numbers.

3. Only 73 separated (not retired) employees filed claims in *Archuleta*. Separated employees were not mailed any court notices or claim forms by virtue of the terms of the settlement agreement.

4. Plaintiffs intend to withdraw their motion to shift the costs of mailing and administration, and to submit for the Court's approval a new plan of distribution of Notices and Claim Forms, and class administration. Plaintiffs' counsel discussed the plan with counsel for Defendant today. Plaintiffs are awaiting a prompt response from Defendant as to whether it will not oppose the newly proposed plan. A new plan of distribution of Notices and Claim forms, and administration of the opt-in responses, has been suggested by supervisory personnel at Epiq. The plan that Plaintiffs' counsel will submit to the Court is based on the premise that the Court should consider an alternative, more effective cost saving method of providing notice to the class. An outline of that plan is as follows:

(a) The initial mailing to the electronic database supplied by the VA would be a mailing by the Administrator of a postcard to the putative class members containing a concise description of the action and their "opt-in" rights. It is the experience in the field of claims administration that recipients are far more likely to read a postcard with filing information printed on it than an unsolicited, multi-page mailing in a bulky envelope from a claims administrator. The postcard would contain a prominent reference to an internet-based website established by Plaintiff's counsel containing all of the information contained in the Court-approved Notice and Claim Forms together with comprehensive questions and answers about the details of the case similar to the information on the website maintained in the *Archuleta* case, www.mylumpsumpayment.com. The website

would enable interested putative class members to file their claim directly online, or to download and print the necessary Claim Form for return mail to the Administrator. As a security measure, "online claimants" (as do claimants who file by mail) would have to provide the Administrator with the appropriate social security number in order to be accepted as a claimant.

(b) In the *Archuleta* case, there were 321,489 distinct, individual "hits" (contacts) on the website established by Plaintiffs' counsel, proving that most of those *retired* federal employees were computer literate and had access to a computer. The case at bar includes employees on active duty with the VA as well as retired, separated, and deceased former employees.

(c) The postcard also would provide an 800 number staffed by the Administrator which putative class members could use to resolve questions about the case, and/or to clarify their eligibility to file a claim.

(d) Again, learning from the experience in *Archuleta*, 34,634 members of the putative class in that action utilized the 800 number listed on the website, thereby averting potential confusion and unnecessary expense in processing claim forms which might have been filed by ineligible claimants.

(e) Within 60 days after the mailing of the initial postcard, the Administrator would mail the complete, multi-page package of the Notice and Claims Forms to all those putative class members who did not respond to the postcard Notice either by filing a Claim Form online, filing a Claim Form by mail, or having been informed that they are ineligible to file a claim after contacting the Administrator on the 800 number provided in

the postcard (i.e., they worked only day shifts, they retired or separated before September 5, 1995, or they were employed in an ineligible job classification).

(f) The Court's Order would establish an opt-in 60-day deadline for final submission of a claim following the date of the mailing of the complete package of the Class Notice and Claim Forms, thereby retaining the overall opt-in 120-day filing period proposed by Plaintiffs' counsel in the Joint Preliminary Status Report without objection by Defendant.

(g) The Court's Order would permit a further 60-day opt-in "grace period" following a mailing by the IRS (or by the Administrator to a new address obtained from a commercial database) to all potential claimants whose mailed package of the Class Notice and Claim Forms was returned to the Administrator as undeliverable. The letter to be mailed by the IRS (or by the Administrator) would direct the recipients to the website.

Epiq suggests, and Plaintiffs' counsel agrees, that considerable postage, printing, and administrative handling costs could be saved by this more efficient procedure utilizing advanced computer technology. This process would provide the putative class members with the convenience of filing their Claim Form online, and would enable the Administrator's staff to communicate directly with the claimants by email in sorting out potentially eligible claimants from ineligible ones. To a large extent, use of this procedure would bypass more expensive and cumbersome communications by general circulation newspaper advertisements. Moreover, providing an 800 number and a comprehensive website at the very outset of the opt-in procedure for interested persons to determine whether they are, or are not eligible to file a Claim Form, has the potential of

saving the considerable costs of administration necessitated when thousands, if not tens of thousands, of ineligible persons unwittingly file an invalid Claim Form by mail.

5. Inasmuch as Plaintiffs intend to withdraw their pending motion to shift the costs of mailing and administration as soon as Defendant responds to the proposal, Plaintiffs respectfully request that the Court approve the procedure whereby an initial postcard mailing, followed by the mailing of the full Class Notice and Claim Forms, is utilized as described above in paragraph 4 (a) through (g). In addition to the court-ordered plan for the distribution of the Class Notice and Claim Forms, Plaintiffs respectfully request that the Court permit Plaintiffs' counsel to exercise their best judgment to supplement the distribution of the court-approved Class Notice and Claim Forms by placing notices in carefully selected professional journals, by the use of the internet, and by other similar cost-effective means. At the conclusion of the case, within thirty days of final judgment in the action, Plaintiffs will file a motion pursuant to 28 U.S.C. § 2412 for reimbursement of reasonable costs and other expenses incurred during the administration of the class action. At that time, the Court can determine which, if any, of the "other expenses" actually incurred by Plaintiffs and Plaintiffs' counsel were reasonable and should be borne ultimately by the Defendant.

6. The suggestions offered by Epiq are indicative of the quality of work of this group. I am pleased to reiterate my opinion of the impartiality, efficiency, and fair-minded administration by Epiq's managers. In my opinion, Epiq's fee structure is competitive in the industry. They have been responsive to the many challenges posed by the administration of such an extensive class of claimants in *Archuleta*, and they have conducted themselves in a professional manner throughout the two year period of

administration. I am confident that Epiq will manage the Class Notice and opt-in administration of the case at bar with fairness and impartiality if the Court selects it as Class Administrator.

I declare under penalty of perjury pursuant to the provisions of 28 U.S.C. Section 1746 that the foregoing is true and correct.

Executed on July 29, 2008

S/ Ira M. Lechner
Ira M. Lechner
Counsel for Plaintiffs
19811-4th Pl.
Escondido, CA 92029
(858) 864-2258

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 29th day of July, 2008, a copy of the foregoing "DECLARATION OF IRA M. LECHNER" was filed electronically in the United States Court of Federal Claims. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

S/Ira M. Lechner
Ira M. Lechner