# In the United States Court of Federal Claims

No. 02-101C
(Filed November 5, 2012)

* * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| **YOLANDA QUIMBY, et al., on**<br>**behalf of themselves and all others**<br>**similarly situated,** | | Class action settlement; RCFC 23(e),(h);<br>RCFC 54(d); paid leave; nighttime and<br>weekend additional pay; 38 U.S.C. §§ 7453,<br>7454; attorneys' fees as a percentage of the<br>common fund. |
| Plaintiffs, | | |
| v. | | |
| **THE UNITED STATES,** | | |
| Defendant. | | |

* * * * * * * * * * * * * * * * * * * * * * * * *

*Ira M. Lechner*, Washington, D.C., for the plaintiffs.   *Robert W. Brownlie*, DLA Piper US LLP, San Diego, California, of counsel.

*Hillary A. Stern*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Todd M. Hughes*, Deputy Director, all of Washington, D.C., for the defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

WOLSKI, Judge.

In this class action lawsuit brought on behalf of current and former employees of the Veterans Health Administration ("VHA") of the Department of Veterans Affairs ("VA"), the Court has before it two unopposed motions filed by the plaintiffs.   First, pursuant to Rule 23(e) of the Rules of the United States Court of Federal Claims ("RCFC"), the plaintiffs seek final approval of a settlement agreement.   Second, pursuant to RCFC 23(h), 52(a), and 54(d), plaintiffs request an award of attorneys' fees, nontaxable costs, and expenses of administration, to come from the class settlement fund.   After a hearing, and following careful consideration of the positions of counsel for the parties, the Court GRANTS approval of the settlement agreement, and (with a minor modification) GRANTS the motion for fees, costs, and administrative expenses --- for the reasons explained below.

# I. BACKGROUND

Plaintiffs filed this class action on behalf of three distinct categories of current and former employees of the VHA: registered nurses ("RNs"); "hybrids,"[1] a group composed of various allied health professionals, such as certified or registered respiratory therapists, licensed physical therapists, licensed practical nurses, licensed vocational nurses, pharmacists, and occupational therapists; and a group made up of physician assistants ("PAs") and expanded function dental auxiliaries ("EFDAs"). The plaintiffs alleged that they normally earned additional pay for working less desirable shifts (weekends and/or nights), and that they were entitled to but were routinely denied this "additional pay" when they took paid leave.[2] On July 8, 2005, the Court granted-in-part and denied-in-part the parties' cross-motions for summary judgment on the issues of the government's liability. *Curry v. United States* (*Curry I*), 66 Fed. Cl. 593, 608 (2005). The Court determined that designated hybrids are entitled to additional pay when taking authorized paid leave at nighttime and are not limited by an eight-hour rule; hybrids who receive additional pay for weekend work are entitled to additional pay when taking authorized paid leave on weekends, except for shifts after September 30, 1997, any part of which fall on a Sunday; RNs, PAs, and EFDAs are entitled to additional pay when taking authorized paid leave from nighttime shifts, with no eight-hour rule applying to military or court leave; and RNs, PAs and EFDAs are entitled to additional pay when taking authorized paid leave on weekends, except for shifts after September 30, 1997, any part of which fall on a Sunday. *Id.*

On March 27, 2008, the Court granted the plaintiffs' motion to certify an opt-in class. *Curry v. United States* (*Curry II*), 81 Fed. Cl. 328, 339 (2008). The Court approved Epiq Systems, Inc. as the Class Action Administrator on December 2, 2008. Order (Dec. 2, 2008). Postcard notices of the class action were mailed on October 12, 2009, and recipients were given until February 9, 2010, to file a claim form and opt into the class. Joint Status Report (Oct. 26, 2009). The Class Action Administrator made further attempts to contact individuals whose notices were returned as undeliverable. *See* Order (Apr. 1, 2010). As a result of this process, 58,479 individuals were determined to have opted in as class members, but of these only 44,019 individuals were found to have held positions and worked shifts making them eligible for an award of back pay under the theory of this case. *See* Pls.' Mem. in Supp. of Unopp'd Mot. for Attys' Fees (Aug. 27, 2012) at 4-6; *see also* Pls.' Mem. in Supp. of Unopp'd Mot. for Sett. Final Appr. (Oct. 9, 2012) ("Settlement Br.") at 1.

---

[1] The term "hybrid" is used because these employees are governed in some respects by Title 5 and in others by Title 38 of the United States Code. *See Curry v. United States*, 66 Fed. Cl. 593, 595 n.4 (2005) (citing *James v. Von Zemenszky*, 284 F.3d 1310, 1314 (Fed. Cir. 2002)).

[2] They alleged that this additional pay was owed to them under various provisions of the United States Code, including 38 U.S.C. sections 7453 and 7454, concerning weekend and nighttime additional pay, and the statutes providing for paid leave --- 5 U.S.C. sections 6303 (annual accrued leave), 6307 (sick leave), 6322 (court leave), and 6323 (military leave).

As class members were submitting claims to the Class Action Administrator, the parties began the long process of developing a template from which damages could be calculated using the pay records of individual class members.   *See* Joint Status Report (July 21, 2010).   These efforts yielded a basis upon which settlement negotiations could proceed.   *See* Joint Status Report (Aug. 18, 2010).   The parties had been conducting settlement negotiations since that time and reached a Settlement Agreement on August 13, 2012, which provides for a Settlement Fund of $73,990,712.   On August 27, 2012, the plaintiffs filed an unopposed motion for preliminary approval of the Settlement Agreement and an unopposed motion for attorneys' fees, nontaxable costs, and expenses of administration.

The Court approved the parties' notice of settlement postcard on August 29, 2012, and the Class Action Administrator mailed the notice on September 4, 2012, to 58,479 class members.[3]   Objections to the settlement were to be postmarked no later than October 5, 2012. Following notice of the settlement, one objection was filed by the October 5, 2012, postmarking deadline.   On October 9, 2012, plaintiffs filed an unopposed motion for final approval of the settlement.   On October 18, 2012, the Court held a fairness hearing, pursuant to RCFC 23(e)(2), to determine whether the Court should grant final approval of the Settlement Agreement and of the plaintiffs' motion for attorneys' fees, attorneys' reimbursable nontaxable costs, and the costs of administration.

## II. DISCUSSION

### A.   Final Approval of the Settlement Agreement

The plaintiffs have moved for the approval of a Settlement Agreement reached with the defendant.   Under the terms of this agreement, the government would pay $73,990,712 to settle all of the plaintiffs' claims, including those for attorneys' fees and expenses and the costs of class administration.   Ex. 1 to Pls.' Unopp'd Mot. for Prelim. Approval (Aug. 27, 2012) ("Settlement Agmt.") ¶ 7.   From the resulting Class Settlement Fund the Class Action Administrator --- after subtracting attorneys' and administrator's fees and expenses --- would pay "proportionate distributive shares" to class members who timely returned opt-in claim forms and were found eligible, by virtue of the VHA position held and shifts worked, for back pay under the theory of this lawsuit.   *Id.* ¶¶ 7-8, 10.

Under RCFC 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."   The legal standard for approval of such a settlement is that the settlement must be "fair, reasonable, and adequate."

---

[3]   Although there are currently only 44,019 members of the class who have been determined eligible to receive a proportionate share of the Settlement Fund, each of the other 14,460 class members will have the opportunity to establish their eligibility, in the judgment of the Class Action Administrator, by producing sufficient official documentation to justify their entitlement to back pay and interest.   *See* Ex. 4 to Pls.' Mem. in Supp. Pls.' Unopp'd Mot. for Prelim. Approval ¶ 10.   All 58,479 class members were notified of the Settlement Agreement and were given the opportunity to object to its terms.   Ex. 1 to Settlement Br. ¶ 2.

RCFC 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."); *Berkley v. United States*, 59 Fed. Cl. 675, 681 (2004).   To determine whether a proposed class action settlement is fair, reasonable, and adequate, courts consider both the settlement agreement's substantive terms and the negotiation process that led to it.   *See Christensen v. United States*, 65 Fed. Cl. 625, 629 (2005) (citing *Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982)); *Nat'l Treasury Employees Union v. United States* (*NTEU*), 54 Fed. Cl. 791, 797 (2002) ("Such approval should be given based on the court's assessment of the reasonableness of the proposed compromise, taking into account the context in which the settlement was reached.").

The court has discretion either to accept or reject a proposed settlement.   *Berkley*, 59 Fed. Cl. at 681.   In exercising this discretion, the court is guided by the general principle that "'[s]ettlement is always favored' especially in class actions where the avoidance of formal litigation can save valuable time and resources."   *Sabo v. United States*, 102 Fed. Cl. 619, 626 (2011) (citations omitted).   The court, however, may not alter the terms of the proposed settlement.   *See Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986) (noting that "Rule 23(e) [of the Federal Rules of Civil Procedure] does not give the court the power, in advance of trial, to modify a proposed consent decree and order its acceptance over either party's objection.").   In addition, although the court must assess the strengths and weaknesses of the parties' positions, it should "not decide the merits of the case or resolve unsettled legal questions."   *NTEU*, 54 Fed. Cl. at 797 (citing *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)).

Although binding precedent does not require the use of any particular factors in evaluating the fairness of a proposed settlement, *see Dauphin Island Prop. Owners Ass'n v. United States*, 90 Fed. Cl. 95, 102 (2009), the following factors have been commonly used for this purpose:

> (i) the relative strengths of plaintiff's case compared to the proposed settlement; (ii) the recommendation of the counsel for the class regarding the proposed settlement, taking into account the adequacy of class counsel['s] representation of the class; (iii) the reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement terms; (iv) the fairness of the settlement to the entire class; [and] (v) the fairness of the provision for attorney fees . . . .[4]

*Barnes v. United States*, 2010 WL 1904503 at *2 (Fed. Cl. 2010); *Berkley*, 59 Fed. Cl. at 681-82; *Sabo*, 102 Fed. Cl. at 627.   These factors are, of course, not exclusive, and the court may use its discretion to determine the appropriate weight to give each one.   *See Torrisi v. Tucson Elec.*

---

[4]  Another factor is "[t]he ability of the defendants to withstand a greater judgment, taking into account whether the defendant is a governmental actor or a private entity."   *Berkley*, 59 Fed. Cl. at 681.   But "[t]he defendant's solvency is of minimal concern when the defendant is the federal government," *id.* at 713 (noting that the federal government's ability to withstand greater judgment typically does not factor into the court's consideration), and is not considered here.

*Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994); *Berkley*, 59 Fed. Cl. at 682.

> When considering the first factor, the court should take into account the following:
>
> (a) The complexity, expense and likely duration of the litigation; (b) the risks of establishing liability; (c) the risks of establishing damages; (d) the risks of maintaining the class action through trial; (e) the reasonableness of the settlement fund in light of the best possible recovery; (f) the reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation; [and] (g) the stage of the proceedings and the amount of discovery completed . . . .

*Sabo*, 102 Fed. Cl. at 627; *Dauphin Island Prop. Owners Ass'n, Inc.*, 90 Fed. Cl. at 102-03.

In this case, while the Court has already determined the issues of liability, for the most part in the plaintiffs' favor, there remains the possibility that some or all of these determinations could be reversed on appeal.    Although the Court was following the Federal Circuit precedents *Armitage v. United States*, 991 F.2d 746 (Fed. Cir. 1993) and *Lanehart v. Horner*, 818 F.2d 1574 (Fed. Cir. 1987), their application to the VA and VHA statutes and regulations presented questions of first impression (and was complicated by a subsequent congressional enactment). *See Curry I*, 66 Fed. Cl. at 596-607.    The Settlement Fund amount was determined by first calculating the potential amount of back pay and interest that the government would owe the 44,019 eligible class members under the Court's liability ruling, and then discounting this amount by twenty percent.    *See* Ex. 3 to Pls.' Mem. in Supp. Pls.' Unopp'd Mot. for Prelim. Approval (ECF No. 198-4) ("Lechner Decl.") ¶ 9.    Considering that this case involves three distinct categories of VHA employees, two different types of premium pay, four types of paid leave, and a temporal inflection point of significance (the October 1, 1997 effective date of the ban on Sunday premium leave pay), *see Curry I*, 66 Fed. Cl. at 608, a settlement for roughly eighty percent of the best possible recovery is a reasonable accommodation of the plaintiffs' litigation risks.[5]

The Court has also taken into consideration the fact that class counsel have concluded that the settlement is fair and reasonable, and have, therefore, recommended that the Settlement Agreement be approved.    The Settlement Agreement was reached after extensive arm's length negotiations carried out by experienced class counsel (one of whom was counsel of record in both *Armitage* and *Lanehart*), and after the parties had conducted extensive discovery to determine that the benefits of settlement outweighed the costs and risks of continued litigation. *See* Settlement Br. at 6-7.

As to the reaction of the class, only one class member out of the 58,479 who were notified of its terms objected to the Settlement Agreement.    This overwhelmingly favorable

---

[5]  The Settlement Fund would be less than eighty percent of potential damages to the extent that any of the 14,460 class members are subsequently deemed eligible to receive their proportionate shares of the fund.

reaction of the class can be taken as evidencing the fairness of the settlement.   *See, e.g.*, *Wal-Mart Stores v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (noting that "the absence of substantial opposition is indicative of class approval," when only eighteen of five million class members objected); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (explaining that "the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness"); *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1313-14 (3d Cir. 1993) (finding the objections to settlement of a derivative lawsuit, lodged by less than thirty of 1.1 million shareholders, to be "an infinitesimal number" which "does not favor derailing settlement"); *cf. Thomas v. Albright*, 139 F.3d 227, 232 (D.C. Cir. 1998) (affirming settlement approval when "only 15% of the class members objected").

The one objecting class member mistakenly worried that legal and administrative expenses could total thirty to forty percent of the Settlement Fund, when the amounts requested by class counsel ($144,584.21) and the Class Action Administrator ($253,343.07), plus the costs estimated to administer the fund through to conclusion ($525,000), total about 1.25% of the fund. *See* Objection (ECF No. 204); Exs. 3-5 to Unopp'd Mot. Attys' Fees (Aug. 27, 2012) (ECF Nos. 199-3 through 199-9).   She also opined that the plaintiffs' attorneys' fees should be separately paid by the government rather than taken from the Settlement Fund.   *See* Objection.   But this opinion rests on either undue optimism concerning the plaintiffs' ability to shift to the government the obligation to pay the fees of their attorneys,[6] or a misunderstanding of the nature of settlements --- as the government has agreed to pay a fixed sum to settle the matter, and thus even if fees and expenses were mechanically broken out into separate payments, this would still reduce the size of the fund from which the class members would receive their shares.

The Court has also considered the fairness of the settlement to the entire class.   Class counsel and the VA have gone to great lengths to ensure that the settlement will be fair to the entire class.   The Class Action Administrator will calculate individual recoveries and distribute settlement funds to class members proportionally based on a detailed analysis of each member's individual pay and leave records, instead of a distribution of equal shares.   *See* Settlement Agmt. ¶ 7; Lechner Decl. ¶ 9.   This method ensures that each class member's recovery will be proportionate to the actual amount of back pay to which he or she is entitled, taking into account such factors as the number of hours of back pay owed and the salary of each class member. The Court finds that the parties have done a commendable job in structuring a settlement that

---

[6] The Court notes the government faces a low risk that a judgment on the merits in favor of the plaintiffs would result in a shift of attorneys' fees under the Back Pay Act, 5 U.S.C. § 5596(b), as the Federal Circuit has held that this provision borrows the "interest of justice" standard from the Civil Service Reform Act, 5 U.S.C. § 7701(g)(1).   *See Sims v. Department of the Navy*, 711 F.2d 1578, 1579-81 (Fed. Cir. 1983).   Thus, an attorneys' fees award is limited to such circumstances as "[w]here the agency's action was 'clearly without merit' (§ 7701(g)(1)), or was 'wholly unfounded,' or . . . in 'bad faith,'… [or w]here the agency 'knew or should have known that it would not prevail on the merits.'"   *Id.* at 1581 (quoting *Allen v. United States Postal Serv.*, 2 MSPB 582, 593 (1980)).

will be fair to the entire class, especially in light of the difficulties inherent in administering a fund of this size for a class composed of members to whom widely varying amounts of back pay are owed.

The final factor to be considered is the fairness of the attorneys' fees provision of the Settlement Agreement.   In this provision, the government has agreed that it would not oppose plaintiffs' counsel's request for an award of attorneys' fees of no more than thirty percent of the Settlement Fund, Settlement Agmt. ¶ 12 --- a request which is discussed separately, below.   But no percentage award is mandated in the settlement, which merely reflects agreement that the award of fees "shall be paid entirely from the Class Settlement Fund" and shall be "a percentage of" that fund.   *Id.*   When attorneys' fees are to be paid from a common fund, a percentage-of-the-fund approach has been employed and endorsed by numerous courts, including the United States Supreme Court.   *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Torrisi*, 8 F.3d at 1377; *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 77 (D.D.C. 2011) ("[I]n class action cases in which the plaintiff class recovers benefits from a common fund, the favored method of calculating attorneys' fees is to award a percentage of the fund."); *Moore v. United States*, 63 Fed. Cl. 781, 786-89 (2005); *NTEU*, 54 Fed. Cl. at 807.   The Court is not aware of any reason why this approach could be considered unfair in the context of this particular case.   Thus, taking the foregoing factors into consideration, the Court concludes that the Settlement Agreement is fair, reasonable, and adequate, and accordingly the motion for its final approval is **GRANTED**.

## B. Attorneys' Fees, Nontaxable Costs, and Expenses of Administration

The plaintiffs have also moved, without opposition, for an award of attorneys' fees, nontaxable costs, and expenses of administration, all to be paid from the Settlement Fund.[7]   The plaintiffs have requested an award of attorneys' fees equal to thirty percent of the Settlement Fund, or $22,197,213.60; reimbursement of their attorneys' out-of-pocket nontaxable costs of litigation, totaling $144,584.21; and an award of $253,343.07 for administrative fees and expenses incurred by the Court-appointed Class Action Administrator, Epiq Systems, Inc., from the inception of its service as Class Action Administrator to and including July 31, 2012. Unopp'd Mot. for Attys' Fees at 1, 3.   The plaintiffs have also requested approval for $3,700,000 of the Settlement Fund to be held in reserve by the Class Action Administrator, to cover future administrative fees and costs and from which the proportionate distributive shares may be paid to any additional class members who can establish their eligibility to receive back pay and interest.   *Id.* at 3.   Any funds that remained in the reserve at the conclusion of administration would be distributed to the eligible class members on a *pro rata* basis.   *See* Oseas Decl. ¶ 7, Ex. 5 to *id.* (ECF No. 199-8).

---

[7]  Rule 23(h) requires the court to find facts and state legal conclusions under RCFC 52(a).   *See* RCFC 23(h).   Additionally, RCFC 54(d)(1)(D) provides that "[a] settlement agreement should, by its own terms, resolve any issue relating to costs and in the absence of special agreement, each party must bear its own costs."

The Court first considers the reasonableness of the attorneys' fees request.   When asked to approve a percentage-of-the-fund request, our court has identified the following factors as providing guidance:

> (1) the quality of counsel; (2) the complexity and duration of the litigation; (3) the risk of nonrecovery; (4) the fee that likely would have been negotiated between private parties in similar cases; (5) any class members' objections to the settlement terms or fees requested by class counsel; (6) the percentage applied in other class actions; and (7) the size of the award.

*Moore*, 63 Fed. Cl. at 787 (citing *Manual for Complex Litigation (Fourth)* § 14.121, p. 192 (2004)).

Through eleven years of contentious litigation and complex settlement negotiations, plaintiffs' counsel established (before this court) the government's liability concerning the lion's share of paid leave permutations, *see Curry I*, 66 Fed. Cl. at 608; was successful in certifying a class, *Curry II*, 81 Fed. Cl. at 332-39; and obtained an agreement under which eligible class members are to receive approximately eighty percent of the back pay and interest that they could have claimed under this lawsuit, before the deduction of withheld taxes, attorneys' fees and administrative costs.   As the Supreme Court noted in *Hensley v. Eckerhart*, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . .   The result is what matters."   461 U.S. 424, 435 (1983); *see also Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd* 899 F.2d 21 (11th Cir. 1990) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained.").

In addition to obtaining a result that affords substantial settlement benefits to the class, plaintiffs' counsel will undoubtedly be spending additional time on the matter to ensure that the settlement is implemented fairly and completely.   Tr. (Oct. 18, 2012) at 31.   The complexity of this litigation, the government's opposition to the Court's ruling on the merits, and the absence of controlling precedent concerning many of the issues presented together indicate that continued litigation would have created substantial uncertainty for members of the class --- with the accompanying risk, under the contingency fee arrangement, that class counsel would be unpaid for all their services.   *See, e.g., In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994) ("Counsel's contingent fee risk is an important factor in determining the fee award.   Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.   Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.").

A fee equal to thirty percent of a common fund totaling nearly $74 million is, to be sure, a substantial award.   The Court notes, however, that this percentage is within the typical range of acceptable attorneys' fees, both in the private sector generally and for other class action suits. *See, e.g., NTEU*, 54 Fed. Cl. at 807; *Moore*, 63 Fed. Cl. at 787; *In re Combustion, Inc.*, 968 F. Supp. 1116, 1131-32 (W.D. La. 1997) (fee of thirty-six percent of $127 million settlement); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269 (E.D. Pa. Jan. 3,

2008) (granting attorneys' fees of thirty-two percent of approximately $66 million settlement and thirty-three percent of later $39 million settlement with remaining defendants); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) (awarding counsel thirty percent of a $410 million fund); *In re Vitamins Antitrust Litig.*, No. Misc. 99-197, 2001 WL 34312839, at *10 (D.D.C. July 16, 2001) (awarding thirty-three percent of approximately a $360 million fund).

Nevertheless, an award exceeding $22 million to be shared by two attorneys, even for work on a case spanning eleven years, does give the Court some pause.   An eminent jurist has noted that "class lawyers are naturally very interested in the fee component of any settlement, while the defendants care only about the size of the settlement, including fees," *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011) (Posner, J.), providing class counsel with the opportunity to trade a lower recovery for the class in favor of a higher percentage of attorneys' fees.   To discourage such strategic behavior, courts could perhaps adopt the approach of limiting fee awards to the contingency fee percentage to which the named plaintiffs agreed, discounted by the same percentage that the claims of the class had been discounted.   In this case, assuming that thirty percent was the size of the agreed contingent fee, the award of fees would be eighty percent of that figure --- a twenty-four percent fee.

But the consideration of another factor --- "the fee that likely would have been negotiated between private parties in similar cases," *Moore*, 63 Fed. Cl. at 787 --- leads the Court to conclude that no downward adjustment of the requested fee percentage is warranted.   A contingent fee that is reached by the free consent of private parties should be respected as fair as between them.   *Cf. Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 474 (1973) (explaining in the context of eminent domain that fair market value "is normally to be ascertained from what a willing buyer would pay in cash to a willing seller" (internal quotations and citation omitted)).   In the case at hand, the claim form that each class member executed to opt into the class expressly notified class members that class counsel intended to apply "for an award of attorney fees of thirty percent of the recovery of each class member, and costs," which could "be taken out of the total recovery of the class," and also indicated that class members were assenting to this fee arrangement by joining the class.   Ex. 2 to Unopp'd Mot. Attys' Fees at 3.   Potential members of the class had previously been informed, in the initial notice, that they had the right to hire their own counsel and intervene in the lawsuit.   *See, e.g.*, Ex. 1 to Pls.' Status Report (Mar. 18, 2009) at 6.   Thus, by opting into the class, each member effectively accepted the offer of representation for a thirty percent contingency fee, and presumably concluded that a better deal could not be reached with their own counsel (either individually or as part of some subgroup of claimants, which could have formed using social media and the like).[8]

The free consent of class members to a thirty percent fee perhaps explains the absence of objections to the fee request.   As was noted above, only one class member has objected to the

---

[8]  For an explanation of the relationship between consumer choice and price, see Ludwig von Mises, *Human Action* 332 (3d revised ed. 1966) ("It is ultimately always the subjective value judgments of individuals that determine the formation of prices.").

Settlement Agreement's terms related to attorneys' fees and costs.   *See* Objection.   That comment questioned the notion that the class should contribute anything for the legal work performed, rather than the percentage of the fee award.   The nearly-unanimous, positive reaction to the request for fees and costs is taken to be a strong indication of the reasonableness of this request, as well as that of the proposed settlement.   *See Hanlon*, 150 F.3d at 1027; *NTEU*, 54 Fed. Cl. at 807 (noting that "the fact that the attorney fees provision has received such an infinitesimally small number of adverse comments from this large class underscores its reasonableness").   For all of the reasons described above, the Court finds the attorneys' fees request to be reasonable.

The Court also agrees with class counsel that their expenses are reasonable and were necessarily incurred to achieve the benefit obtained.   Class counsel submitted a detailed itemization of their out-of-pocket nontaxable costs and reimbursable expenses, which total $144,584.21.   Exs. 3A & 4A to Unopp'd Mot. Attys' Fees.   A review of this documentation reveals that the expenses are for such items as travel for court appearances, expert witnesses and consultants, courier and shipping services, copying and business services, filing fees, hearing transcripts, local counsel fees, legal research, and class action administration.   *See id.*   The Court finds that these are all expenses that would routinely be billed to paying clients and are thus reimbursable as part of an attorneys' fee award.   *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *Brown v. Pro Football*, 839 F. Supp. 905, 916 (D.D.C. 1993), *rev'd on other grounds*, 50 F.3d 1041 (D.C. Cir. 1995) (holding "Plaintiff's out-of-pocket costs for telephone, telecopier, air and local couriers, postage, photocopying, WESTLAW research, secretarial overtime, and counsel['s] travel expenses are routinely billed to fee-paying clients, and thus are all compensable as part of a reasonable attorney's fee.").   Accordingly, plaintiffs' motion for an award of $22,197,213.60 in attorneys' fees and $144,584.21 for reimbursement of nontaxable costs, all coming from the Settlement Fund, is **GRANTED**.

Plaintiffs also request an award of $253,343.07 to be paid to the Class Action Administrator from the Settlement Fund.   The purpose of this award is to reimburse the Class Action Administrator for its expenses, itemized to include such costs as those incurred in sending notifications to class members, creating and maintaining a call center and website, processing opt-in forms, copying documents, and undertaking a variety of miscellaneous business support activities.   *See* Ex. 5A to Unopp'd Mot. Attys' Fees (ECF No. 199-9).   While these expenses clearly appear to be reasonable, the Court has determined that the items contained on the document submitted in support of the request --- an invoice dated July 31, 2012, *see id.* --- total $252,485.57, or $857.50 less than the amount requested.   Accordingly, the Court approves an award to the Class Action Administrator in the amount of $252,485.57.[9]

---

[9] An additional discrepancy has been identified, as class counsel's documentation shows $85,949.12 in payments made to the Class Action Administrator, while the latter claims to have received just $80,886.83.   *See* Ex. 4B to Unopp'd Mot. Attys' Fees (ECF No. 199-7) at 16-21; Ex. 5A to *id.* (ECF No. 199-9) at 2.   Subtracting payments that may have been passed on to third parties (local counsel and expert witnesses) or received after the July 31, 2012 invoice date still results in a difference of $1,877.45.   The Court trusts that the Class Action Administrator will investigate this discrepancy and make any necessary adjustments to the amounts it will

Finally, the Court finds reasonable the plaintiffs' request that $3,700,000 of the Settlement Fund be held in reserve to satisfy future administrative fees and costs and from which the proportionate distributive shares may be paid to any additional class members who can establish their eligibility.   Based on the Class Action Administrator's estimate of its future expenses, and its experience in processing the claims of class members who are initially deemed ineligible to receive shares of such recoveries, it believes a reserve fund of approximately five percent of the Settlement Fund would be prudent.   *See* Oseas Decl. ¶ 7, Ex. 5 to *id.* (ECF No. 199-8).   The Court concurs.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the Settlement Agreement is fair, reasonable and adequate, and accordingly the plaintiffs' unopposed motion for final approval of the Settlement Agreement is **GRANTED**.   The Court also finds that class counsel's requests for attorneys' fees and reimbursement of nontaxable costs are reasonable, and that the Class Action Administrator may be paid $252,485.57 from the Settlement Fund for its documented expenses of administration.   The plaintiffs' unopposed motion for attorneys' fees, nontaxable costs, and expenses of administration is accordingly **GRANTED-IN-PART** and, to the extent it sought payment to the Class Action Administrator in excess of $252,485.57, **DENIED-IN-PART**.

**IT IS SO ORDERED.**

s/ Victor J. Wolski
_____

**VICTOR J. WOLSKI**
Judge

---

claim from the reserve fund.